# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
                et al.

    Plaintiffs,

    v.

UNITED STATES POSTAL SERVICE,
                et al.

    Defendants.

_____

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(b)(6)
_____

Defendants, the United States Postal Service ("Postal Service"), Postmaster General

Patrick R. Donahoe,[1] and Avon, Colorado Postmaster Steve Ruehle (collectively, "Postal

Service" or "defendants"), hereby move to dismiss the First Amended Complaint (Doc. 5; filed

October 25, 2010) pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Like many other federal entities, the Postal Service has long prohibited the carrying and

storing of firearms and explosives on its property pursuant to its constitutional and statutory

authority as property owner.  See 39 C.F.R. § 232.1(*l*) ("USPS regulation") (prohibiting carrying

---

[1] Patrick R. Donahoe was sworn in as Postmaster General today, December 6, 2010.
Accordingly, Mr. Donahoe is automatically substituted for Mr. Potter as defendant in this case
pursuant to Federal Rule of Civil Procedure 25(d).

and storage of firearms, dangerous or deadly weapons, and explosives on postal property).
Debbie and Tab Bonidy (the "Bonidys") and the National Association for Gun Rights
(collectively, "plaintiffs") contend that this Postal Service regulation infringes on the Bonidys'
Second Amendment right to bear arms by preventing them from bringing their handguns to their
local post office when they pick up their mail.  Plaintiffs seek a court order enjoining the Postal
Service from enforcing the regulation.

Plaintiffs' claim fails as a matter of law.  The Supreme Court has specifically stated that
"laws forbidding the carrying of firearms in sensitive places such as schools and government
buildings," like the USPS regulation at issue here, are "presumptively lawful."  District of
Columbia v. Heller, 128 S. Ct. 2783, 2816-17 (2008).  Relying on Heller, the Courts of Appeals,
including the Tenth Circuit, have uniformly held that regulatory measures like the USPS
regulation do not violate, or even implicate, the Second Amendment.  See, e.g., United States v.
McCane, 573 F.3d 1037, 1047 (10th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010).  In fact, the
Tenth Circuit has held that Heller "specifically foreclosed" a Second Amendment challenge to a
similar regulatory measure, United States v. Nolan, 342 Fed. Appx. 368, 372 (10th Cir. 2009),
and the Fifth Circuit recently relied on Heller in upholding the precise USPS regulation at issue
here.  United States v. Dorosan, 350 Fed. Appx. 874, 875-86 (5th Cir. 2009), cert. denied, 130 S.
Ct. 1714 (2010) (concluding that postal property "falls under the 'sensitive places' exception
recognized by Heller").

Because Heller forecloses plaintiffs' Second Amendment challenge, there is no need for
this Court to engage in any "independent" constitutional analysis of the USPS regulation.  It is
constitutional because the Supreme Court expressly said so in Heller.  Nonetheless, any such
analysis would confirm that the USPS regulation does not run afoul of the Second Amendment.

First, the regulation does not even implicate the Second Amendment because that Amendment does not extend so far as to protect the carrying of firearms on postal property.  Second, even assuming that the USPS regulation implicates conduct protected by the Second Amendment, the regulation would pass constitutional muster.  If the Court reaches the issue, it should follow the vast majority of courts and analyze the USPS regulation under intermediate scrutiny.  But the USPS regulation passes muster under any level of constitutional scrutiny, including strict scrutiny.  Accordingly, the Court should uphold the USPS regulation and dismiss this lawsuit.

## STATUTORY AND REGULATORY BACKGROUND

The United States Constitution provides:

> The Congress shall have the Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; and nothing in this Constitution shall be so construed as to Prejudice any Claims of the United States, or of any particular State.

U.S. Const. art. IV, § 3 cl. 2.

Pursuant to this provision, Congress has authorized the Postmaster General to "prescribe regulations necessary for the protection and administration of property owned and occupied by the Postal Service and persons on the property" and to "include reasonable penalties . . . for violations of the regulations."  18 U.S.C. § 3061(c)(4)(A).  The Postal Service has promulgated regulations governing conduct on postal property, which apply to "all real property under the charge and control of the Postal Service, to all tenant agencies, and to all persons entering in or on such property."  39 C.F.R. § 232.1(a).  The Conduct on Postal Property regulations were enacted in their current form in 1972, following the statutory creation of the Postal Service in 1971.  37 Fed. Reg. 24346 (Nov. 16, 1972).

The provision challenged by plaintiffs states:

Weapons and explosives. Notwithstanding the provisions of any other law, rule or
regulation, no person while on postal property may carry firearms, other dangerous
or deadly weapons, or explosives, either openly or concealed, or store the same on
postal property, except for official purposes.

