# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

        Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
STEVE RUEHLE, Postmaster, Avon, Colorado,

        Defendants.

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiffs Debbie Bonidy, Tab Bonidy, and the National Association for Gun Rights ("NAGR")[1], by and through their undersigned attorney, hereby file their opposition to Defendants' Motion to Dismiss (Doc. 6).

---

[1] Defendants assert that NAGR lacks standing "in its own right as opposed to in its representational capacity." Mot. to Dismiss at 6 n.5. As Defendants' concede, NAGR has standing in its representational capacity. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977). Whether NAGR has standing in its own right is largely irrelevant here because the Bonidys have standing to bring suit. In cases where, as here, Plaintiffs seek injunctive and declaratory relief, so long as "at least one individual plaintiff . . . has demonstrated standing," a court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977); *see also Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981).

**INTRODUCTION**

Defendants' Motion to Dismiss relies principally on dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008).  Their Motion is unpersuasive because it attempts to extrapolate from the dicta a rule of law that is broader than the Court's dicta, at odds with the Court's reasoning, divergent from the historical background, and unsupported by the precedent flowing from *Heller*.  Contrary to Defendants' suggestion, the core conduct protected by the Second Amendment explicitly includes the right to carry firearms for self-defense.  Moreover, even if the *Heller* dicta did apply to the instant case, Defendants would not be relieved of their burden of proving the constitutionality of the Postal Service firearms ban.  At the motion to dismiss stage, Defendants are unable to present evidence to carry this burden and Plaintiffs would have no opportunity to rebut Defendants' proffered evidence.  Accepting the truth of the allegations in the Complaint, and drawing all inferences in the light most favorable to Plaintiffs, as this Court must, Defendants' v should be denied.

**FACTUAL BACKGROUND**

United States Postal Service ("USPS") regulations generally prohibit law-abiding individuals from possessing or carrying functional firearms, openly or concealed, onto any real property under the charge and control of the USPS.  39 C.F.R. § 232.1(*l*).  The Bonidys live in rural Colorado and, because they do not have home mail service, they must drive approximately 10 miles roundtrip everyday from their home to reach the local Post Office to pick up their mail.  Compl. ¶¶ 15, 17.

The Bonidys lawfully own handguns, which they are licensed to carry pursuant to Colorado's Concealed Carry Act, C.R.S. § 18-12-201 *et seq*.  Mr. and Mrs. Bonidy presently

intend to possess a handgun for self-defense when traveling to, from, through, or on USPS property but are prevented from doing so by Defendants' active enforcement of 39 C.F.R. § 232.1(l). Compl. ¶18. The Bonidys are law-abiding individuals; they are over 21 years old, have no history of substance abuse or criminal activity, are not subject to a protection order, have demonstrated competency with a handgun, and have been approved by the Eagle County Sheriff to carry a concealed handgun almost everywhere in the State. *Id*. ¶ 19.

On July 22, 2010, the Bonidys contacted the USPS to inquire as to whether they would be subject to prosecution pursuant to 39 C.F.R. § 232.1(*l*) if they carried a firearm on USPS property or stored a firearm in their cars when they parked on USPS property when picking up their mail. *Id.* ¶ 20, Ex. 2. By return letter, Senior Vice President and General Counsel Mary Anne Gibbons confirmed, on behalf of then-Postmaster General John Potter, that "the regulations governing Conduct on Postal Property prevent the Bonidys from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service. . . . There are limited exceptions to this policy that would not apply here." *Id.* ¶ 21, Ex. 2. Thus, 39 C.F.R. § 232.1(*l*) imposes a total ban on law-abiding individuals' possession of firearms; the USPS ban does not even allow individuals to safely store a firearm in their vehicles.

On October 4, 2010, Plaintiffs filed the instant action seeking declaratory and injunctive relief to remedy Defendants' unconstitutional deprivation of their right to keep and bear arms. Defendants responded by filing a Motion to Dismiss on December 6, 2010.

