**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS

    Plaintiffs,

    v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
STEVE RUEHLE, Postmaster, Avon, Colorado

    Defendants.

___

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
___

**INTRODUCTION**

As the Supreme Court has made clear, although the Second Amendment protects an "individual right to possess and carry weapons in case of confrontation," that right is "not unlimited," and does not permit any person to possess any weapon wherever he or she may choose. District of Columbia v. Heller, 554 U.S. 570, 592, 595 (2008). The Court specifically stated in Heller that "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" are "presumptively lawful," and further explained that restrictions on firearms in these particular sensitive places were merely "examples" of lawful regulatory measures. Id. at 626-27. Notwithstanding this clear language, plaintiffs contend that the United States Postal Service regulation banning firearms on postal property ("USPS regulation") is

1

unconstitutional because it extends to property beyond "government buildings." Plaintiffs' assertion contradicts the Supreme Court's statement in Heller and the interpretations of that statement by the Tenth Circuit and numerous other courts, and defies common sense. Because the USPS regulation only prohibits the possession of firearms in a sensitive place, it does not even implicate the Second Amendment. Moreover, even assuming that the USPS regulation implicates conduct protected by the Second Amendment, it passes constitutional muster. Notwithstanding plaintiffs' incorrect description of the government's evidentiary burden, and their attempt to manufacture a factual dispute, plaintiffs' claim fails as a matter of law. Accordingly, the Court should grant defendants' Motion to Dismiss.

## ARGUMENT

**I.  The USPS Regulation Does Not Regulate Conduct Protected by the Second Amendment**

In its recent decision in United States v. Reese, the Court of Appeals for the Tenth Circuit set forth an analytical framework for addressing Second Amendment challenges to federal statutes. 627 F.3d 792 (10th Cir. 2010).[1] As the court explained in Reese, "Heller . . . suggests a two-pronged approach to Second Amendment challenges to federal statutes." Id. at 800 (quoting United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)). "Under this approach, a reviewing court first asks whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. (internal alterations omitted). "If it does not, the court's inquiry is complete." Id. at 800-01. "If it does, the court must evaluate the law under some form of means-end scrutiny." Id. at 801. "If the law passes muster under that standard, it is constitutional." Id. "If it fails, it is invalid." Id.

---

[1] The Tenth Circuit issued its decision in Reese after defendants filed their motion to dismiss. See Notice of Supplemental Authority (Rec. Doc. 7).

The USPS regulation does not "impose[] a burden on conduct falling within the scope of the Second Amendment's guarantee," id. at 800, because it only regulates the possession of firearms in a sensitive place, which falls outside the scope of the Second Amendment's guarantee. Therefore, this Court's inquiry should end at step one of Reese's two-step inquiry.

### A.  There Is No Second Amendment Right to Carry a Firearm Onto Postal Property

The Second Amendment does not protect the right to bring firearms wherever an individual may choose. See Heller, 554 U.S. at 626 ("From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."). In Heller, the Supreme Court held that a "ban on handgun possession in the home" and "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violated the Second Amendment. Id. at 635. Although the Court interpreted the text of the Second Amendment to "guarantee the individual right to possess and carry weapons in case of confrontation," id. at 592, the Court repeatedly emphasized that "the right was not unlimited." Id. at 595 ("[W]e do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.") (emphases in original).

The Court stated that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27. And the Court specifically noted that those "presumptively lawful regulatory measures" were merely examples, and that the list "does not purport to be exhaustive." Id. at 626-27 n.26.

3

As explained in defendants' opening memorandum, the "presumptively lawful regulatory measures" identified in Heller, including "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," id. at 626-27, regulate conduct outside the scope of the Second Amendment. See, e.g., United States v. Nolan, 342 Fed. Appx. 368, 372 (10th Cir. 2009) (Heller "specifically foreclosed [the] argument" that possession of a firearm by a convicted felon "was protected by the Second Amendment"); Marzzarella, 614 F.3d at 91-92, cert. denied, __ S. Ct. __, 2011 WL 55737, 79 U.S.L.W. 3401 (Jan. 10, 2011) (regulatory measures identified in Heller concern "exceptions to the right to bear arms" to which "the Second Amendment affords no protection"); Nordyke v. King, 563 F.3d 439, 459 (9th Cir. 2009), vacated on other grounds, 611 F.3d 1015 (9th Cir. 2010) ("[A]lthough the Second Amendment . . . protects a right to keep and bear arms for individual self-defense, it does not contain an entitlement to bring guns onto government property."). Because the USPS regulation only prohibits the possession of firearms in a sensitive place, it does not implicate the Second Amendment.

