IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| DEBBIE BONIDY, TAB BONIDY | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:10-cv-02408-RPM |
| | ) | |
| UNITED STATES POSTAL SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

MOTION HEARING
TRANSCRIPT OF PROCEEDINGS
_____

Proceedings held before the HONORABLE RICHARD P. MATSCH, U.S. District Judge for the District of Colorado, beginning at 1:56 p.m. on the 21st day of March, 2011 in Courtroom A, United States Courthouse, Denver, Colorado.

APPEARANCES

| | |
|---|---|
| For the Plaintiffs: | James M. Manley, Esq.<br>Mountain States Legal Foundation<br>2596 South Lewis Way<br>Lakewood, Colorado  80227 |
| For the Defendants: | Lesley Rebecca Farby, Esq.<br>US Department of Justice-DC #883<br>20 Massachusetts Avenue, N.W.<br>Washington, D.C.  20044 |
| | Amy Padden, Esq.<br>U.S. Attorney's Office<br>1225 17th Street East<br>Denver, Colorado  80202 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

```
 1                        P R O C E E D I N G S
 2       (At 1:56 p.m. on March 21, 2011, in the United States
 3  District Court at Denver, Colorado, before the HONORABLE
 4  RICHARD P. MATSCH, U.S. District Judge, with counsel for the
 5  parties present, the following proceedings were had:)
 6       THE COURT:  Please be seated.  Good afternoon.
 7            We're here in Civil Number 10-CV-2408, Debbie
 8  Bonidy, Tab Bonidy and National Association for Gun Rights
 9  against the Postal Service, Postmaster General, and
10  Postmaster at Avon, Colorado, and we're here on the
11  defendants' motion to dismiss under Rule 12(b)(6).
12            So, for the plaintiffs, Mr. Manley, and for the
13  defendants, Ms. Farby and you have co-counsel here, Ms.
14  Padden.
15       MS. FARBY:  Good afternoon, we have the U.S. Attorney's
16  Office and also Rod Eves (phonetic) from the U.S. Postal
17  Service.
18       THE COURT:  All right.  Well, from the--well, first of
19  all, I guess disclosure is required of me under 455 of Title
20  28.  I am a long-standing member of the National Rifle
21  Association, have been, I don't know how long, pay dues,
22  annual dues, receive a publication called The Rifleman.  I
23  have never participated or paid anything towards any of the
24  NRA's advocacy programs, nor participated in any of its
25  polling.
```

```
 1            Also, growing up in a rural area in the State of
 2   Iowa, I've had firearms since I was a teenager, and went
 3   squirrel and rabbit hunting.  I've continued to have an
 4   interest in firearms, and have many of them, long guns and
 5   handguns.  I do not consider my impartiality to be affected
 6   by my participation.  I haven't been hunting in quite a
 7   while, I have to admit.  Age has overtaken me in that regard.
 8   Target shooting still.
 9            So, any questions from counsel about that?
10       MS FARBY:  No.
11       MR. MANLEY:  No, Your Honor.
12       THE COURT:  Okay.  Now, you know, this is 12(b)(6), so
13   we take the allegations from the plaintiff as true.  But, Mr.
14   Manley, I need some clarification from you with respect to
15   the facts here.  If you'll come up?  Because I, of course,
16   have read the complaint, the amended complaint, the
17   correspondence between you and this counsel for the Postal
18   Service, Maryann Givens.  As I understand it, the plaintiffs
19   live in the mountains, have no postal service at their homes,
20   drive in to the Avon post office to pick up their mail.  Both
21   have concealed carry permits under Colorado law, and do carry
22   firearms.
23            What I don't understand is the scope of the problem
24   here, because we have to examine this case, I think, on as
25   applied basis.  I don't think you question the facial
```