39 C.F.R. § 232.1(*l*).[2]  The regulations further provide: "Whoever shall be found guilty of

violating the rules and regulations of this section while on property under the charge and control

of the Postal Service is subject to a fine of not more than $50 or imprisonment of not more than

30 days, or both."  Id. § 232.1(p)(2).[3]

## FACTUAL BACKGROUND

Plaintiffs allege the following facts, which are taken as true for the purposes of this

motion.  The Bonidys do not receive home mail service.  First Am. Compl. ¶ 15.  Their local

---

[2] The Conduct on Postal Property regulations also prohibit, among other things: "[i]mproperly
disposing of rubbish, spitting, creating any hazard to persons or things, throwing articles of any
kind from a building, climbing upon the roof or any part of a building, or willfully destroying,
damaging, or removing any property or any part thereof. . . ."  39 C.F.R. § 232.1(c).  The
regulations also prohibit on postal premises: "[t]he possession, sale, or use of any 'controlled
substance' (except when permitted by law)," id. § 232.1(g)(1); "the sale or use of any alcoholic
beverage," id.; smoking, id. § 232.1(g)(2); gambling, id. § 232.1(f); and "[d]ogs and other
animals, except those used to assist persons with disabilities. . . ."  Id. § 232.1(j).

[3] In addition to this Postal Service-specific authority, federal law generally prohibits knowing
possession of a firearm or other dangerous weapon in a federal facility.  See 18 U.S.C.
§ 930(a).  Pursuant to this statute, numerous departments and agencies throughout the Federal
Government have promulgated firearms and weapons restrictions that are virtually identical to
the USPS regulation.  See, e.g., 31 C.F.R. § 407.13 ("No person while on the property shall carry
firearms, or other dangerous or deadly weapons, or explosives, either openly or concealed,
except for official purposes.") (Department of Treasury); 38 C.F.R. § 1.218(a)(13) ("No person
while on property shall carry firearms, other dangerous or deadly weapons, or explosives, either
openly or concealed, except for official purposes.") (Department of Veterans Affairs); 36 C.F.R.
§ 504.14 ("No person while on the premises shall carry firearms, other dangerous or deadly
weapons, or explosives, either openly or concealed, except for official purposes.") (Smithsonian
Institution Building and Grounds); 36 C.F.R. § 702.7 ("Except where duly authorized by law,
and in the performance of law enforcement functions, no person shall carry firearms, other
dangerous or deadly weapons, or explosives, either openly or concealed, while on the
premises.") (Library of Congress).

Post Office in Avon, Colorado provides them with a post office box at no charge.  Id. ¶ 16.  The

Bonidys lawfully own handguns, which they are licensed to carry pursuant to Colorado's

Concealed Carry Act, C.R.S. § 18-12-201 et seq. ("Concealed Carry Act").  First Am. Compl.

¶ 18.[4]  The Bonidys intend to possess a handgun "for self-defense when traveling to, from,

through, or on USPS property" but allege that they are "prevented from doing so by Defendants'

active enforcement of 39 C.F.R. § 232.1(*l*)."  Id. ¶ 18.

On July 22, 2010, plaintiffs' counsel sent a letter to the Postmaster General stating that

"[t]he Bonidys intend to exercise their right to bear arms on Postal property, but are prevented

from doing so by the Postal Service's regulatory firearms ban, 39 C.F.R. § 232.1(*l*)."  Id. ¶ 20 &

Ex. 1.  The letter further stated that the Postal Service's "total ban on firearms possession

violates 'the individual right to possess and carry weapons in case of confrontation' protected by

the Second Amendment."  Id. at Ex. 1 (citing District of Columbia v. Heller, 554 U.S. __, 128

S. Ct. 2783, 2797 (2008); McDonald v. Chicago, 561 U.S.__, slip op. at 31 (2010)).  On August

3, 2010, the Postal Service's General Counsel responded by letter, confirming that "the

regulations governing Conduct on Postal Property prevent the Bonidys from carrying firearms,

openly or concealed, onto any real property under the charge and control of the Postal Service."

Id. ¶ 21 & Ex. 2 (citing 39 C.F.R. § 232.1(*l*)).

Plaintiffs then filed this lawsuit.  Plaintiffs allege that, "[b]y prohibiting Plaintiffs from

possessing a functional firearm on real property under the charge and control of the USPS,

Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies

---

[4] The Concealed Carry Act provides in relevant part that "[a] permit issued pursuant to this part 2 does not authorize a person to carry a concealed handgun into a place where the carrying of firearms is prohibited by federal law."  C.R.S. § 18-12-214(2).  The Act further states that "nothing in this part 2 shall be construed to limit, restrict, or prohibit in any manner the existing rights of a private property owner, private tenant, private employer, or private business entity." Id. § 18-12-214(5).

that deprive Plaintiffs of the right to keep and bear arms, in violation of the Second

Amendment." Id. ¶ 25.[5]  Plaintiffs seek a Court Order permanently enjoining the defendants

from enforcing 39 C.F.R. § 232.1(*l*).

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of an action

when the Complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  Dismissal for failure to state a claim upon which relief can be granted is appropriate if,

taking all well-pleaded facts as true and construing them in a light most favorable to plaintiff, it

is clear that plaintiff is not entitled to relief.  Rocky Mountain Helicopters, Inc. v. Bell Helicopter

Textron, Inc., 24 F.3d 125, 128 (10th Cir. 1994).  A motion to dismiss under Rule 12(b)(6)

"admits all well-pleaded facts in the complaint as distinguished from conclusory allegations."

Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  As the Supreme Court recently explained,

"[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937,

1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  In Iqbal, the Court

reviewed the "two working principles" of Twombly.  First, "the tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."

Id. at 1950.

---

[5]  The First Amended Complaint refers to alleged injuries suffered by plaintiffs generally; it does
not allege specific injuries suffered by the National Association for Gun Rights (NAGR) as an
organization.  Plaintiffs therefore have not established that the NAGR has standing to sue in its
own right, as opposed to in its representational capacity.  To the extent the NAGR is suing on its
own behalf, the defendants reserve the right to challenge the organization's standing.

**ARGUMENT**

This Court should dismiss the complaint because plaintiffs' allegations, even if true, fail to state a viable claim under the Second Amendment.  Plaintiffs' claim is precluded by the controlling precedents of the United States Supreme Court and Court of Appeals for the Tenth Circuit.  Moreover, the USPS regulation challenged by plaintiffs does not implicate the Second Amendment and, in any event, passes constitutional muster even under the strictest level of scrutiny.

**I.      In <u>Heller</u>, the Supreme Court Expressly Recognized that the Right Protected by the Second Amendment is Limited.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In <u>Heller</u>, the Supreme Court interpreted this language to "confer[] an individual right to keep and bear arms." 128 S. Ct. at 2799.  The Court went on to hold that, "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." <u>Id.</u> at 2821.  <u>See also</u> <u>McDonald v. City of Chicago</u>, 130 S. Ct. at 3020, 3044 (2010) (plurality opinion) (stating that the "central holding in <u>Heller</u>" is "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").[6]  But like other constitutional rights, the right to keep and bear arms is "not unlimited." <u>Id.</u> at 2799, 2816.

The respondent in <u>Heller</u> was a special police officer in the District of Columbia who applied to register a handgun that he wished to keep in his home.  128 S. Ct. at 2788.  Relying on

_____

[6]  The plurality opinion in <u>McDonald v. City of Chicago</u> primarily addressed the incorporation of the Second Amendment against the states; its discussion of the scope of the right to bear arms is coextensive with <u>Heller</u>'s.  130 S. Ct. at 3044, 3050.

statutes that generally prohibited the possession of handguns in the District, the District refused

to grant Heller a registration certificate.  Id.  Heller sought to enjoin the District from enforcing

(1) the ban on the registration of handguns; (2) the licensing requirement for firearms, insofar as

it prohibited the carrying of a firearm in the home without a license; and (3) the "trigger-lock

requirement," which required that a lawfully owned firearm be kept "unloaded and disassembled

or bound by a trigger lock or similar device" if the firearm is kept in the home.  Id.  The Court

held that the officer was entitled to the relief sought, summarizing its holding as follows:  "In

sum, we hold that the District's ban on handgun possession in the home violates the Second

Amendment, as does its prohibition against rendering any lawful firearm in the home operable

for the purpose of immediate self-defense."  Id. at 2821-22 (emphases supplied).  In reaching this

conclusion, the Court repeatedly emphasized that the District of Columbia handgun ban extended

"to the home, where the need for defense of self, family, and property is most acute."  Id. at

2817.

As noted above, although the Court in Heller declined to fully define the scope of the

right protected by the Second Amendment, it made clear that the right is "not unlimited."  Id. at

2816.  The Court emphasized that "nothing in [its] opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws

forbidding the carrying of firearms in sensitive places such as schools and government buildings,

or laws imposing conditions and qualifications on the commercial sale of arms."  Id. at 2816-17.

And the Court specifically noted that those "presumptively lawful regulatory measures" were

merely examples, and that the list "does not purport to be exhaustive."  Id. at 2817 n.26.  In

addition, the Court limited the sorts of weapons protected by the Second Amendment to those "in

common use" at the time of the Amendment's passage, id. at 2815, 2817, and noted that the

Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. . . ." Id. at 2816. The Court expressly reserved the question of what standard of review to apply to firearms regulations, concluding that the District of Columbia laws were invalid "[u]nder any of the standards of scrutiny that [the Court has] applied to enumerated constitutional rights. . . ." Id. at 2817. [7]

Since Heller, courts have employed a range of approaches to adjudicate Second Amendment challenges. Following Heller's guidance, many courts have begun by determining whether the statute or regulation at issue implicates the core right protected by the Second Amendment. See, e.g., United States v. Marzzarella, 614 F.3d 85, 89-90 (3d Cir. 2010); United States v. Fincher, 538 F.3d 868, 873-74 (8th Cir. 2008), cert. denied, 129 S. Ct. 1369 (2009); Heller v. District of Columbia, 698 F. Supp. 2d 179, 188 (D.D.C. 2010). Other courts have passed on the constitutionality of various firearms restrictions without expressly determining whether the Second Amendment was implicated or what level of scrutiny applied. See, e.g., Dorosan, 350 Fed. Appx. at 876 (USPS regulation as applied to defendant is not "unconstitutional under any applicable level of scrutiny"); United States v. Masciandaro, 648 F. Supp. 2d 779, 789 (E.D. Va. 2009) (upholding challenged regulation under "any elevated level of constitutional scrutiny"); United States v. Booker, 570 F. Supp. 2d 161, 163 (D. Me. 2008) ("Rather than tackle [the] complex and unanswered question" of what level of scrutiny applies,