**ARGUMENT**

I.  **STANDARD OF REVIEW.**

When reviewing a motion to dismiss for failure to state a claim, courts "accept all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in Plaintiff's favor." *Kamplain v. Curry County Bd. of Com'rs*, 159 F.3d 1248, 1250 (10th Cir. 1998). Defendants bear the burden of proving that the USPS ban does not violate the Constitution, and Plaintiffs must ultimately rebut any evidence offered by Defendants; but at the motion to dismiss stage, this Court "must assume that [Plaintiffs] can, even if it strikes [this Court] 'that a recovery is very remote and unlikely.'" *Dias v. City and County of Denver*, 567 F.3d 1169, 1184 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). Accepting the truth of the allegations in the Complaint, and drawing all inferences in the light most favorable to Plaintiffs, this Court should deny Defendants' Motion to Dismiss.

II.  **THE SECOND AMENDMENT GUARANTEES THE RIGHT TO CARRY FIREARMS FOR SELF-DEFENSE IN CASE OF CONFRONTATION.**

Defendants argue that the Second Amendment provides no protection for the right to keep and bear arms on USPS property; but this argument cannot be reconciled with the text of the Constitution. The core conduct protected by the Second Amendment explicitly includes the right to carry firearms for self-defense:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and *bear* Arms, shall not be infringed.

U.S. Const. amend. II (emphasis added). In *Heller*, the Supreme Court concluded in no uncertain terms that, "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'" 554 U.S. at 584. The Court applied this common historical understanding of the term "bear" to conclude that the Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *Id*. at 592. In reaching this conclusion, the Court adopted Justice Ginsburg's definition of the phrase "to bear arms," which she offered in *Muscarello v. United States*, 524 U.S. 125, 143 (1998):

> Surely a most familiar meaning is, as the Constitution's Second Amendment . . . indicate[s]: "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person."

*Heller*, 554 U.S. at 584 (internal citations omitted) (omissions in original). Thus, contrary to Defendants' suggestion, core conduct protected by the Second Amendment is infringed by the USPS firearms ban because it is a broad prohibition on the possession and carrying of firearms "in case of confrontation." *Id*.

The central holding of *Heller* concerns the constitutionality of possessing functional firearms in the home: "the District's requirement . . . that firearms in the home be rendered and kept inoperable at all times . . . makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *Id*. at 630. The facts of that case did not give the Court occasion to rule on all aspects of Second Amendment law, and its holding is appropriately narrow. *See id*. at 635 ("But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any

more than *Reynolds v. United States*, our first in-depth Free Exercise Clause case, left that area in a state of utter certainty." (internal citation omitted)). Yet the Court made clear that the right to "possess and carry weapons in case of confrontation" is the core of the right guaranteed by the Second Amendment. *Id*. at 592. In *McDonald v. City of Chicago*, the Court confirmed that the right protected is "fundamental to *our* scheme of ordered liberty." 561 U.S. ___, 130 S.Ct. 3020, 3050 (2010) (emphasis in original).

The *Heller* Court's reliance on a number of 19th century authorities offers guidance about the rough contours of the right to carry. These cases are of particular importance because "the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right" that can only be fully understood in light of the "historical background." *Heller*, 554 U.S. at 592. These cases stand for the proposition that if one manner of carrying a firearm outside the home is restricted, some other means of carrying arms must be preserved. For example, as the Court noted in *Heller*:

> In *Nunn v. State,* [1 Ga. 243, 251 (1846)] the Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though it upheld a prohibition on carrying concealed weapons). In *Andrews v. State,* [50 Tenn. 165, 187 (Tenn. 1871)] the Tennessee Supreme Court likewise held that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," violated the state constitutional provision (which the court equated with the Second Amendment). That was so even though the statute did not restrict the carrying of long guns. *See also State v. Reid,* 1 Ala. 612, 616–617 (1840) ("A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, would be clearly unconstitutional").

*Id*. at 629. Thus, the Court indicated its approval of the longstanding principle that total bans on firearms possession, or regulations that amount to total bans, violate the right to keep and bear arms. As the Court's discussion of the 19th century authorities above illustrates, this proposition

has long been accepted by state courts.  *See, e.g., Lakewood v. Pillow*, 501 P.2d 744, 745 (Colo. 1972); *City of Las Vegas v. Moberg*, 485 P.2d 737, 738 (N.M. Ct. App. 1971); *People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936); *People v. Zerillo*, 189 N.W. 927, 928 (Mich. 1922); *In re Brickey*, 70 P. 609, 609 (Idaho 1902).  Moreover, the rule that total bans on the carrying of firearms by law-abiding individuals violate the right to keep and bear arms has been applied post-*Heller*.  *See Peruta v. County of San Diego*, no. 09CV2371, 2010 WL 5137137, *6 (S.D. Cal. Dec. 10, 2010) (upholding California's concealed-handgun licensing law because the law still permitted unlicensed citizens to carry handguns in plain view).