### B. The Postal Property Encompassed By the USPS Regulation Is a Sensitive Place

Plaintiffs appear to concede that the Postal Service may prohibit firearms in Postal Service buildings. Pl. Opp. to Def. M. to Dismiss (Rec. Doc. 10) ("Pl. Opp.") at 8-11. They contend, however, that the USPS regulation is not a presumptively lawful regulation of firearms in a sensitive place because it extends outside government buildings to areas such as Postal Service-owned parking lots adjacent to government buildings. Id. This argument fails on several levels.

First, plaintiffs' suggestion that government property beyond the inside of a building is not sensitive is baseless. The Supreme Court in Heller made clear that the specific

4

"presumptively lawful regulatory measures" identified in its decision served "only as examples" and did not constitute an exhaustive list. 554 U.S. at 626-27 & n.26. The Tenth Circuit has taken the Supreme Court at its word, concluding that categories of restrictions beyond those expressly enumerated in Heller do not violate the Second Amendment. In re United States, 578 F.3d 1195, 1200 (10th Cir. 2009) (unpublished) ("Nothing suggests that the Heller dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence."); United States v. Richard, 350 Fed. Appx. 252, 260 (10th Cir. 2009) (holding that the prohibition on possession of firearms by drug users does not violate the Second Amendment); United States v. Yanez-Vasquez, 2010 WL 411112 at *4 (D. Kan. Jan. 28, 2010) (applying this reasoning to conclude that the statute prohibiting illegal aliens from possessing firearms does not violate the Second Amendment).

Numerous other courts have also relied on Heller to uphold restrictions on firearms in sensitive places other than government buildings. See United States v. Dorosan, 350 Fed. Appx. 874, 875 (5th Cir. 2009), cert. denied, 130 S. Ct. 1714 (2010) (postal property, including parking lots); Digiacinto v. Rector & Visitors of George Mason Univ., __ S.E.2d __, 2011 WL 111584, at *5 (Va. Jan. 13, 2011) (college campus); GeorgiaCarry.Org, Inc. v. Georgia, 2011 WL 240108, at *13 (M.D. Ga. Jan. 24, 2011) (places of worship); Nordyke, 563 F.3d 439 (county property); United States v. Masciandaro, 648 F. Supp. 2d 779, 790 (E.D. Va. 2009) (motor vehicles on National Park land); Warden v. Nickels, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010) (park facilities); United States v. Davis, 304 Fed. Appx. 473, 474 (9th Cir. 2008) (aircraft); United States v. Walters, 2008 WL 2740398 (D.V.I. July 15, 2008) (within 1,000 feet of a school zone).

The "overriding need for security" acknowledged by plaintiffs, Pl. Opp. at 8, does not stop at the door to the post office. The Postal Service is statutorily charged with "prescrib[ing] regulations necessary for the protection and administration of property owned or occupied by the Postal Service and persons on the property." 18 U.S.C. § 3061(c)(4)(A). The Postal Service's obligation to protect its property and individuals on its property is not limited to buildings themselves, but extends to parking lots, loading stations, postal vehicles, and all other property owned and operated by the Postal Service, as the Fifth Circuit has expressly recognized. See Dorosan, 350 Fed. Appx. at 875 (holding that parking lot used by the Postal Service as a place of regular government business "falls under the 'sensitive places' exception recognized by Heller").[2] The postal property covered by the USPS regulation is a "sensitive place" within the meaning of Heller.