1  validity of the regulation, insofar as it applies to postal
2  service buildings, activities.  But, your concern is the
3  breadth of it, and the parking area, but I don't understand
4  the problem with the parking.  I have no idea, I've been in
5  Avon, but I don't know the post office in Avon.  So, where do
6  you park there?
7       MR. MANLEY:  Well, Your Honor, the post office in Avon
8  has limited parking available.  Really, the only option for
9  my clients is to park at the post office.
10      THE COURT:  Tell me what do you mean, is there a parking
11 lot, is there parking in front of the street?
12      MR. MANLEY:  There is a parking lot adjacent to the post
13 office.  There is street parking across the street from the
14 post office, although that street parking is heavily
15 restricted based on the snow removal needs of the City of
16 Avon, which are considerable, obviously, through most of the
17 year.  So, most of the year, the only feasible place to park
18 is in the parking lot that's adjacent to the post office that
19 is postal property.
20      THE COURT:  And, I take it you've never received any
21 further clarification from Maryann Givens about the parking?
22      MR. MANLEY:  Well, as I understand the post office
23 position, is that the postal ban, the firearms ban extends to
24 all postal property, including their parking lot.  So, simply
25 by driving onto the parking lot, my clients violate the ban.

 1          THE COURT:  Well, are we talking about handguns here?
 2          MR. MANLEY:  In this situation, yes.
 3          THE COURT:  Concealed carry obviously is a handgun.
 4          MR. MANLEY:  Yes, Your Honor.
 5          THE COURT:  So, is the understanding they can't put
 6   their guns in a locked glove compartment?
 7          MR. MANLEY:  That is how the post office has enforced
 8   the regulation in the past.  Now, obviously, the Fifth
 9   Circuit case, <u>Dorrison</u> (phonetic), is a little bit different,
10   but there, we were talking about a secured area of the post
11   office, and we were talking about a postal employee.  But,
12   the post office took the position in that case that the ban
13   extended to postal parking lots, and that does seem to be the
14   position of the post office in this case.
15          THE COURT:  At least that's where we are this afternoon?
16          MR. MANLEY:  Exactly.
17          THE COURT:  Your challenge is to the parking lot then,
18   isn't it?
19          MR. MANLEY:  Certainly--
20          THE COURT:  And, to vehicle in the parking lot.  I don't
21   understand the plaintiffs to contend they can walk into the
22   postal--to the post office with firearms concealed.
23          MR. MANLEY:  Well, certainly at a bare minimum, the
24   postal ban is unconstitutional because it does not allow the
25   plaintiffs to store a firearm in their car.  That effectively

```
 1   prohibits them from carrying a firearm when they go to the
 2   post office and come from it.
 3        THE COURT:  Yeah, but you're not contending that they
 4   should be able to walk into the post office with--carrying
 5   firearms?
 6        MR. MANLEY:  Well, as it's written, the postal ban is
 7   unconstitutional, so it can be struck--it has to be struck
 8   down.  But, there may be leeway for the post office to
 9   regulate--
10        THE COURT:  Well, I'm trying to get to the focus of this
11   case.  You know, obviously, a postal building is a sensitive
12   area.  You agree with that?
13        MR. MANLEY:  Well, respectfully, Your Honor, I don't.  I
14   think that the post office certainly takes the position that
15   the post offices are sensitive buildings.  But--
16        THE COURT:  Well, we've had a lot of violence in post
17   offices in the United States.
18        MR. MANLEY:  Well, how much of that violence is
19   occasioned by postal employees, and how much is occasioned by
20   the public is not a question--I don't know the statistics on
21   that.  But, arguably, we're in a sensitive place right now,
22   certainly, I think.
23        THE COURT:  Yeah, we don't allow people to bring
24   firearms in here, carry--having a permit or not.
25        MR. MANLEY:  Right.
```

```
 1      THE COURT:  Even the police don't bring their firearms
 2  in here.
 3      MR. MANLEY:  Absolutely, Your Honor.  And, the reason
 4  that this building is a sensitive place, like the Pentagon or
 5  CIA facilities, is that--or airports, is that there's
 6  security, there's screening, and there's restricted access.
 7  And, when we look at the Heller (phonetic) dictum, when the
 8  Court is talking about sensitive places, it's obviously not
 9  talking about all the government buildings, or all schools,
10  it's not talking about the government being able to ban
11  firearms from firearms training schools, or from homes that
12  are used for schooling.
13      THE COURT:  Well, yeah, I'm sure.  But, you know, you're
14  not suggesting that you have to go post office by post
15  office, are you?
16      MR. MANLEY:  Well, I think what I'm suggesting is that--
17      THE COURT:  You're talking about that the burden is on
18  the defendants to prove the necessity for this restriction.
19  But, you know, we're at 12(b)(6), and I am trying to flesh
20  out the details of your contention.  And, it has been my
21  understanding before I took the bench, that you're talking
22  about the parking lot.
23      MR. MANLEY:  Certainly, Your Honor, we are talking about
24  the parking lot.  And, the Court really need not go beyond
25  that, because in this context, it's enough to simply say the
```