---

[7] Although courts have used varying language to describe the different levels of heightened constitutional scrutiny, strict scrutiny generally requires that a statute or regulation "be narrowly tailored to serve a compelling governmental interest" in order to survive a constitutional challenge. Abrams v. Johnson, 521 U.S. 74, 91 (1997). Intermediate scrutiny generally requires that the challenged statute or regulation "be substantially related to an important governmental objective." Clark v. Jeter, 486 U.S. 456, 461 (1988). A statute or regulation survives an "undue burden" analysis where it does not have the "purpose or effect [of] plac[ing] a substantial obstacle in the path" of the individual seeking to engage in constitutionally protected conduct. Gonzales v. Carhart, 550 U.S. 124, 146 (2007) (citation omitted).

"[a] useful approach is to ask whether a statutory prohibition against the possession of firearms by felons and the mentally ill is similar enough to the statutory prohibition [challenged in that case] to justify its inclusion in the list of 'longstanding prohibitions' that survive Second Amendment scrutiny.") (citing <u>Heller</u>, 128 S. Ct. at 2816-17).

Courts that have reached the issue of what standard of review to apply generally have employed intermediate scrutiny, or a standard close to that.  <u>See, e.g.</u>, <u>Marzzarella</u>, 614 F.3d at 97-99 (upholding statute under intermediate scrutiny but concluding that statute would pass muster under strict scrutiny); <u>Heller</u>, 698 F. Supp. 2d at 186; <u>United States v. Miller</u>, 604 F. Supp. 2d 1162, 1171-72 (W.D. Tenn. 2009); <u>see also</u> <u>United States v. Williams</u>, 616 F.3d 685, 692 (7th Cir. 2010) (citing en banc decision in <u>United States v. Skoien</u>, 616 F.3d 685 (7th Cir. 2010)) ("In <u>Skoien</u> we declined to adopt a level of scrutiny applicable to every disarmament challenge, although we hinted that it might look like what some courts have called intermediate scrutiny.").  <u>But see</u> <u>United States v. Engstrum</u>, 609 F. Supp. 2d 1227, 1231-35 (D. Utah 2009) (applying strict scrutiny in upholding application of statute prohibiting possession of a firearm following domestic violence conviction).  Some courts have applied elements of the "undue burden" test applicable in the abortion context.  <u>See</u> <u>Nordyke v. King</u>, 563 F.3d 439, 459-60 (9th Cir. 2009), <u>vacated on other grounds</u>, 611 F.3d 1015 (9th Cir. 2010) (noting that challenged ordinance "does not meaningfully impede the ability of individuals to defend themselves in their homes with usable firearms, the core of the right as <u>Heller</u> analyzed it").

## II.    <u>Heller</u> Specifically Forecloses Plaintiffs' Constitutional Challenge.

Because the USPS regulation is a "law[] forbidding the carrying of firearms in [a] sensitive place[]," <u>Heller</u>, 128 S. Ct. at 2817, it does not violate the Second Amendment.  Since <u>Heller</u>, the Tenth Circuit and other Courts of Appeals have consistently upheld regulatory

measures like the USPS regulation at issue here against Second Amendment challenges.  See,

e.g., McCane, 573 F.3d at 1047 (holding that prohibition on the possession of firearms by felons,

one of the other "presumptively lawful regulatory measures" identified in Heller, does not violate

the Second Amendment); Nolan, 342 Fed. Appx. at 372 (possession of a firearm by a felon is not

"protected by the Second Amendment").  As the court in Nolan explained, "[t]he Second

Amendment does not provide a shield" for possession of a firearm by a felon because, "[w]hile

Heller did acknowledge a Second Amendment right to individual gun ownership, the Court

limited that right."  Id.  Therefore, the court concluded, the Supreme Court "specifically

foreclosed [the] argument" that possession of a firearm by a convicted felon "was protected by

the Second Amendment."  Id.; see also United States v. Gieswein, 346 Fed. Appx. 293, 295-96

(10th Cir. 2009), cert. denied, 130 S. Ct. 1563 (2010) (rejecting Second Amendment challenge to

felon possession statute and noting that that decision "comports with that of every other circuit

that has addressed a Second Amendment challenge to § 922(g)(1) after Heller") (collecting

cases).