Thus, although the Court has not weighed in on the full contours of the right to carry, it is clear from *Heller* that the Court views the Second Amendment as explicitly guaranteeing the right to carry firearms for self-defense.  Moreover, the Court has indicated approval for the majority view that total bans on the carrying of firearms are unconstitutional.  Thus, contrary to Defendants' suggestion, core conduct protected by the Second Amendment is infringed by the USPS firearms ban because it is a broad prohibition on the possession and carrying of firearms "in case of confrontation."  *Heller*, 554 U.S. at 629.  Accordingly, Defendants' Motion to Dismiss should be denied.

### III.   DEFENDANTS' ARGUMENT STRAINS THE *HELLER* DICTA TO ITS BREAKING POINT.

Defendants' argument—that the Second Amendment provides no protection for the right to keep and bear arms on USPS property—relies principally on dicta in *Heller*.  As discussed below, the USPS firearms ban does not fit within the "presumptively lawful" regulatory measures identified in the *Heller* dicta.  Moreover, even if the *Heller* dicta did apply to the

instant case, Defendants would not be relieved of their burden of proving the constitutionality of the USPS ban. Accordingly, Defendants' motion should be denied.

### A. The USPS Ban is a Uniquely Broad Prohibition on the Right to Carry.

The USPS firearms ban is much broader than the "presumptively lawful" regulations identified by the *Heller* dicta, and thus Defendants cannot escape the burden of proving that the ban does not violate the Constitution. Defendants overstate the scope of the Supreme Court's dicta when they contend that:

> The Supreme Court has specifically stated that "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," like the USPS regulation at issue here, are "presumptively lawful." *District of Columbia v. Heller*, 128 S. Ct. 2783, 2816-17 (2008).

Mot. to Dismiss at 2. The USPS regulation at issue here is far broader than the "presumptively lawful" regulatory measures the Court identified in the dicta quoted above. As discussed above, the USPS firearms ban prohibits possession of firearms not only "in . . . government buildings," but also in the parking lots adjacent to those buildings. This ban is broader than other regulations of firearms on federal property, all of which allow law-abiding citizens to possess firearms in some capacity. Mot. to Dismiss at 4 (listing examples of regulations that do not prohibit storage of a firearm). For example, 18 U.S.C. § 930 strikes a balance between the overriding need for security in federal courthouses, and the constitutional right to carry. Possession of a firearm "in a Federal court facility" is prohibited. 18 U.S.C. § 930 (e)(1). But outside federal court facilities, "the lawful carrying of firearms . . . incident to hunting or other lawful purposes" is not prohibited. 18 U.S.C. § 930(d)(3).[2]

---

[2] The statute also explicitly recognizes the federal courts' inherent authority to regulate the courtroom and punish for contempt any violations of court rules. 18 U.S.C. § 930(f).

Also because of the striking breadth of the USPS ban, the cases that have applied the *Heller* dicta provide no support for Defendants' position. For example, in *United States v. Masciandaro*, 648 F.Supp.2d 779, 790 (E.D.Va. 2009), the court noted that the National Park Service regulation at issue in that case "does not prohibit carrying or possessing a loaded firearm on National Park land outside motor vehicles, nor does [36 C.F.R. § 2.4(b)] prohibit carrying or possessing unloaded firearms in motor vehicles on National Park land." The USPS firearms ban is not nearly so narrow as 18 U.S.C. § 930, 36 C.F.R. § 2.4(b), or any of the other regulations cited by Defendants, because it prohibits all firearms without exception, both inside and outside government buildings.[3]

The difference between the USPS ban and other regulations of firearms on federal property is significant. Because the USPS ban extends outside government buildings—and thus outside the *Heller* dicta—law-abiding citizens like the Bonidys are effectively prohibited from exercising the right to carry when traveling to, from, or through USPS property; the USPS ban does not even allow them to safely store a firearm in their vehicles.[4]

---

[3] The vacated panel decision in *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009) actually cuts against the broad USPS ban, because the court noted that, among the venues covered by the regulation at issue in that case, "[t]he only one of these that seems odd as a 'sensitive place' is parking lots." The other cases cited by Defendants, Mot. to Dismiss at 13, either do not analyze the Second Amendment, *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010), or do so in such a cursory manner as to have little persuasive value. *See United States v. Davis*, 304 Fed. Appx. 473 (9th Cir. 2008); *United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008).