Moreover, plaintiffs' characterization of the USPS regulation as a "uniquely broad prohibition," id. at 8, and an "outlier among regulations of firearms on federal property," id. at 10, is inaccurate. Many other federal statutes and regulations, including those identified in defendants' opening brief, prohibit firearms on government property beyond the inside of government buildings. See, e.g., 32 C.F.R. § 1903.10 (Central Intelligence Agency) (prohibiting "[k]nowingly possessing or causing to be present a weapon on an Agency installation," including "incident to hunting or other lawful purposes," defined as "property within the Agency

---

[2] In support of their argument that the postal property at issue is not "sensitive," plaintiffs cite dictum by the Magistrate Judge in United States v. Dorosan, specifying that the constitutionality of the regulation's ban on firearms in public areas of postal property was not at issue in that case. Pl. Opp. at 10. Plaintiffs suggest that this dictum supports the notion that public areas of postal property are not "sensitive places." Plaintiffs read too much into this language, especially in light of the holding just one paragraph earlier that the USPS regulation passes constitutional muster and that the "Government has a significant interest in protecting the purposes to which it has dedicated the property (facilitating postal transactions) and ensuring the security of postal employees and the public. . . ." Pl. Opp., Ex. 1 at 9 (emphasis supplied).

6

Headquarters Compound and the property controlled and occupied by the Federal Highway Administration located immediately adjacent to such Compound, and property within any other Agency installation and protected property (i.e., property owned, leased, or otherwise controlled by the Central Intelligence Agency")); 32 C.F.R. § 234.10 (Department of Defense) (prohibiting "possessing, carrying, or using" a weapon while on the "Pentagon Reservation," defined as "Area of land and improvements thereon . . . includ[ing] all roadways, walkways, waterways, and all areas designated for the parking of vehicles").[3]

Even the statute identified by plaintiffs as appropriately balancing "the overriding need for security in federal courthouses" with constitutional guarantees, Pl. Opp. at 8, specifically authorizes the prohibition of firearms outside of government buildings. As plaintiffs correctly state, 18 U.S.C. § 930(e)(1) prohibits the possession of a firearm "in a Federal court facility." But that very statute allows for the prohibition on firearms not only in federal court <u>buildings</u>, but also on the grounds "appurtenant to such building." 18 U.S.C. § 930(f) ("Nothing in this section limits the power of a court of the United States to punish for contempt or to promulgate rules or orders regulating, restricting, or prohibiting the possession of weapons within any building housing such court or any of its proceedings, <u>or upon any grounds appurtenant to such building</u>.") (emphasis supplied).

---

[3] <u>See also</u> 31 C.F.R. § 407.13 (Department of Treasury) ("No person while on the property shall carry firearms, or other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 38 C.F.R. § 1.218(a)(13) (Department of Veterans Affairs) ("No person while on property shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 36 C.F.R. § 504.14 (Smithsonian Institution Building and Grounds) ("No person while on the premises shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."). Although, as plaintiffs point out, these regulations cited in defendants' opening brief do not expressly prohibit storage of a firearm in addition to carrying, Pl. Opp. at 8, plaintiffs do not explain what difference this makes for constitutional purposes.

**II.     Even Assuming the USPS Regulation Regulates Conduct Protected by the Second Amendment, It Is Constitutional**

    **A.     The USPS Regulation Is a Reasonable Regulation Enacted By the Postal Service As Proprietor of Postal Property**

Plaintiffs acknowledge that "governmental actions are subject to a lower level of constitutional scrutiny when the governmental function operating is not the power to regulate or license, as lawmaker, but, rather, as proprietor, to manage its internal operations." United States v. Kokinda, 497 U.S. 720, 725 (1990) (plurality opinion) (quoting Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 896 (1961)) (internal alterations omitted). See Pl. Opp. at 13 (quoting Kokinda, 497 U.S. at 738 (Kennedy, J., concurring in the judgment)) (articulating reasonableness test in First Amendment context).[4]  Where, as here, the government is "acting in its proprietary capacity," its action is valid "unless it is unreasonable, . . . arbitrary, capricious, or invidious." Kokinda, 497 U.S. at 725-26 (quoting Lehman v. City of Shaker Heights, 418 U.S. 298, 303 (1974)); id. at 737 (concluding that Postal Service regulation prohibiting "[s]oliciting alms and contributions on postal premises" "passes constitutional muster under the Court's usual test for reasonableness"). See Dorosan, 350 Fed. Appx. at 875 (explaining that Postal Service's "restrictions on guns stemmed from its constitutional authority as the property owner").

As explained above, the USPS regulation was promulgated pursuant to the Postal Service's constitutional and statutory authority to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Postal Service and persons on the property." 18 U.S.C. § 3061(c)(4)(A).  The regulation promotes order and public safety

---

[4] Plaintiffs contend, without support, that strict scrutiny is the appropriate standard of scrutiny and request an opportunity to submit additional briefing on this point if necessary. Pl. Opp. at 13 & n.6. But if plaintiffs wished to argue that strict scrutiny is the proper standard, their opposition brief provided that opportunity. Plaintiffs should not be given a second bite at the apple.