1   postal ban prohibits possession of firearms in the parking
2   lot, and, therefore, it's unconstitutional.  The Court need
3   not go beyond that point.
4        THE COURT:  That's what I'm trying to get, that we're
5   not talking about entering the post office building.
6        MR. MANLEY:  Not necessarily, no, Your Honor.
7        THE COURT:  Not necessarily?  Not at all; right?
8        MR. MANLEY:  Well, certainly, I think my clients would
9   take the position that the Second Amendment does not stop at
10  the door of the post office.  If the post office--
11       THE COURT:  I'm not talking about whether it stops or
12  starts.  I'm talking about whether this regulation can be
13  justified by saying that the postal building is a sensitive
14  place.
15       MR. MANLEY:  Well--
16       THE COURT:  Whether the parking lot is or not is
17  disputed.
18       MR. MANLEY:  Certainly, yes, the Court can limit the--
19  all the Court needs to determine is whether or not the ban on
20  firearms in the parking lot renders the regulation
21  unconstitutional.
22       THE COURT:  Okay, that helps.  Now, I'll hear from
23  defendants' counsel.
24       MR. MANLEY:  Thank you.
25       THE COURT:  Ms. Farby?

1     MS. FARBY:  Thank you, Your Honor.

2          Your Honor, the plaintiffs' constitutional

3  challenge is foreclosed by the Supreme Court's decision in

4  District of Columbia versus Heller, and dismissal of their

5  case is mandated by Heller and by the subsequent decisions of

6  the Tenth Circuit.  The Supreme Court made clear in the

7  Heller decision that the right protected by the Second

8  Amendment is limited.  The court--

9     THE COURT:  Well, the Supreme Court in Heller didn't

10 deal with locking your gun in a glove compartment in the

11 parking lot.

12    MS. FARBY:  No, it didn't, Your Honor.

13    THE COURT:  Okay.  So, that's what I'm trying to get to,

14 this focus.  I understand Heller.  Well, I don't know if I

15 understand it.  I read it.

16    MS. FARBY:  Well, Your Honor, what the Court said in

17 Heller, is that laws forbidding the carrying of firearms in

18 sensitive places, such as schools and government buildings,

19 are presumptively lawful.  And, the court further explained

20 that restrictions on firearms in those particular sensitive

21 places that it listed were merely examples of lawful

22 regulatory measures.  Numerous other courts since Heller have

23 relied on that decision to uphold restrictions on firearms in

24 sensitive places beyond only schools and government

25 buildings, the specific places listed by the court.