     Although plaintiffs may contend that Heller's statement regarding these lawful regulatory

measures was dictum, and therefore not binding on this Court, this argument is unavailing.  The

Tenth Circuit has recognized that lower courts are "bound by Supreme Court dicta almost as

firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled

by later statements."  Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996).  Moreover, the

Court of Appeals has already specifically stated that lower courts "must follow" the Heller

dictum.  In re United States, 578 F.3d 1195, 1200 (10th Cir. 2009).

     Indeed, the Court of Appeals has extended the logic of Heller to conclude that

prohibitions on the possession of firearms beyond those specifically enumerated in Heller do not

violate the Second Amendment.  Id.   As the court explained in In re United States, "[n]othing

suggests that the Heller dictum, which we must follow, is not inclusive of § 922(g)(9) involving

those convicted of misdemeanor domestic violence."  Id.  The "presumptively lawful regulatory

measures" identified in Heller "served only as examples and did not constitute an exhaustive

list."  Id. (quoting Heller, 128 S. Ct. at 2816-17 & n.26); see also United States v. Richard, 350

Fed. Appx. 252, 260 (10th Cir. 2009) (holding that the prohibition on possession of firearms by

drug users does not violate the Second Amendment); United States v. Yanez-Vasquez, 2010 WL

411112 at *4 (D. Kan. Jan. 28, 2010) (applying this reasoning to conclude that the statute

prohibiting illegal aliens from possessing firearms does not violate the Second Amendment).  In

fact, as the court pointed out in Yanez-Vasquez, "[s]ince Heller was decided, no court has found

the firearm restrictions in 18 U.S.C. § 922(g) to be unconstitutional, even under an individual

rights interpretation of the Second Amendment."  Id. at *5 (citation omitted).  "Instead, courts

have repeatedly affirmed the constitutionality of the statute's prohibition of firearm possession

by felons, persons convicted of domestic violence offenses, and illegal aliens."  Id. (citations

omitted).

    If categories of restrictions beyond those enumerated in Heller do not violate the Second

Amendment, as the Tenth Circuit has held, then the constitutionality of the USPS regulation, a

quintessential "law[] forbidding the carrying of firearms in sensitive places such as schools and

government buildings," Heller, 128 S. Ct. at 2817, follows a fortiori.

    Moreover, courts have interpreted Heller's "sensitive places" doctrine broadly.  As noted

above, the Fifth Circuit recently rejected a virtually identical constitutional challenge to the

USPS regulation at issue here.  Dorosan, 350 Fed. Appx. 874.  In Dorosan, the appellant was

convicted of violating 39 C.F.R. § 232.1(l) for bringing a handgun onto a parking lot owned by

the Postal Service.  Id. at 875.  He argued that his conviction violated his Second Amendment

right to keep and bear arms as recognized in Heller.  Id.  The Fifth Circuit rejected this challenge,

noting that the regulation fell "under the 'sensitive places' exception recognized by Heller" since

the Postal Service used the parking lot as a place of regular government business.  Id. at 875-76

(citing Heller, 128 S. Ct. at 2816-17).  The court held that the regulation passed constitutional

muster as applied to the appellant "under any applicable level of scrutiny" because he "fail[ed] to

demonstrate that § 232.1(*l*) has placed any significant burden on his ability to exercise his

claimed Second Amendment right."  Id. at 876.

    In addition, the court held that the Postal Service was properly exercising its

"constitutional authority as the property owner" in enacting the restrictions on firearms

possession on postal property.  Id. at 875 (citing U.S. Const. art. IV, § 3, cl. 2).  "Beyond doubt,

the Property Clause authorizes the enactment and enforcement of regulations which, like those at

issue in this case, are designed to maintain safety and order on government property."  United

States v. Gliatta, 580 F.2d 156, 160 (5th Cir. 1978) (citations omitted), cited in Dorosan, 350 Fed.

Appx. at 875; see also Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1011 (1984) ("The right to

exclude others is generally one of the most essential sticks in the bundle of rights that are

commonly characterized as property.").

    In the brief period since Heller was decided, several courts have upheld other restrictions

on firearms in sensitive places, including restrictions broader in scope than the USPS regulation

at issue here.  See, e.g., Nordyke, 563 F.3d 439 (county property); Masciandaro, 648 F. Supp. 2d

779 (National Park land); Warden v. Nickels, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010)

(park facilities); United States v. Davis, 304 Fed. Appx. 473 (9th Cir. 2008) (aircraft); United

States v. Walters, 2008 WL 2740398 (D.V.I. July 15, 2008) (within 1,000 feet of a school zone).

In <u>Masciandaro</u>, for example, the court addressed whether a regulation prohibiting the possession of loaded weapons in motor vehicles on National Park land violated the defendant's Second Amendment rights.  648 F. Supp. 2d 779.  The court found that, although National Park land was not one of the specific examples of a "sensitive place" articulated in <u>Heller</u>, it would "fall within any sensible definition of a 'sensitive place.'"  <u>Id.</u> at 790 (citing <u>Heller</u>, 128 S. Ct. at 2817).  This case at bar is far more straightforward than <u>Masciandaro</u> because, as explained above, unlike the National Park regulation at issue there, the regulation of firearms on postal property falls directly within the "government buildings" exception specifically identified in <u>Heller</u>.  Nonetheless, the court's analysis of the sensitive places doctrine in that case is illuminating.