[4] Defendants imply that the Plaintiffs can park off-site if they wish to exercise their Second Amendment rights. Mot. to Dismiss at 21. It is a question of fact whether this accommodation could actually save the USPS ban as applied here. At the motion to dismiss stage, this inference cuts against Defendants. *Dias*, 567 F.3d at 1184.

Because the USPS ban is an outlier among regulations of firearms on federal property, there is substantial reason to conclude that it is not included among those "presumptively lawful" regulations the *Heller* court had in mind when it referred to prohibitions on carrying firearms "in . . . government buildings." Indeed, the USPS ban falls outside the plain terms of the *Heller* dicta because the USPS ban extends outside government buildings.

B. **The Postal Property at Issue in this Case is Not "Sensitive."**

The *Heller* dicta concerned carrying firearms in "sensitive places." 554 U.S. at 626. The postal property at issue in this case is not "sensitive" in the sense of the *Heller* dicta. Indeed, in the only post-*Heller* case to consider the constitutionality of the USPS ban, restricted access portions of postal property were determined to be "sensitive places," but the court declined to extend this reasoning to the public areas of postal property:

> [T]he constitutionality of the regulation's ban on carrying firearms . . . in public areas without official purpose—i.e., operating a vehicle [on postal property] while . . . armed with a loaded handgun stowed in the glove compartment . . . [is not] before the Court in this case, which involves the prohibited conduct of carrying and storing firearms without official purpose *in the gated/restricted access employee parking, loading and unloading area* of the subject "Postal property."

*United States v. Dorosan*, No. 08-042, Written Reasons for Conviction and Sentence at 9 (E.D. La. July 7, 2008) (emphasis added).[5] The Fifth Circuit also noted the peculiarly sensitive nature of the restricted access postal property at issue in *Dorosan*, which the Post Office used "for loading mail and staging its mail trucks." *United States v. Dorosan*, 350 Fed. Appx. 874 (5th Cir. 2009). Here, the Bonidys claim only a right to possess firearms in public, non-restricted areas of postal property. Accordingly, there is substantial reason to conclude that the USPS

---

[5] Attached hereto as Exhibit 1.

10

firearms ban is not narrowly focused on those "sensitive places" the *Heller* court had in mind when it referred to "presumptively lawful" prohibitions on carrying firearms.

### C. Presumptively Lawful Regulations May Still be Unconstitutional.

Even if the USPS firearms ban could be crammed into the *Heller* dicta, this would not result in a "free pass" for Defendants. As the Seventh Circuit explained in a case challenging the felon-in-possession prohibition of 18 U.S.C. § 922(g)(1):

> [T]he government does not get a free pass simply because Congress has established a "categorical ban"; it still must prove that the ban is constitutional, a mandate that flows from *Heller* itself. *Heller* referred to felon disarmament bans only as "presumptively lawful," which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge. Therefore, putting the government through its paces in proving the constitutionality of § 922(g)(1) is only proper.

*United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *see also United States v. Chester*, ___ F.3d ___, 2010 WL 5396069, at *5 (4th Cir. 2010) ("In fact, the phrase 'presumptively lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'") (quoting *Williams*). Indeed, if the *Heller* dicta absolved the USPS of the burden of proving the constitutionality of its firearms ban, then *Heller* would impose something approximating the rational basis test; that approach was explicitly rejected by *Heller*. 554 U.S. at 628 n.27 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect."); *see also Chester*, 2010 WL 5396069, at *5.