8

on postal property, actions that are clearly not "unreasonable, arbitrary, capricious, or invidious." Kokinda, 497 U.S. at 725-26. The Court of Appeals for the Fifth Circuit has already addressed this precise regulation and concluded that, even assuming the right protected by the Second Amendment "extends to carrying a handgun in [a] car," the USPS regulation "is constitutional under any applicable level of scrutiny." Dorosan, 350 Fed. Appx. at 875-76.[5]

### B. Plaintiffs' Challenge to the Constitutionality of the USPS Regulation Is Appropriately Resolved on a Motion to Dismiss

Plaintiffs' contention that this Court cannot resolve this case at the motion to dismiss stage is erroneous. Plaintiffs are raising a facial challenge to the regulation, which, as the Tenth Circuit has held repeatedly, is "a strictly legal question," as "it does not involve the application of the statute in a specified factual setting." Kansas Judicial Review v. Stout, 519 F.3d 1107, 1118 (10th Cir. 2008) (quoting Acorn v. City of Tulsa, 835 F.2d 735, 740 (10th Cir. 1987)). Plaintiffs have not alleged that the application of the regulation to them violated their Second Amendment rights; indeed, there is no dispute that the statute has not been applied to plaintiffs. Rather, plaintiffs ask this Court to issue a broad injunction, "[p]ermanently enjoin[ing] Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, from enforcing 39 C.F.R. § 232.1(*l*), which prohibits possession of functional firearms on any real property under the charge and control of the USPS." First Am. Compl. (Rec. Doc. 5), Prayer for Relief.

As the Court of Appeals has explained, "[i]n a declaratory judgment action no one has been charged so the court cannot evaluate the statute as applied." United States v. Gadreau, 860

---

[5] The district court in that case also expressly found that, "[w]ithout question, [the USPS regulation] bolsters the United States Postal Service's zero tolerance for workplace violence and is a regulation designed to maintain safety and order on postal property." United States v. Dorosan, 2008 WL 2622996 at *6 (E.D. La. June 30, 2008) (denying defendant's motion to dismiss indictment on Second Amendment grounds).

9

F.2d 357, 360-61 (10th Cir. 1988). The standard applied to the "general question of the facial constitutionality" of a regulation is "quite different" from the standard "in a case involving the application of a regulation, ordinance, or statute to a particular set of facts." Acorn, 835 F.2d at 740. Because there are no facts to which the statute has been applied, "the facial validity of a statute is decided by reference to all of the conduct that is proscribed by the statute." Id. Plaintiffs "confront a heavy burden in advancing their claim." Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) (citation omitted). "Facial challenges to statutes are generally disfavored as 'facial invalidation is, manifestly, strong medicine that has been employed by the Supreme Court sparingly and only as a last resort.'" Golan v. Holder, 609 F.3d 1076, 1094 (10th Cir. 2010) (quoting Finley, 524 U.S. at 580) (internal alterations omitted).[6]

As numerous other courts have already done when presented with facial challenges to other restrictions on the possession of firearms, this Court can decide, as a matter of law, whether the USPS regulation prohibits conduct protected by the Second Amendment, and if so, whether the regulation passes constitutional muster under the appropriate level of scrutiny. See, e.g., GeorgiaCarry.Org, 2011 WL 240108, at *13 (dismissing Second Amendment challenge to state statute prohibiting weapons in places of worship); Digiacinto, 2011 WL 111584, at *1, *5 (dismissing constitutional challenge to state statute prohibiting weapons on university property, including "academic buildings, administrative office buildings, student residence buildings,

---

[6] Relying on the Seventh Circuit's decision in United States v. Williams, 616 F.3d 685 (7th Cir. 2010), plaintiffs contend that defendants should not get a "free pass" because of "the possibility" that a presumptively lawful categorical ban on firearms "could be unconstitutional in the face of an as-applied challenge." Pl. Opp. at 11 (quoting Williams, 616 F.3d at 692). Plaintiffs' reliance on Williams is unavailing because, unlike the defendant in that case, plaintiffs have not been prosecuted under the challenged regulation. Cf. In re United States, 578 F.3d at 1200 (unpublished) (rejecting the notion that Heller mandates an "individualized inquiry" into the future dangerousness of defendants charged with firearms violations) (citing United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009)).

dining facilities, or while attending sporting, entertainment or educational events" because university "is a 'sensitive place'"); Warden, 697 F. Supp. 2d at 1229-30 (dismissing claim that city ordinance prohibiting firearms at park facilities violated right to bear arms and noting that ordinance "is a reasonable and narrow limitation that is substantially and directly related to protecting public safety and welfare at parks where youth and children seek safe recreation").