10

1      THE COURT:  Now, what the court really held, though, in
2  Heller, is that these restrictions in the District of
3  Columbia about keeping firearms in your home are invalid,
4  because these restrictions prohibit the effective use of the
5  firearm in self-defense.  That's the narrow holding, isn't
6  it?
7      MS. FARBY:  The narrow holding is limited to the right
8  to use firearms for self-defense in the home.
9      THE COURT:  Right.  Those were the facts, I mean, that
10 was what was at issue.  Now, we've got a lot of statements in
11 Heller that are different from the holding.
12     MS. FARBY:  That's correct, Your Honor.  And, there is
13 some dispute among the circuits as to whether the statement I
14 referenced about presumptively lawful regulatory measures is
15 an outright holding or dicta.  But, in any event, the Tenth
16 Circuit has held that courts are obligated to follow Supreme
17 Court dicta.  So, in any event, this Court is bound by the
18 court's language in Heller.
19         And, as I mentioned, numerous courts have relied on
20 that exact language to uphold restrictions on firearm in
21 sensitive places beyond schools and government buildings.
22 Most notably, the Fifth Circuit in United States versus
23 Dorrison, which was addressing the very regulation at issue
24 here, and that court found that postal property falls under
25 the sensitive places exception recognized by the Supreme

 1  Court in Heller.  So, plaintiffs' challenge to the postal
 2  service regulation fails under Heller.
 3      THE COURT:  Well, do we have a case on locked glove
 4  compartment in the parking lot?
 5      MS. FARBY:  Dorrison did involve possession of a firearm
 6  in a parking lot.  I'm not sure whether it was a locked glove
 7  compartment in that case or not, Your Honor.
 8      THE COURT:  Right.  Or even trigger lock for the
 9  firearms?
10      MS. FARBY:  I'm not sure, Your Honor.
11      THE COURT:  No, we don't have a case like that, to my
12  awareness.
13      MS. FARBY:  There may well not be, Your Honor.  I'm not
14  aware of one.
15      THE COURT:  So, that's the scope of this case, I think.
16      MS. FARBY:  Well, let me take a step back, Your Honor.
17  The Tenth Circuit's recent decision in United States v. Weiss
18  (phonetic) sets both a framework for addressing Second
19  Amendment challenges to federal regulations, and under this
20  approach, the Court first has to ask whether the challenged
21  regulation imposes a burden on conduct that falls within the
22  scope of the Second Amendment's guarantee.  If it does not,
23  the Court's inquiry is complete.  And, if it does, the Court
24  must proceed to evaluate the regulation under some form of
25  constitutional scrutiny.

1              In this case, Your Honor, the Court's inquiry
2    should really end at step one of this two-step inquiry,
3    because the postal service regulation at issue does not
4    impose a burden on conduct protected within the scope of the
5    Second Amendment's guarantee.  The Second Amendment does not
6    extend so far as to protect a right to carry a firearm into a
7    sensitive place.
8         THE COURT:  How do these folks get their mail, if they
9    can't at least park in the parking lot and lock their guns
10   up?
11        MS. FARBY:  Your Honor, there's no constitutional or
12   statutory right to delivery of mail by the U.S. Postal
13   Service.  The plaintiffs--I mean, counsel mentioned that--
14        THE COURT:  Well, does it have to be a constitutional
15   right?
16        MS. FARBY:  No, Your Honor, but as a practical matter,
17   as counsel mentioned, there is a public street at which
18   plaintiffs could park their vehicle.
19        THE COURT:  Except they have snow removal restrictions
20   on the streets in Avon.  Were you aware of that?
21        MS. FARBY:  I am now, Your Honor.  I'll take counsel's
22   word for it.
23        THE COURT:  All right.
24        MS. FARBY:  In any event, there is no constitutional
25   right to bring a firearm onto postal property.

```
 1        THE COURT:  Why does it have to be a constitutional
 2   right to bring a firearm on?  It's not bringing a firearm on,
 3   it's the scope of the Second Amendment, the constitutional
 4   right, individual right, and whether this restriction, if we
 5   narrow it down to the parking lot and to, you know, I don't
 6   know, I think we've got to have an amended complaint in this
 7   case, actually, to narrow it in the way in which I've
 8   narrowed it by my colloquy with plaintiffs' counsel, so that
 9   it's teed up in the proper way.  I'm not suggesting that the
10   amended complaint would be valid or not, but the focus here
11   is, at the moment, not clearly defined by the pleadings.
12        MS. FARBY:  Fair enough, Your Honor, but even under that
13   limited reading, even assuming plaintiffs were to amend their
14   complaint to solely challenge the regulation insofar as it
15   prohibits firearms in the parking lot, that, under the
16   approach adopted by the Tenth Circuit in Weiss, the Court
17   still has to ask the question of whether that regulation
18   limited to restrictions in a parking lot imposes a burden on
19   conduct falling within the scope of the Second Amendment's
20   guarantee.
21        THE COURT:  Well, why not?
22        MS. FARBY:  Because the Second Amendment does not extend
23   to the right to carry a firearm into a sensitive place, such
24   as postal property.  The plaintiffs' contention that postal
25   property outside of a government building is not a sensitive
```