As the court explained:

> Schools and government buildings are sensitive places because, unlike homes, they are public properties where large numbers of people, often strangers (and including children), congregate for recreational, educational, and expressive activities.  Likewise, National Parks are public properties where large numbers of people, often strangers (and including children), congregate for recreational, educational, and expressive activities.  Moreover, the locations within National Parks <u>where motor vehicles travel</u> – roads and parking lots – are even more sensitive, as roads and parking lots are extensively regulated thoroughfares frequented by large numbers of strangers, including children.

<u>Id.</u> (emphasis in original).  The court concluded that, "unlike a home or other private property, where the 'need for defense of self, family, and property is most acute,' the locations in National Parks where vehicles travel, like schools and government buildings, are sensitive places where the Second Amendment leaves the judgment of whether (and if so, how) to regulate firearms to the legislature, not the judiciary."  <u>Id.</u>  (quoting <u>Heller</u>, 128 S. Ct. at 2817).  The court further reasoned that <u>Heller</u>'s approval of concealed weapons bans provides additional support for upholding the  prohibition against carrying a loaded weapon in a motor vehicle, "an act which,

by definition, is almost always outside the view of those nearby. . . ." Id.  The court determined

that this presents a "compelling safety risk more adequately resolved by legislation than by

judicial ipse dixit." Id.[8]

In Nordyke v. King, the Ninth Circuit rejected a challenge to a county ordinance banning

firearms and ammunition on county property, concluding that, while the Second Amendment

"protects a right to keep and bear arms for individual self-defense, it does not contain an

entitlement to bring guns onto government property." 563 F.3d at 459.[9]  Although the ordinance

at issue in that case was a broad regulation, prohibiting all firearms on all county property,

including "open space venues, such as County-owned parks, recreational areas, historic sites,

parking lots of public buildings . . . and the County fairgrounds," id. at 459-60, the court found

that these public spaces "fit comfortably within the same category as schools and government

buildings" expressly addressed in Heller because "possessing firearms in such places risks harm

to great numbers of defenseless people (e.g., children)." Id.  Similarly, in Warden v. Nickels, the

court held that a regulation prohibiting concealed firearms at park facilities "is a permissible

restriction on the possession of firearms in a 'sensitive' place." 697 F. Supp. 2d at 1229 (citing

---

[8]  Because the court in Masciandaro concluded that Heller did not decide the precise question "whether [the defendant] has a Second Amendment right to carry a loaded firearm in his vehicle on National Park land," 648 F. Supp. 2d at 789, the court found it necessary to determine whether the regulation's application to the defendant's conduct "withstands the appropriate level of elevated constitutional scrutiny – either strict scrutiny, intermediate scrutiny, or an 'undue burden' analysis." Id.  The court concluded that, "under any elevated level of constitutional scrutiny, Masciandaro's as-applied challenge must fail." Id.

[9]  The court first held, after a lengthy analysis, that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments. Id. at 457.  The Ninth Circuit later vacated that decision and remanded to the panel for further consideration in light of McDonald v. City of Chicago. Nordyke v. King, 611 F.3d 1015 (9th Cir. 2010).  Nevertheless, the court's analysis of the "sensitive places" doctrine is instructive.

<u>Heller</u>, 128 S. Ct. at 2816-17).[10]  As the court explained, "[j]ust as the Federal Courts do not

want civilians entering into courthouses with weapons, the City does not want those with

firearms entering certain parks where children and youth are likely to be present."  <u>Id.</u>

These cases demonstrate that the USPS regulation fits comfortably within the "sensitive

places" doctrine articulated in <u>Heller</u>.  If the restrictions on firearms upheld in these cases did not

violate the Second Amendment, it follows logically that the USPS regulation, an essential "law[]

forbidding the carrying of firearms in sensitive places such as schools and government

buildings," comports with the right protected by that Amendment.

### III.   An Independent Analysis, Should the Court Undertake One, Confirms that the USPS Regulation Does Not Violate Plaintiffs' Constitutional Rights.

#### A.   There Is No Second Amendment Right to Carry a Handgun onto Postal Property.

As noted above, the Tenth Circuit has treated the "presumptively lawful regulatory

measures" identified in <u>Heller</u> as restricting conduct outside the scope of the Second Amendment

altogether.  <u>See</u> <u>Nolan</u>, 342 Fed. Appx. at 372 (holding that <u>Heller</u> "specifically foreclosed" the

argument that possession of a firearm by a convicted felon "was protected by the Second

Amendment").  Other courts have interpreted this language similarly.  <u>See, e.g.</u>, <u>Marzzarella</u>, 614

F.3d at 92 (concluding that "the Second Amendment affords no protection for the possession of

dangerous and unusual weapons, possession by felons and the mentally ill, and the carrying of

weapons in certain sensitive places"); <u>Fincher</u>, 538 F.3d at 874 (defendant's possession of