Tenth Circuit precedent post-*Heller* does not absolve Defendants of their burden to prove the constitutionality of the USPS firearms ban. In *United States v. McCane*, 573 F.3d 1037 (10th

Cir 2009), the court rejected a challenge to the felon-in-possession prohibition of 18 U.S.C. § 922(g)(1) because the law of the circuit already foreclosed such a challenge. *Id*. at 1047 (citing *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009) (Holding challenge to § 922(g)(1) "was foreclosed in this circuit by *United States v. Darrington*. . . . *Heller* provides no basis for reconsidering *Darrington*. We therefore reaffirm *Darrington* and the constitutionality of § 922(g)." (internal citations omitted))). Nothing in *Heller* casts doubt on the Tenth Circuit's conclusion in *United States v. Baer*, 235 F.3d 561, 564 (10th Cir. 2000), that § 922(g)(1) is constitutional. *McCane*, 573 F.3d at 1049 n.2 (Tymkovich, J., concurring). Thus, the *McCane* panel did not need to undertake an independent analysis of § 922(g)(1) in light of *Heller*, because the Tenth Circuit had already analyzed § 922(g)(1) in *Baer*. This approach—assuming that *Heller* left § 922 precedent untouched—has been applied in a number of the Circuits. *See United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009); *United States v. Frazier*, 314 Fed. Appx. 801, 807 (6th Cir. 2008); *United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008).

Unlike § 922, no court has analyzed the USPS firearms ban as it applies in the instant case, *i.e.*, law-abiding citizens exercising the right to carry on public, non-sensitive postal property. Moreover, as applied to Plaintiffs, the conduct prohibited by the ban falls squarely within the right of law-abiding citizens "to possess and carry weapons in case of confrontation" protected by the Second Amendment. *Heller*, 554 U.S. at 592. Accordingly, Defendants' Motion to Dismiss should be denied.

**IV.   Under Strict or Intermediate Scrutiny, Defendants Bear the Evidentiary Burden.**

Defendants urge this Court to apply intermediate scrutiny to the USPS firearms ban. Mot. to Dismiss at 19. Although strict scrutiny is the appropriate standard, this Court need not decide this question at the motion to dismiss stage. Under either standard of scrutiny, Defendants bear the burden of proving that the ban does not violate the Constitution. *Abilene Retail No. 30, Inc. v. Dickinson County*, 492 F.3d 1164, 1173–74 (10th Cir. 2007) (citing *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002)). This requires Defendants to offer evidence to prove, at the very least, that the USPS firearms ban is a:

> [R]easonable restriction[] on the time, place, or manner of protected [conduct], [that] the restriction[] [is] justified without reference to the content of the regulated [conduct], that [it is] narrowly tailored to serve a significant governmental interest, and that [it] leave[s] open ample alternative channels . . . .

*United States v. Kokinda*, 497 U.S. 720, 738 (1990) (internal quotations omitted). Moreover, Plaintiffs must then have an opportunity to "rebut the [Defendants'] proffered evidence." *Abilene Retail*, 492 F.3d at 1174. This evidentiary inquiry is inappropriate at the motion to dismiss stage. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation omitted)). Accordingly, Defendants' Motion to Dismiss should be denied.[6]

---

[6] Plaintiffs submit that strict scrutiny is the appropriate standard of review; however, neither standard of scrutiny can appropriately be applied at the motion to dismiss stage. *Cf. Abilene Retail*, 492 F.3d at 1174. Thus, Plaintiffs have not elaborated on why strict scrutiny is the appropriate standard. Should this Court desire briefing on the standard of scrutiny at this early stage in the proceedings, Plaintiffs respectfully request leave to file a sur reply.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.  Should this Court find Plaintiffs' Complaint deficient for any reason, Plaintiffs respectfully request leave to file an amended complaint.

DATED this 14th day of January 2011.

                          Respectfully Submitted By:

                          /s/ James M. Manley
                          James M. Manley, Esq.
                          Mountain States Legal Foundation
                          2596 South Lewis Way
                          Lakewood, Colorado 80227
                          (303) 292-2021
                          (303) 292-1980 (facsimile)
                          jmanley@mountainstateslegal.com

                          Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

       I hereby certify that on the 14th day of January 2011, I filed the foregoing document electronically through the CM/ECF system, which caused the following to be served by electronic means:

Leslie Farby
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7220
P.O. Box 883
Washington, DC 20044
Lesley.Farby@usdoj.gov


                                                 /s/ James M. Manley
                                               James M. Manley