Plaintiffs' contention that defendants must offer evidence to support the constitutionality of the ban, and that "Plaintiffs must then have an opportunity to rebut the Defendants' proffered evidence," Pl. Opp. at 13, is incorrect. The case on which plaintiffs rely, Abilene Retail No. 30, Inc. v. Dickinson County, 492 F.3d 1164 (10th Cir. 2007), involved a First Amendment challenge to a county zoning ordinance restricting the location and mode of operation of an adult bookstore. Id. at 1167. In that case, the government was using its power "to regulate or license" rather than "to manage its internal operations." Kokinda, 497 U.S. at 725. Moreover, as the Court of Appeals explained, "where First Amendment interests are implicated, this court is obligated to make an independent examination of the record in its entirety to ensure the challenged regulation does not improperly limit expressive interests." Abilene Retail, 492 F.3d at 1170. This involves an extensive inquiry unique to the free speech context.[7] Courts have not

---

[7] As the Court of Appeals explained in Abilene Retail, "[w]hen analyzing whether a time, place, or manner regulation violates the First Amendment's guarantee of freedom of speech, we must first determine whether the ordinance is content based or content neutral." 492 F.3d at 1171 (citing City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434 (2002)). To determine content neutrality, the court must "verify[] that the predominant concerns motivating the ordinance were with the secondary effects of adult speech, and not with the content of the adult speech." Id. (quoting Alameda Books, Inc., 535 U.S. at 440-41). "So long as the materials [used to justify the ordinance] are reasonably believed to be relevant to the problem that the municipality addresses, we will presumptively classify the . . . legislative purpose as content neutral." Id. (internal alterations and citation omitted). "Once a local government has established that its purpose in enacting a time, place, or manner regulation was legitimate," the court must determine whether the ordinance was "designed to serve a substantial governmental interest and allow for reasonable alternative avenues of communication." Id. at 1173 (quoting

11

used this approach in the Second Amendment context, and with good reason. Although aspects of First Amendment jurisprudence will certainly assist in understanding the meaning and scope of the Second Amendment, see Motion to Dismiss (Rec. Doc. 6) at 18-19, Heller's references to the First Amendment "are hardly an invitation to import the First Amendment's idiosyncratic doctrines wholesale into a Second Amendment context, where, without a link to expressive conduct, they will often appear unjustified." United States v. Chester, 628 F.3d 673, 687 (4th Cir. 2010) (Davis, J., concurring in the judgment).

Courts considering Second Amendment challenges – even as-applied challenges – have generally not required the government to submit independent evidence to determine that a statute passes constitutional muster under intermediate scrutiny.[8] As the Seventh Circuit explained, "Heller did not suggest that disqualifications would be effective only if the statute's benefits are first established by admissible evidence." United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010) (en banc), petition for cert. filed, No. 10-7005 (Oct. 10, 2010) (rejecting Second

---

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50 (1986)). "In answering this question, we apply a burden-shifting approach." Id. (citing Alameda Books, 535 U.S. at 438-39). "First, the Board must show that, in passing [the challenged ordinance], it relied on evidence that is reasonably believed to be relevant for demonstrating a connection between speech and a substantial, independent government interest." Id. "If the Board can make this showing, [the plaintiff] may rebut the Board's proffered evidence either by demonstrating that the Board's evidence does not support its rationale or by furnishing evidence that disputes the Board's factual findings." Id. at 1174. "If [the plaintiff] succeeds in casting doubt on the Board's rationale in either manner then burden shifts back to the Board to supplement the record with evidence renewing support for a theory that justifies its ordinance." Id.