14

```
 1   place is directly contrary to what the Supreme Court said in
 2   Heller about the list of regulatory measures not purporting
 3   to be exhaustive.  And, it also defies common sense.
 4        THE COURT:  Why does it defy common sense?
 5        MS. FARBY:  Well, Your Honor, plaintiffs acknowledge an
 6   overriding need for security, and that need does not stop at
 7   the door to the post office building.
 8        THE COURT:  There's an overriding need for the ability
 9   to defend one's self with a firearm.  That's what Heller
10   said.
11        THE COURT:  Within the home, Your Honor.
12        THE COURT:  Well, it's up in the air as to how far
13   beyond the home that goes.
14        MS. FARBY:  Well, Your Honor, the court was clear that
15   the--
16        THE COURT:  The court didn't strike down concealed
17   weapons laws, did it?
18        MS. FARBY:  No, it did not, Your Honor.
19        THE COURT:  All right.
20        MS. FARBY:  But, what the Court did say is that the
21   specific sensitive places listed in its opinion were not an
22   exhaustive list.  And, it's clear that postal property beyond
23   the inside of a government building is a sensitive place.  As
24   Your Honor acknowledged, there is a history of violence on
25   postal property, as in other places, such as schools and
```

1   other public facilities.

2         Large numbers of people from all walks of life
3   enter postal property on a daily basis to conduct postal
4   transactions, exchange money, interact with postal employees,
5   and by statute, the postal service is charged with protecting
6   and administering all postal property, and protecting all
7   persons on that property.  And, that extends to the inside of
8   post office buildings, as well as other postal property.
9   That's what the Fifth Circuit held in <u>United States versus</u>
10  <u>Dorrison</u>.

11        Because the postal property at issue in this case
12  is a sensitive place under any reasonable definition of that
13  term, the regulation does not even burden conduct followed
14  within the scope of the Second Amendment's guarantee.