---

[10]  That decision predated the Court's decision in <u>McDonald</u>, and the court dismissed plaintiff's
Second Amendment challenge on the basis of then-controlling Ninth Circuit precedent holding
that the Second Amendment constrains only the actions of the federal government, not the states.
<u>Warden</u>, 697 F. Supp. 2d at 1225-26.  However, the court also analyzed the question whether the
Park rule violated Article I, § 24 of the Washington State Constitution, the State parallel to the
Second Amendment, relying on the Washington Supreme Court's decision to analyze that
provision in light of <u>Heller</u>.  <u>Id.</u> at 1228-29 (citing <u>State v. Sieyes</u>, 225 P.3d 995 (Wash. 2010)).

machine gun and unregistered sawed-off shotgun "is not protected by the Second Amendment");

Heller, 698 F. Supp. 2d at 188 ("[T]o assess the constitutionality of each of the challenged

provisions, the court will begin by determining whether the provision at issue implicates the core

Second Amendment right, . . . . namely, 'the right of law abiding, responsible citizens to use

arms in defense of hearth and home'. . . .  If it does not, then the court will uphold the

regulation.") (quoting Heller, 128 S. Ct. at 2821).

 In Marzzarella, the Third Circuit engaged in a lengthy analysis of why the

"presumptively lawful regulatory measures" enumerated in Heller regulate conduct outside the

scope of the Second Amendment.  614 F.3d at 91-95.  As that court explained:

> We recognize the phrase "presumptively lawful" could have different meanings
> under newly enunciated Second Amendment doctrine.  On the one hand, this
> language could be read to suggest the identified restrictions are presumptively
> lawful because they regulate conduct outside the scope of the Second Amendment.
> On the other hand, it may suggest the restrictions are presumptively lawful because
> they pass muster under any standard of scrutiny.

Id. at 91.  That court ultimately concluded that the regulatory measures identified in Heller

concern "exceptions to the right to bear arms" to which "the Second Amendment affords no

protection."  Id. at 91-92.

 As the Third Circuit observed, immediately following the passage in Heller addressing

the "presumptively lawful regulatory measures" such as restrictions on firearms in sensitive

places, the Supreme Court discussed "another important limitation" on the Second Amendment –

restrictions on the types of weapons individuals may possess.  Id. at 91 (quoting Heller, 128 S.

Ct. at 2816-17).  "The Court made clear that restrictions on the possession of dangerous and

unusual weapons are not constitutionally suspect because these weapons are outside the ambit of

the amendment."  Id. (quoting Heller, 128 S. Ct. at 2815-16) ("[T]he Second Amendment does

not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. . .

.").  "By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons," the Supreme Court "intended to treat them equivalently—as exceptions to the Second Amendment guarantee."  Id.

Reading the "list of presumptively lawful regulations" as "outside the ambit of the Second Amendment" comports with the historical approach Heller used to define the scope of the right.  Id.  It is also consistent with the Supreme Court's First Amendment jurisprudence, which has "identified categories of speech as fully outside the protection of the First Amendment," or falling into a "First Amendment Free Zone."  United States v. Stevens, 130 S. Ct. 1577, 1585-86 (2010) (citations omitted).  As Heller expressly approved the comparison of the Second Amendment to the First, 128 S. Ct. at 2799, 2821, this doctrine reinforces the notion that the "presumptively lawful regulatory measures" enumerated in Heller – such as restrictions on carrying firearms in "sensitive places" – are outside the reach of the Second Amendment altogether.  See id. at 2799 ("Of course, the right [conferred by the Second Amendment] was not unlimited just as the First Amendment's right of free speech was not.  Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.") (citation omitted; emphasis in original).

Plaintiffs' claim fails as a matter of law because the USPS regulation does not preclude the Bonidys or anyone else from engaging in conduct that is protected by the Second Amendment.

**B.    Even Assuming the USPS Regulation Does Regulate Conduct Protected by the Second Amendment, It Does Not Violate Plaintiffs' Constitutional Rights.**

**1.    If the Court Reaches the Question, It Should Apply Intermediate Scrutiny to the USPS Regulation.**

If the Court does reach the question of what level of constitutional scrutiny to apply to the USPS regulation, it should follow the vast majority of courts and apply intermediate scrutiny. Even assuming the USPS regulation implicates an enumerated fundamental constitutional right, it does not severely limit or burden any such right.  On the contrary, it only impacts the possession of firearms on postal property.  In this respect, the regulation is on the opposite end of the spectrum from the District of Columbia handgun ban invalidated in <u>Heller</u>.  <u>See</u> 128 S. Ct. at 2818 ("Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban.").  To the extent it implicates conduct protected by the Second Amendment at all, the USPS regulation merely provides one discrete limitation on where persons may lawfully exercise their Second Amendment right.  This regulation is akin to a "time, place, and manner" restriction that is analyzed under intermediate scrutiny in the First Amendment context.  <u>See, e.g.</u>, <u>City of Los Angeles v. Alameda Books, Inc.</u>, 535 U.S. 425, 455 (2002) ("The comparatively softer intermediate scrutiny is reserved for regulations justified by something other than content of the message, such as a straightforward restriction going only to the time, place, or manner of speech or other expression."); <u>see also</u> <u>Marzzarella</u>, 614 F.3d at 96-97 (drawing analogy between content-neutral restrictions on speech in the First Amendment context and restriction on firearms possession in the Second Amendment context in determining that the latter should be subject to intermediate constitutional scrutiny).