[8] Indeed, even in the First Amendment context, the Supreme Court has rejected the notion that an evidentiary inquiry is always necessary to uphold restrictions on speech under elevated constitutional scrutiny. See, e.g., Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. 1324, 1340 (2010) (rejecting notion that government must adduce evidence to justify restriction and noting "[w]hen the possibility of deception is as self-evident as it is in this case, we need not require the State to conduct a survey of the public before it may determine that the advertisement had a tendency to mislead") (internal alterations and citations omitted); Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995) (relying "solely on history, consensus, and 'simple common sense'" to justify speech restriction under strict scrutiny) (citation omitted).

12

Amendment challenge to statute prohibiting persons convicted of misdemeanor crimes of domestic violence from possessing firearms). "[S]ome categorical exclusions are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." Id. In Skoien, the court took as given the importance of the government's objective of "preventing armed mayhem" and concluded that "[b]oth logic and data establish a substantial relationship between § 922(g)(9) and this objective." Skoien, 614 F.3d at 642.[9]

Similarly, in Reese, the Tenth Circuit did not require the government to submit evidence in the district court in order to find that the statute at issue passed intermediate scrutiny. Reese addressed the constitutionality of 18 U.S.C. § 922(g)(8), which prohibits the possession of a firearm while subject to a domestic protection order. 627 F.3d at 794. In that context, the government was using its "power to regulate or license, as lawmaker" rather than, as here, acting in its capacity as "proprietor, to manage its internal operations." Kokinda, 497 U.S. at 725. Accordingly, the court employed the traditional standard for intermediate scrutiny, under which "the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." Reese, 627 F.3d at 802 (quoting Williams, 616 F.3d at 692). The court found that this standard had been met, noting that there was no "serious[] dispute" about the statutory objective of "keep[ing] firearms out of the hands of" people who "undeniably pose a heightened danger of misusing" them. Id. The court also relied on the Seventh Circuit's decision in Skoien, which addressed a different statutory provision, as "point[ing] to evidence that is highly relevant to, and supportive of, the

---

[9] Indeed, although the parties in Skoien cited empirical sources in their briefs, the en banc court did not consider itself bound exclusively to these materials in deciding the case. See Skoien, 614 F.3d at 646-47 (Sykes, J., dissenting).

13

government's assertion that the restriction imposed by § 922(g)(8) is substantially related to an important government objective." Id. (citing Skoien, 614 F.3d at 643-44).  Without requiring the submission of evidence in the district court, the Court of Appeals also found that the statute would pass muster even under a strict scrutiny standard, noting that the "government's interest in preventing armed domestic violence is compelling and the specific requirements outlined in § 922(g)(8) are narrowly tailored to ensure that only persons subject to specific types of domestic protection orders are subject to restrictions on their Second Amendment rights." Id. at 804 n.4.[10] Plaintiffs' contention that this Court must hear evidence on the constitutionality of the USPS regulation in order to find that the regulation passes constitutional muster is directly contrary to the approach used in Reese.

## CONCLUSION

This Court should find, as a matter of law, that the USPS regulation does not implicate a right protected by the Second Amendment.  Alternatively, even if the regulation does implicate core conduct protected by the Second Amendment, it passes constitutional muster and should be upheld.

Dated: February 11, 2011                                   Respectfully submitted,

                                                                                         TONY WEST
                                                                                         Assistant Attorney General

                                                                                        JOHN F. WALSH
                                                                                        United States Attorney

                                                                                        JOHN R. GRIFFITHS
                                                                                       Assistant Branch Director

---

[10] But see Chester, 628 F.3d at 683 (remanding to district court "to afford the government an opportunity to shoulder its burden" under intermediate scrutiny of "offer[ing] sufficient evidence" to "establish a substantial relationship between § 922(g)(9) and an important governmental goal" and "Chester an opportunity to respond").

                                            s/ Lesley Farby
                                            LESLEY R. FARBY (DC #495625)
                                            United States Department of Justice
                                            Civil Division
                                            Federal Programs Branch
                                            20 Massachusetts Avenue, N.W.
                                            Washington, D.C. 20530
                                            Telephone:  (202) 514-3481
                                            Fax:  (202) 616-8470
                                            E-mail: Lesley.Farby@usdoj.gov

                                            *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 11, 2011, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
jmanley@mountainstateslegal.com

                                            /s/ Lesley Farby_____
                                            LESLEY FARBY