15       THE COURT:  Is it your contention that all postal
16  property and all postal parking lots are the same?

17       MS. FARBY:  All postal property is a sensitive place,
18  yes, Your Honor.

19       THE COURT:  Across the border, throughout the whole
20  United States, no matter what the local conditions are?

21       MS. FARBY:  It is a sensitive place insofar as--

22       THE COURT:  Is that the answer, yes?>

23       MS. FARBY:  The answer is that all postal property is a
24  sensitive place, yes.

25       THE COURT:  There can be no modifications for local

```
 1   conditions?
 2        MS. FARBY:  Well, the question is whether there's a
 3   constitutional right to bring--
 4        THE COURT:  Answer my question, please.  Can there be
 5   any modification for local conditions?
 6        MS. FARBY:  Well, that's an inquiry that's made by the
 7   Postal Service.  It's not a constitutional question, Your
 8   Honor.  The Postal Service could, within constitutional
 9   limits, amend its regulation to permit firearms be brought
10   onto certain postal property.  But, the regulation as written
11   now extends to all postal property, and that is--
12        THE COURT:  Regardless of the condition?
13        MS. FARBY:  That's how the regulation is written, Your
14   Honor.
15        THE COURT:  And, you justify that?
16        MS. FARBY:  All postal property is a sensitive place,
17   and--
18        THE COURT:  That's your position, I'm just trying to be
19   clear about your position.
20        MS. FARBY:  Yes, that is our position, Your Honor.
21        THE COURT:  I'm not trying to quarrel with it.  I just
22   want to know what it is.
23        MS. FARBY:  Thank you, Your Honor.
24             Even if the Court were to find that the Postal
25   Service regulation does implicate conduct protected by the
```

```
 1   Second Amendment and, therefore, proceed to step two of
 2   Weiss's two-part analysis, the Court should still find that
 3   the regulation passes constitutional muster and grant the
 4   motion to dismiss on that basis.
 5             The plaintiffs do not dispute that government
 6   actions are subject to a lower level of constitutional
 7   scrutiny, whereas here, the government is acting in its
 8   capacity as the proprietor of property.  And, the Supreme
 9   Court has held in this context the government regulation is
10   valid unless it is unreasonable, arbitrary, capricious or
11   invidious.  In these circumstances, the Postal Service is
12   only required to adopt reasonable regulations, not the most
13   reasonable or the only reasonable regulation possible.
14             And, in this case, as a regulation promoting order
15   and public safety on the property that the Postal Service is
16   charged with protecting and administering, the regulation
17   passes muster under this standard.
18             Now, plaintiffs' contention that this Court cannot
19   resolve this question as a matter of law under Rule 12(b)(6)
20   motion to dismiss is erroneous.  Courts considering--
21        THE COURT:  I understand about that, counsel.
22        MS. FARBY:  Okay.
23        THE COURT:  I've got your position.  Thank you.
24        MS. FARBY:  Thank you, Your Honor.
25        THE COURT:  Mr. Manley?  The difficulty that I have
```

```
 1   here, Mr. Manley, with the case, the principal difficulty is
 2   that the things we've talked about are not in the complaint,
 3   the amended complaint.  The particularized burden here as to,
 4   you know, whether this post office, Avon, Colorado, under the
 5   conditions in Avon, Colorado, present, as applied to these
 6   plaintiffs lawfully carrying firearms is unconstitutional.
 7   And, it seems to me that to focus that question, you've got
 8   to amend your pleadings to include these facts that aren't
 9   there.
10        MR. MANLEY:  We'd be happy to file an amended complaint
11   if that would be helpful to the Court.
12        THE COURT:  Yeah, I think the complaint, as it stands,
13   is subject to the motion to dismiss.  But, it may be that you
14   can amend it to particularize these things to tee up a narrow
15   issue that's never been resolved, and, according to your
16   lights, the Heller commentaries did not address.
17             So, I'm going to grant the motion to dismiss with
18   leave to amend the complaint.
19        MR. MANLEY:  Thank you, Your Honor.
20        THE COURT:  So, 20 days to amend the complaint; is that
21   adequate, reasonable?
22        MR. MANLEY:  Thank you, Your Honor.
23        THE COURT:  All right.  20 days to amend the complaint,
24   and you can file another motion to dismiss.
25        MS. FARBY:  May I be heard briefly, Your Honor?
```

```
 1      THE COURT:   No, that's my ruling.
 2      MS. FARBY:   Thank you.
 3      THE COURT:   All right, Court's in recess.
 4      (2:21 p.m. - Whereupon, the proceedings were concluded.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                    TRANSCRIBER'S CERTIFICATE

2

3        I hereby certify that the foregoing has been

4   transcribed by me to the best of my ability and constitutes a

5   true and accurate transcript of the mechanically recorded

6   proceedings in the above matter.

7         Dated at Aurora, Colorado this 31st day of March,

8   2011.

9

10

11

12

13

14                      s/Mary Chevalier

15                      Mary Chevalier

16                      Federal Reporting Service, Inc.

17                      17454 East Asbury Place

18                      Aurora, Colorado  80013

19                      (303) 751-2777

20

21

22

23

24

25