Moreover, as the Supreme Court has explained, "[i]t is a long-settled principle that governmental actions are subject to a lower level of First Amendment scrutiny when the

governmental function operating is not the power to regulate or license, as lawmaker, but, rather, as proprietor, to manage its internal operations." United States v. Kokinda, 497 U.S. 720, 725 (1990) (plurality opinion) (quoting Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 896 (1961)) (internal alterations omitted). When, as here, the government is "acting in its proprietary capacity," its action is valid "unless it is unreasonable, . . . arbitrary, capricious, or invidious." Id. at 725-26 (quoting Lehman v. City of Shaker Heights, 418 U.S. 298, 303 (1974)); id. at 737 (concluding that Postal Service regulation prohibiting "[s]oliciting alms and contributions on postal premises" "passes constitutional muster under the Court's usual test for reasonableness").

As numerous other courts and commentators have observed, a strict scrutiny standard of review would be inconsistent with the Supreme Court's emphasis on "presumptively lawful regulatory measures." Heller, 698 F. Supp. 2d at 187 (collecting cases and sources); see also Heller, 128 S. Ct. at 2851 (Breyer, J., dissenting) ("[T]he majority implicitly, and appropriately, rejects" the suggestion that the Court adopt a strict scrutiny test for each gun law "by broadly approving a set of laws – prohibitions on concealed weapons, forfeiture by criminals of the Second Amendment right, prohibitions on firearms in certain locales, and governmental regulation of commercial firearm sales – whose constitutionality under a strict scrutiny standard would be far from clear."). Accordingly, if the Court reaches the question of what level of scrutiny to apply to the USPS regulation, it should apply intermediate scrutiny and uphold the regulation.

> **2.    In Any Event, the USPS Regulation Passes Muster Under Any Standard of Review.**

As the Fifth Circuit held, the USPS regulation passes constitutional muster "under any applicable level of scrutiny," even strict scrutiny. Dorosan, 350 Fed. Appx. at 876. The Postal

Service's interests in promoting order and public safety and preventing criminal violence on postal property are undoubtedly compelling.  The Supreme Court has stated repeatedly that "the government's interest in preventing crime . . . is both legitimate and compelling."  United States v. Salerno, 481 U.S. 739, 749 (1987) (citation omitted); see also Schall v. Martin, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citations and quotation marks omitted); Skoien, 614 F.3d at 642 ("no one doubts that the goal of . . .  preventing armed mayhem, is an important governmental objective").  As one court recently remarked, "[t]o the extent the rationale for laws that prohibit a person from bringing a firearm into a school or government building needs justification, the tragic lessons of recent history demonstrate that such places are especially vulnerable as targets for violence." United States v. Pettengill, 682 F. Supp. 2d 49, 53 n.3 (D. Me. 2010); see also Masciandaro, 648 F. Supp. 2d at 789 (holding that Park Service's interest in promoting public safety in National Parks is "both important and compelling").

Moreover, the USPS regulation is both narrowly tailored and substantially related to furthering public safety on postal property, in that it only affects those who would elect to carry or store firearms or other dangerous weapons on postal property.  See id. at 789-90.  As discussed above, the Fifth Circuit recently found that this USPS regulation does not "place[] any significant burden on [the] ability to exercise [a] claimed Second Amendment right." Dorosan, 350 Fed. Appx. at 876.  As that court explained, the conduct affected by the ban is extremely narrow:  "If Dorosan wanted to carry a gun in his car but abide by the ban, he ostensibly could have secured alternative parking arrangements off site." Id.  The USPS regulation passes muster even under the strictest level of scrutiny.

21

## CONCLUSION

The USPS regulation is a "presumptively lawful" prohibition on "the carrying of firearms in sensitive places," as described in <u>Heller</u>, 128 S. Ct. at 2817.  <u>Heller</u> thus "specifically forecloses" plaintiffs' claim.  <u>Nolan</u>, 342 Fed. Appx. at 372.  Moreover, the USPS regulation does not preclude any conduct that is protected by the Second Amendment and would pass muster under any level of constitutional scrutiny in any event.  This Court should grant the Motion to Dismiss.

Dated: December 6, 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN F. WALSH
United States Attorney

JOHN R. GRIFFITHS
Assistant Branch Director


s/ Lesley Farby
LESLEY R. FARBY (DC #495625)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-3481
Fax:  (202) 616-8470
E-mail: Lesley.Farby@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2010, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
jmanley@mountainstateslegal.com

/s/ Lesley Farby
LESLEY FARBY