**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS

      Plaintiffs,

      v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
STEVE RUEHLE, Postmaster, Avon, Colorado

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**
**PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

Defendants, the United States Postal Service ("Postal Service"), Postmaster General

Patrick R. Donahoe, and Avon, Colorado Postmaster Steve Ruehle (collectively, "Postal

Service" or "defendants"), hereby move to dismiss the Second Amended Complaint (Doc. 15;

filed April 8, 2011) pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

Like many other federal entities, the Postal Service has long prohibited the carrying and

storage of firearms and explosives on its property pursuant to its constitutional and statutory

authority as property owner.  See 39 C.F.R. § 232.1(*l*) ("USPS regulation") (prohibiting carrying

and storage of firearms, dangerous or deadly weapons, and explosives on postal property).

1

Debbie and Tab Bonidy (the "Bonidys") and the National Association for Gun Rights (collectively, "plaintiffs") contend that this Postal Service regulation infringes on the Bonidys' Second Amendment right to bear arms by preventing them from bringing their handguns to their local post office when they pick up their mail.  Following the dismissal of their First Amended Complaint, plaintiffs filed a Second Amended Complaint, alleging two claims for relief.  (Doc. 15).  First, plaintiffs contend that the USPS regulation violates their Second Amendment right by prohibiting them from possessing firearms in private vehicles parked on property under the charge and control of the Postal Service, including the public parking lot adjacent to the Avon, Colorado Post Office.  Id. ¶¶ 30-31.  Second, plaintiffs contend that the regulation violates their Second Amendment right by prohibiting them from carrying firearms inside the Avon, Colorado Post Office.  Id. ¶¶ 35-36.  Plaintiffs seek a broad injunction permanently enjoining the Postal Service from enforcing the regulation.

Plaintiffs' claims are foreclosed as a matter of law by the Supreme Court decision in District of Columbia v. Heller, 554 U.S. 570 (2008).  In Heller, the Court explained that "laws forbidding the carrying of firearms in sensitive places" are "presumptively lawful."  Id. at 626-27.  Postal property, including the inside of post office buildings, parking lots, and other property under the charge and control of the Postal Service, is a "sensitive place," and therefore, the regulation at issue is presumptively lawful.  The Fifth Circuit recently upheld the USPS regulation against a Second Amendment challenge on exactly that ground.  United States v. Dorosan, 350 Fed. Appx. 874, 875-76 (5th Cir. 2009) (unpublished), cert. denied, 130 S. Ct. 1714 (2010) (concluding that postal property "falls under the 'sensitive places' exception recognized by Heller").  Furthermore, as a law forbidding firearms in a sensitive place, the USPS regulation does not "impose[] a burden on conduct falling within the scope of the Second Amendment's

guarantee." <u>United States v. Reese</u>, 627 F.3d 792, 800 (10th Cir. 2010), <u>petition for cert. filed</u>

April 14, 2011 (No. 10-1268).  Even if the Court were to conclude that the USPS regulation does

implicate the Second Amendment, any burden it imposes is minimal, and the regulation passes

constitutional muster under any applicable level of means-end scrutiny.  Accordingly, plaintiffs'

claims fail as a matter of law, and the Court should grant defendants' motion to dismiss.

## STATUTORY AND REGULATORY BACKGROUND

The United States Constitution provides:

> The Congress shall have the Power to dispose of and make all needful Rules and
> Regulations respecting the Territory or other Property belonging to the United
> States; and nothing in this Constitution shall be so construed as to Prejudice any
> Claims of the United States, or of any particular State.

U.S. Const. art. IV, § 3 cl. 2.

Pursuant to this provision, Congress has authorized the Postmaster General to "prescribe

regulations necessary for the protection and administration of property owned and occupied by

the Postal Service and persons on the property" and to "include reasonable penalties . . . for

violations of the regulations."  18 U.S.C. § 3061(c)(4)(A).  The Postal Service has promulgated

regulations governing conduct on postal property, which apply to "all real property under the

charge and control of the Postal Service, to all tenant agencies, and to all persons entering in or

on such property."  39 C.F.R. § 232.1(a).  The Conduct on Postal Property regulations were

enacted in their current form in 1972, following the statutory creation of the Postal Service in

1971.  37 Fed. Reg. 24346 (Nov. 16, 1972).  The regulations have been amended several times

since their enactment, most recently on December 17, 2010.  75 Fed. Reg. 78915 (Dec. 17,

2010).

The provision challenged by plaintiffs states:

Weapons and explosives. Notwithstanding the provisions of any other law, rule or regulation, no person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.

39 C.F.R. § 232.1(*l*).[1]  The regulations further provide: "Whoever shall be found guilty of violating the rules and regulations of this section while on property under the charge and control of the Postal Service is subject to a fine as provided in 18 U.S.C. 3571 or imprisonment of not more than 30 days, or both." Id. § 232.1(p)(2).[2]

---

[1] The Conduct on Postal Property regulations also prohibit or restrict, among other things: "[i]mproperly disposing of rubbish, spitting, creating any hazard to persons or things, throwing articles of any kind from a building, climbing upon the roof or any part of a building, or willfully destroying, damaging, or removing any property or any part thereof. . . ." 39 C.F.R. § 232.1(c). The regulations also prohibit on postal premises: "[t]he possession, sale, or use of any 'controlled substance' (except when permitted by law)," id. § 232.1(g)(1); "the sale or use of any alcoholic beverage," id.; smoking, id. § 232.1(g)(2); gambling, id. § 232.1(f); and "[d]ogs and other animals, except those used to assist persons with disabilities. . . ." Id. § 232.1(j).

[2] In addition to this Postal Service-specific authority, federal law generally prohibits knowing possession of a firearm or other dangerous weapon in a federal facility. See 18 U.S.C. § 930(a).  Federal law also prohibits the possession of a firearm "in a Federal court facility," id. § 930(e)(1), and permits federal courts to "regulat[e], restrict[], or prohibit[] the possession of weapons within any building housing such court or any of its proceedings, or upon any grounds appurtenant to such building." Id. § 930(f) (emphasis supplied).  Pursuant to this authority, numerous departments and agencies throughout the Federal Government have promulgated firearms and weapons restrictions that are similar to the USPS regulation.  See, e.g., 31 C.F.R. § 407.13 (Department of Treasury) ("No person while on the property shall carry firearms, or other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 38 C.F.R. § 1.218(a)(13) (Department of Veterans Affairs) ("No person while on property shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 32 C.F.R. § 1903.10 (Central Intelligence Agency) (prohibiting "[k]nowingly possessing or causing to be present a weapon on an Agency installation," including "incident to hunting or other lawful purposes," defined as "property within the Agency Headquarters Compound and the property controlled and occupied by the Federal Highway Administration located immediately adjacent to such Compound, and property within any other Agency installation and protected property (i.e., property owned, leased, or otherwise controlled by the Central Intelligence Agency)")); 32 C.F.R. § 234.10 (Department of Defense) (prohibiting "possessing, carrying, or using" a weapon while on the "Pentagon Reservation," defined as "Area of land and improvements thereon . . . includ[ing] all roadways, walkways, waterways, and all areas designated for the parking of vehicles"); 36 C.F.R. § 504.14 (Smithsonian Institution Building and Grounds) ("No person while on the premises shall carry

4

## FACTUAL BACKGROUND

Plaintiffs allege the following facts, which are taken as true for the purposes of this motion.  The Bonidys do not receive home mail service.  Second Am. Compl. ¶ 15.  Their local Post Office in Avon, Colorado provides them with a post office box at no charge.  Id. ¶ 16.  The Bonidys drive to the Avon Post Office in automobiles or motorcycles.  Id. ¶ 20.  Parking is available to postal patrons in a lot adjacent to the Avon Post Office located on real property under the charge and control of the Postal Service.  Id. ¶ 21.  Parking is also available on the public street directly in front of the Avon Post Office, which is not under the charge and control of the Postal Service.  Id. ¶ 22.  This street parking is restricted during snow emergencies when snow accumulation exceeds two inches.  Id.

The Bonidys lawfully own handguns, which they are licensed to carry pursuant to Colorado's Concealed Carry Act, Colo. Rev. Stat. § 18-12-201 et seq. ("Concealed Carry Act"). Second Am. Compl. ¶ 24.[3]  The Bonidys intend to possess a handgun "for self-defense when traveling to, from, through, or on USPS property" but allege that they are "prevented from doing so by Defendants' active enforcement of 39 C.F.R. § 232.1(*l*)."  Id.

---

firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, except for official purposes."); 36 C.F.R. § 702.7 (Library of Congress) ("Except where duly authorized by law, and in the performance of law enforcement functions, no person shall carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, while on the premises.").

[3] The Concealed Carry Act provides in relevant part that "[a] permit issued pursuant to this part 2 does not authorize a person to carry a concealed handgun into a place where the carrying of firearms is prohibited by federal law."  Colo. Rev. Stat. § 18-12-214(2).  The Act further states that "nothing in this part 2 shall be construed to limit, restrict, or prohibit in any manner the existing rights of a private property owner, private tenant, private employer, or private business entity."  Id. § 18-12-214(5).

On July 22, 2010, plaintiffs' counsel sent a letter to the Postmaster General stating that "[t]he Bonidys intend to exercise their right to bear arms on Postal property, but are prevented from doing so by the Postal Service's regulatory firearms ban, 39 C.F.R. § 232.1(*l*)." Id. ¶ 26 & Ex. 1. The letter further stated that the Postal Service's "total ban on firearms possession violates 'the individual right to possess and carry weapons in case of confrontation' protected by the Second Amendment." Id. at Ex. 1 (citing District of Columbia v. Heller, 554 U.S. __, 128 S. Ct. 2783, 2797 (2008); McDonald v. Chicago, 561 U.S.__, slip op. at 31 (2010)). On August 3, 2010, the Postal Service's General Counsel responded by letter, confirming that "the regulations governing Conduct on Postal Property prevent the Bonidys from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service." Id. ¶ 27 & Ex. 2 (citing 39 C.F.R. § 232.1(*l*)).

Plaintiffs then filed this lawsuit. After this Court granted defendants' motion to dismiss plaintiffs' First Amended Complaint, plaintiffs filed the instant complaint, alleging that the ban on firearms in the Avon Post Office parking lot and in a private vehicle parked on any real property under the charge and control of the Postal Service is unconstitutional. Id. ¶¶ 30-31. Plaintiffs further allege that the ban on firearms inside the Avon Post Office is unconstitutional. Id. ¶¶ 35-36. Plaintiffs seek a Court Order permanently enjoining the defendants from enforcing 39 C.F.R. § 232.1(*l*).[4]

---

[4] Like plaintiffs' First Amended Complaint, the Second Amended Complaint refers to alleged injuries suffered by plaintiffs generally; it does not allege specific injuries suffered by the National Association for Gun Rights (NAGR) as an organization. Plaintiffs therefore have not established that the NAGR has standing to sue in its own right, as opposed to in its representational capacity. To the extent the NAGR is suing on its own behalf, defendants reserve the right to challenge the organization's standing.

**STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of an action when the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal for failure to state a claim upon which relief can be granted is appropriate if, taking all well-pleaded facts as true and construing them in a light most favorable to plaintiff, it is clear that plaintiff is not entitled to relief.  Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc., 24 F.3d 125, 128 (10th Cir. 1994).  A motion to dismiss under Rule 12(b)(6) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  As the Supreme Court recently explained, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  In Iqbal, the Court reviewed the "two working principles" of Twombly.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  Because plaintiffs' claims are foreclosed as a matter of law, they do not "state[] a plausible claim for relief," id., and should be dismissed.

**ARGUMENT**

**I.     Heller Specifically Forecloses Plaintiffs' Constitutional Challenge**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In Heller, the Supreme Court held that a "ban on handgun possession in the home" and "prohibition against rendering any lawful firearm in the home operable for the

7

purpose of immediate self-defense" violated the Second Amendment.  554 U.S. at 635.

Although the Court interpreted the text of the Second Amendment to "guarantee the individual

right to possess and carry weapons in case of confrontation," id. at 592, the Court repeatedly

emphasized that "the right was not unlimited."  Id. at 595 ("[W]e do not read the Second

Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we

do not read the First Amendment to protect the right of citizens to speak for any purpose.")

(emphases in original).  The Court noted that the Second Amendment "surely elevates above all

other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and

home."  Id. at 635.  See also McDonald v. City of Chicago, 130 S. Ct. 3020, 3044 (2010)

(plurality opinion) (stating that the "central holding in Heller" is "that the Second Amendment

protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense

within the home").[5]

     The Supreme Court made clear in Heller that laws forbidding firearms in sensitive places,

along with other regulatory restrictions on the possession of firearms and conditions on the

commercial sale of arms, do not generally violate the Constitution.  The Court explained:

"nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the

possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms

in sensitive places such as schools and government buildings, or laws imposing conditions and

qualifications on the commercial sale of arms."  Id. at 626-27 (emphasis added).  And the Court

---

[5]  The plurality opinion in McDonald v. City of Chicago primarily addressed the incorporation of
the Second Amendment against the states; its discussion of the scope of the right to bear arms is
coextensive with Heller's.  130 S. Ct. at 3044, 3050.

specifically noted that those "presumptively lawful regulatory measures" were merely examples, and that the list "does not purport to be exhaustive." Id. at 626-27 n.26.[6]

### A.     Laws Forbidding Firearms in Sensitive Places Are Presumptively Lawful

Courts within the Tenth Circuit and elsewhere have consistently relied on the language in Heller to uphold regulatory measures like the USPS regulation, without the need for a detailed Second Amendment analysis.  See, e.g., United States v. McCane, 573 F.3d 1037, 1047 (10th Cir. 2009), cert. denied, 130 S. Ct. 1686 (2010) (holding that prohibition on the possession of firearms by felons, one of the other "presumptively lawful regulatory measures" identified in Heller, does not violate the Second Amendment); United States v. Nolan, 342 Fed. Appx. 368, 372 (10th Cir. 2009) (unpublished) (Heller "specifically foreclosed [the] argument" that possession of a firearm by a convicted felon "was protected by the Second Amendment"); United States v. Gieswein, 346 Fed. Appx. 293, 295-96 (10th Cir. 2009) (unpublished), cert. denied, 130 S. Ct. 1563 (2010) (rejecting Second Amendment challenge to felon possession statute and noting that that decision "comports with that of every other circuit that has addressed a Second Amendment challenge to § 922(g)(1) after Heller") (collecting cases).  Because it is a quintessential "law[] forbidding the carrying of firearms in [a] sensitive place[]," the USPS regulation is presumptively lawful, and plaintiffs' constitutional challenge fails.

---

[6] Although plaintiffs may contend that Heller's statement regarding these lawful regulatory measures is dictum, and therefore not binding on this Court, this argument is unavailing.  At least three federal Courts of Appeals have concluded that Heller's list of "presumptively lawful" regulations is not dictum.  United States v. Rozier, 598 F.3d 768, 771 n.6 (11th Cir. 2010); United States v. Vongxay, 594 F.3d 1111, 1115 (9th Cir. 2010); United States v. Barton, 633 F.3d 168, 171 (3d Cir. 2011).  In any event, the Tenth Circuit has recognized that lower courts are "bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements."  Gaylor v. United States, 74 F.3d 214, 217 (10th Cir. 1996).  Moreover, the Court of Appeals has already specifically stated that lower courts "must follow" the Heller dictum.  In re United States, 578 F.3d 1195, 1200 (10th Cir. 2009) (unpublished order).

**B.     The Postal Property Encompassed By the USPS Regulation Is a Sensitive Place**

Plaintiffs' contention that the ban on firearms inside of Postal Service buildings is unconstitutional is expressly foreclosed by <u>Heller</u> itself.  The Court specifically stated that its opinion should not "cast doubt" on "laws forbidding the carrying of firearms in sensitive places <u>such as</u> schools and <u>government buildings</u>."  <u>Heller</u>, 554 U.S. at 626 (emphasis added).  Furthermore, plaintiffs' contention that the ban on firearms on postal property beyond the inside of government buildings is likewise contrary to the Court's opinion in <u>Heller</u> and defies common sense.

The Supreme Court has repeatedly made clear that the specific "presumptively lawful regulatory measures" identified in <u>Heller</u> served "only as examples" and did not constitute an exhaustive list.  <u>Id.</u> at 626-27 & n.26.  As the Court later explained in <u>McDonald</u>:

> We made it clear in <u>Heller</u> that our holding did not cast doubt on such
> longstanding regulatory measures as "prohibitions on the possession of firearms
> by felons and the mentally ill," "laws forbidding the carrying of firearms in
> sensitive places such as  schools and government buildings, or laws imposing
> conditions and qualifications on the commercial sale of arms."  <u>Heller</u>, 554 U.S.
> at 626-27.  We repeat those assurances here.  Despite municipal respondents'
> doomsday proclamations, incorporation does not imperil every law regulating
> firearms.

<u>McDonald</u>, 130 S. Ct. at 3047.  Moreover, the use of the term "such as" before "schools and government buildings" necessarily implies that laws forbidding firearms in places other than the inside of schools and government buildings may be "presumptively lawful" under the sensitive places doctrine.

The Tenth Circuit, like every other court to address the issue, has taken the Supreme Court at its word, and extended the logic of <u>Heller</u> to conclude that categories of restrictions beyond those expressly enumerated in <u>Heller</u> do not violate the Second Amendment.  <u>See</u> <u>In re</u>

United States, 578 F.3d 1195, 1200 (10th Cir. 2009) (unpublished) ("Nothing suggests that the Heller dictum, which we must follow, is not inclusive of § 922(g)(9) involving those convicted of misdemeanor domestic violence."); United States v. Richard, 350 Fed. Appx. 252, 260 (10th Cir. 2009) (unpublished) (holding that the prohibition on possession of firearms by drug users does not violate the Second Amendment); United States v. Yanez-Vasquez, 2010 WL 411112 at *4 (D. Kan. Jan. 28, 2010) (applying this reasoning to conclude that the statute prohibiting illegal aliens from possessing firearms does not violate the Second Amendment).

Numerous courts have upheld restrictions on firearms in sensitive places other than the inside of schools and government buildings.  See Dorosan, 350 Fed. Appx. at 874-75 (postal property, including parking lots); United States v. Masciandaro, __ F.3d __, 2011 WL 1053618 (4th Cir. Mar. 24, 2011) (motor vehicles on National Park land)[7]; Digiacinto v. Rector & Visitors of George Mason Univ., 704 S.E.2d 365, 370 (Va. Jan. 13, 2011) (college campus); GeorgiaCarry.Org, Inc. v. Georgia, __ F. Supp. 2d __, 2011 WL 240108, at *13 (M.D. Ga. Jan. 24, 2011) (places of worship)[8]; Nordyke v. King, 563 F.3d 439, 459-60 (9th Cir. 2009), vacated on other grounds, 611 F.3d 1015 (2010) (county property); Warden v. Nickels, 697 F. Supp. 2d 1221, 1224, 1229 (W.D. Wash. 2010) (park facilities); United States v. Davis, 304 Fed. Appx. 473, 474 (9th Cir. 2008) (unpublished) (aircraft); United States v. Walters, 2008 WL 2740398 (D.V.I. July 15, 2008) (within 1,000 feet of a school zone).

---

[7]  The Fourth Circuit declined to decide whether possession of a firearm in the National Park parking lot at issue in Masciandaro fell outside the scope of the Second Amendment under Heller's "sensitive places" doctrine because the court determined that, in any event, the National Park regulation at issue passed constitutional muster under intermediate scrutiny.  2011 WL 1053618 at *14-15.

[8] In upholding a state law regulating the possession of weapons in places of worship, the court in GeorgiaCarry.Org did not need to decide whether places of worship fell into the "sensitive places" doctrine because the court determined that, in any event, the statute passed constitutional muster under intermediate scrutiny.  2011 WL 240108 at *12.

The notion that government property beyond the inside of a government building is not sensitive is untenable. The "overriding need for security" in government buildings that plaintiffs have acknowledged, Pl. Opp. to Def. Mot. to Dismiss First Am. Compl. (Doc. 10) at 8, does not stop at the door to the post office. The Postal Service is statutorily charged with "prescrib[ing] regulations necessary for the protection and administration of property owned or occupied by the Postal Service and persons on the property." 18 U.S.C. § 3061(c)(4)(A). The Postal Service's obligation to protect its property and individuals on its property is not limited to buildings themselves, but extends to parking lots, loading stations, postal vehicles, and all other property owned and operated by the Postal Service, as the Fifth Circuit has expressly recognized in upholding the constitutionality of the USPS regulation. See Dorosan, 350 Fed. Appx. at 875 (holding that parking lot used by the Postal Service as a place of regular government business "falls under the 'sensitive places' exception recognized by Heller"). Large numbers of people from all walks of life gather on postal property every day to conduct postal transactions, exchange money, and interact with postal employees. The Postal Service is thus responsible for the protection of its employees and all the members of the public who enter postal property, and for protecting the mail in its control. The postal property covered by the USPS regulation – whether inside or outside postal buildings – is a "sensitive place" within the meaning of Heller.

## II.    The USPS Regulation Does Not Impose a Burden on Conduct Protected by the Second Amendment

As noted above, the Tenth Circuit and other courts have repeatedly and summarily rejected Second Amendment challenges to presumptively lawful regulatory measures as "specifically foreclosed" by Heller. Nolan, 342 Fed. Appx. at 372; see also, e.g., McCane, 573 F.3d at 1047; Dorosan, 350 Fed. Appx. at 875-76. However, if the Court does not find that plaintiffs' challenge to the USPS regulation is foreclosed by Heller, it should proceed according

to the "two-pronged approach to Second Amendment challenges" to federal statutes and regulations recently adopted by the Court of Appeals for the Tenth Circuit in United States v. Reese, 627 F.3d at 800.  "Under this approach, a reviewing court first asks whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee."  Id. (quoting United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)) (internal alterations omitted).  "If it does not, the court's inquiry is complete."  Id. at 800-01.  "If it does, the court must evaluate the law under some form of means-end scrutiny."  Id. at 801.  "If the law passes muster under that standard, it is constitutional."  Id.  "If it fails, it is invalid."  Id.

### A. The Presumptively Lawful Regulatory Measures Identified in Heller Restrict Conduct Outside the Scope of the Second Amendment

This Court's inquiry should end at step one of Reese's two-step inquiry because the USPS regulation does not "impose[] a burden on conduct falling within the scope of the Second Amendment's guarantee."  Id. at 800.  The Tenth Circuit has treated the "presumptively lawful regulatory measures" identified in Heller as restricting conduct outside the scope of the Second Amendment altogether.  See Nolan, 342 Fed. Appx. at 372 (holding that Heller "specifically foreclosed" the argument that possession of a firearm by a convicted felon "was protected by the Second Amendment").  Other courts have interpreted this language similarly.  See, e.g., Marzzarella, 614 F.3d at 92 (concluding that "the Second Amendment affords no protection for the possession of dangerous and unusual weapons, possession by felons and the mentally ill, and the carrying of weapons in certain sensitive places"); United States v. Barton, 633 F.3d 168, 172 (3d Cir. 2011) ("felon dispossession statutes regulate conduct which is unprotected by the Second Amendment"); United States v. Fincher, 538 F.3d 868, 874 (2008), cert. denied, 129 S.

Ct. 1369 (2009) (defendant's possession of machine gun and unregistered sawed-off shotgun "is not protected by the Second Amendment").

In <u>Marzzarella</u>, the Third Circuit engaged in a lengthy analysis of why the "presumptively lawful regulatory measures" enumerated in <u>Heller</u> regulate conduct outside the scope of the Second Amendment.  614 F.3d at 91-95.  As that court explained:

> We recognize the phrase "presumptively lawful" could have different meanings under newly enunciated Second Amendment doctrine.  On the one hand, this language could be read to suggest the identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment. On the other hand, it may suggest the restrictions are presumptively lawful because they pass muster under any standard of scrutiny.

<u>Id.</u> at 91.  That court ultimately concluded that the regulatory measures identified in <u>Heller</u> concern "exceptions to the right to bear arms" to which "the Second Amendment affords no protection."  <u>Id.</u> at 91-92.

As the Third Circuit observed, immediately following the passage in <u>Heller</u> addressing the "presumptively lawful regulatory measures" such as restrictions on firearms in sensitive places, the Supreme Court discussed "another important limitation" on the Second Amendment – restrictions on the types of weapons individuals may possess.  <u>Id.</u> at 91 (quoting <u>Heller</u>, 554 U.S. at 627).  "The Court made clear that restrictions on the possession of dangerous and unusual weapons are not constitutionally suspect because these weapons are outside the ambit of the amendment."  <u>Id.</u> (quoting <u>Heller</u>, 554 U.S. at 625) ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. . . .").  "By equating the list of presumptively lawful regulations with restrictions on dangerous and unusual weapons," the Supreme Court "intended to treat them equivalently—as exceptions to the Second Amendment guarantee."  <u>Id.</u>

Reading the "list of presumptively lawful regulations" as "outside the ambit of the Second Amendment" comports with the historical approach <u>Heller</u> used to define the scope of the right.  <u>Id.</u>  It is also consistent with the Supreme Court's First Amendment jurisprudence, which has "identified categories of speech as fully outside the protection of the First Amendment," or falling into a "First Amendment Free Zone."  <u>United States v. Stevens</u>, 130 S. Ct. 1577, 1585-86 (2010) (citations omitted).  As <u>Heller</u> expressly approved the comparison of the Second Amendment to the First Amendment, this doctrine reinforces the notion that the "presumptively lawful regulatory measures" enumerated in <u>Heller</u> – such as restrictions on carrying firearms in "sensitive places" – are outside the reach of the Second Amendment altogether.  <u>See Heller</u>, 554 U.S. at 595 ("Of course, the right [conferred by the Second Amendment] was not unlimited just as the First Amendment's right of free speech was not. Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for <u>any sort</u> of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for <u>any purpose</u>.") (citation omitted; emphasis in original).

**B.     There Is No Second Amendment Right to Carry a Firearm onto Postal Property**

The Second Amendment does not protect the right to bring firearms wherever an individual may choose.  <u>See id.</u> at 626 ("From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.").  In <u>Heller</u>, the Supreme Court held that a "ban on handgun possession in the home" and "prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense" violated the Second Amendment.  <u>Id.</u> at 635.  Although the Court interpreted the text of the Second Amendment to "guarantee the individual right to possess and carry weapons in case of

confrontation," id. at 592, the Court repeatedly emphasized that "the right was not unlimited." Id. at 595.  While the Supreme Court expressly declined to "clarify the entire field" of Second Amendment jurisprudence in Heller, the Court noted that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  Id. at 635.

Concluding that the Second Amendment protects a right to possess firearms on postal property would directly contravene the Supreme Court's decisions in Heller and McDonald by "cast[ing] doubt" on many laws regulating firearms in sensitive places other than the inside of schools and government buildings (including those laws cited above in footnote 2).  Cf. Heller, 554 U.S. at 626-27; McDonald, 130 S. Ct. at 3047 (repeating Heller's "assurances" that "incorporation [of the Second Amendment against the States] does not imperil every law regulating firearms").

Not surprisingly, courts have been appropriately reluctant to expand the scope of the Second Amendment right beyond the core right recognized by Heller.  See Masciandaro __ F.3d __, 2011 WL 1053618 at *16 (declining to extend "Heller's applicability outside the home environment" absent "direction from the [Supreme] Court itself").  The Fourth Circuit explained its decision as follows:

> There may or may not be a Second Amendment right in some places beyond the home, but we have no idea what those places are, what the criteria for selecting them should be, what sliding scales of scrutiny might apply to them, or any one of a number of other questions. . . .  There simply is no need in this litigation to break ground that our superiors have not tread.  To the degree that we push the right beyond what the Supreme Court in Heller declared to be its origin, we circumscribe the scope of popular governance, move the action into court, and encourage litigation in contexts we cannot foresee.  This is serious business.  We do not wish to be even minutely responsible for some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights.  It is not far-fetched to think the Heller Court wished

> to leave open the possibility that such a danger would rise exponentially as one moved the right from the home to the public square.

Id. at *16-17.[9]  Other courts have expressed similar caution, declining to extend the Second Amendment right beyond lawful possession in the home absent clearer guidance from the Supreme Court.  See, e.g., Nordyke, 563 F.3d at 459 ("Although the Second Amendment . . . protects a right to keep and bear arms for individual self-defense, it does not contain an entitlement to bring guns onto government property."); see also Williams v. State, 10 A.3d 1167, 1176-77 & n.10 (Md. 2011) (collecting cases upholding restrictions on firearms possession outside the home and remarking, "[i]f the Supreme Court . . . meant its holding to extend beyond home possession, it will need to say so more plainly.").

This Court likewise should decline plaintiffs' invitation to adopt a more expansive reading of Heller.  Because there is no Second Amendment right to bring a firearm onto postal property, plaintiffs' claims should be dismissed.

## III.   Even Assuming the USPS Regulation Imposes a Burden on Conduct Protected by the Second Amendment, It Is Constitutional

If the Court were to determine that the USPS Regulation imposes a burden on conduct protected by the Second Amendment, it should evaluate that law under some form of means-end scrutiny.  Reese, 627 F.3d at 801.  In determining what level of scrutiny to apply, the Tenth Circuit, like other Courts of Appeals, has recognized that the "Second Amendment can trigger more than one particular standard of scrutiny, depending, at least in part, upon the type of law

---

[9]  In a concurring opinion, one member of the Masciandaro panel concluded that the Second Amendment right "extends to public areas beyond the home," but, after noting that the right does not "extend[] to all places or to all persons," declined to "answer the complex question of where it may apply outside the home, and what persons may invoke it."  Masciandaro, __ F.3d __, 2011 WL 1053618 at *9-10 (Niemeyer, J., concurring).

challenged and the type of Second Amendment restriction at issue." Id. (quoting Marzzarella,

614 F.3d at 97) (internal alterations omitted).

### A.      The USPS Regulation Is a Permissible Regulation Enacted by the Postal Service As the Proprietor of Postal Property

"It is a long-settled principle that governmental actions are subject to a lower level of

[constitutional] scrutiny when the governmental function operating is not the power to regulate

or license, as lawmaker, but, rather, as proprietor, to manage its internal operations." United

States v. Kokinda, 497 U.S. 720, 725 (1990) (plurality opinion) (quoting Cafeteria & Restaurant

Workers v. McElroy, 367 U.S. 886, 896 (1961)) (internal alterations omitted).  Where, as here,

the government is "acting in its proprietary capacity," its action is valid "unless it is

unreasonable, . . . 'arbitrary, capricious, or invidious.'"  Id. at 725-26 (quoting Lehman v. City of

Shaker Heights, 418 U.S. 298, 303 (1974)); id. at 737 (concluding that Postal Service regulation

prohibiting "[s]oliciting alms and contributions on postal premises" "passes constitutional muster

under the Court's usual test for reasonableness").

As explained above, the USPS regulation was promulgated pursuant to the Postal

Service's constitutional and statutory authority to "prescribe regulations necessary for the

protection and administration of property owned or occupied by the Postal Service and persons

on the property."  18 U.S.C. § 3061(c)(4)(A).  See Dorosan, 350 Fed. Appx. at 875 (explaining

that Postal Service's "restrictions on guns stemmed from its constitutional authority as the

property owner").   "Beyond doubt, the Property Clause authorizes the enactment and

enforcement of regulations which . . . are designed to maintain safety and order on government

property."  United States v. Gliatta, 580 F.2d 156, 160 (5th Cir. 1978).  The USPS regulation

promotes order and public safety on postal property, actions that are clearly not "unreasonable,

arbitrary, capricious, or invidious."  Kokinda, 497 U.S. at 726.  The Fifth Circuit has already

addressed this precise regulation and concluded that, even assuming <u>arguendo</u> that the right

protected by the Second Amendment "extends to carrying a handgun in [a] car," the USPS

regulation "is constitutional under any applicable level of scrutiny." <u>Dorosan</u>, 350 Fed. Appx. at

875-76.  Accordingly, the Court should uphold the USPS regulation as a permissible regulation

of the government's use of its own property.

**B.     The USPS Passes Muster Under Any Level of Constitutional Scrutiny**

Even if this Court were to apply a more rigorous level of review, the USPS regulation

would pass constitutional muster.  The Tenth Circuit has followed the approach of every other

federal Court of Appeals and applied intermediate scrutiny to a firearms restriction involving the

government's "power to regulate or license, as lawmaker," <u>Kokinda</u>, 497 U.S. at 725.  <u>See</u>

<u>Reese</u>, 627 F.3d at 802 (applying intermediate scrutiny to 18 U.S.C. § 922(g)(8), prohibiting

possession of firearms while subject to a domestic protection order).  Relying on the reasoning of

the Third Circuit in <u>Marzzarella</u>, the Court of Appeals explained in <u>Reese</u> that intermediate

scrutiny is appropriate where "the burden imposed by the law [does] not severely limit the

possession of firearms, as did the District of Columbia's handgun ban that was at issue in

<u>Heller</u>."  <u>Id.</u> at 801 (quoting <u>Marzzarella</u>, 614 F.3d at 97).

To the extent the USPS regulation implicates a constitutional right at all, any such burden

is minimal.  The regulation is akin to a "time, place, and manner" restriction that is generally

analyzed under intermediate scrutiny in the First Amendment context.  <u>See, e.g., City of Los</u>

<u>Angeles v. Alameda Books, Inc.</u>, 535 U.S. 425, 455 (2002) ("The comparatively softer

intermediate scrutiny is reserved for regulations justified by something other than content of the

message, such as a straightforward restriction going only to the time, place, or manner of speech

or other expression."); <u>see also</u> <u>Marzzarella</u>, 614 F.3d at 96-97 (drawing analogy between

19

content-neutral restrictions on speech in the First Amendment context and restriction on firearms possession in the Second Amendment context in determining that the latter should be subject to intermediate constitutional scrutiny).

Moreover, as the Fourth Circuit has observed, "firearms rights have always been more limited" outside the home "because public safety interests often outweigh individual interests in self-defense." Masciandaro, 2011 WL 1053618 at *12 (quoting Heller, 554 U.S. at 626) (noting that "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"). That court explained that "[s]ince historical meaning enjoys a privileged interpretive role in the Second Amendment context, this longstanding out-of-the-home/in-the-home distinction bears directly on the level of scrutiny applicable." Id. "Indeed, one of the principal cases relied upon in Heller upheld a state concealed carry ban after applying review of a decidedly less-than-strict nature." Id. (quoting Nunn v. State, 1 Ga. 243, 249 (1846)) ("But a law which is merely intended to promote personal security, and to put down lawless aggression and violence, and to this end prohibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution").[10]

_____

[10] There is no legal basis for applying strict scrutiny to the USPS regulation. Virtually every court to address the constitutionality of a restriction on firearms following Heller has employed, at most, an intermediate level of scrutiny. As numerous other courts and commentators have observed, a strict scrutiny standard of review would be inconsistent with the Supreme Court's emphasis on "presumptively lawful regulatory measures." Heller v. District of Columbia, 698 F. Supp. 2d 179, 187 (D.D.C. 2010) (collecting cases and sources); Masciandaro, 2011 WL 1053618 at *12 (noting that applying strict scrutiny review "would likely foreclose an extraordinary number of regulatory measures, thus handcuffing lawmakers' ability to prevent armed mayhem in public places, and depriving them of a variety of tools for combating that problem") (internal alterations and citations omitted; see also Heller, 554 U.S. at 688 (Breyer, J., dissenting) ("[T]he majority implicitly, and appropriately, rejects" the suggestion that the Court

In this case, to the extent the USPS regulation imposes a burden on plaintiffs' purported constitutional right at all, any such burden is so minimal, it may not warrant any form of elevated constitutional scrutiny.  The Supreme Court has repeatedly stated that "not every limitation or incidental burden on the exercise of" a constitutionally protected right "is subject to a stringent standard of review."  Bullock v. Carter, 405 U.S. 134, 143 (1972) (citing McDonald v. Bd. of Elections Comm'n, 394 U.S. 802 (1969)).  As the Court explained, "it is essential to examine in a realistic light the extent and nature of" the restriction at issue.  Id.  As several scholars have observed, the Supreme Court has frequently declined to employ elevated constitutional scrutiny when analyzing regulations that do not impose a "substantial" or "significant" burden on a constitutional right.  See, e.g., Zablocki v. Redhail, 434 U.S. 374, 386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."); Califano v. Jobst, 434 U.S. 47, 48, 57 (1977) (using minimal rationality standard of review to uphold Social Security law that did not "significantly discourage[], let alone ma[k]e practically impossible" the right to marry), quoted in Zablocki, 434 U.S. at 386.  See generally Alan Brownstein, How Rights Are Infringed: The Role of Undue Burden Analysis in Constitutional Doctrine, 45 Hastings L.J. 867, 893-908 (1994) (surveying Supreme Court caselaw examining right to marry, right of political association, property rights, free exercise of religion, and procedural due process to demonstrate how the Court evaluates laws alleged to abridge fundamental rights by analyzing the extent of the burden on the constitutionally protected interest); Adam Winkler, Scrutinizing the Second Amendment, 105 Mich. L. Rev. 683, 698 (2007) (noting that Supreme Court "tends to apply lower-level scrutiny

---

adopt a strict scrutiny test for each gun law "by broadly approving a set of laws – prohibitions on concealed weapons, forfeiture by criminals of the Second Amendment right, prohibitions on firearms in certain locales, and governmental regulation of commercial firearm sales – whose constitutionality under a strict scrutiny standard would be far from clear.").

(or none at all) absent a 'substantial' burden on the rights" in speech, religion, and privacy

cases); Michael C. Dorf, Incidental Burdens on Fundamental Rights, 109 Harv. L. Rev. 1175,

1180 (1996) (observing that, although formally, "the Supreme Court requires intermediate

scrutiny of laws that impose an incidental burden on free speech, . . . in practice, the standard

applied often appears to be quite deferential"); Geoffrey R. Stone, Content-Neutral Restrictions,

54 U. Chi. L. Rev. 46, 50-52 (1987) (remarking that, despite the Supreme Court's use of

language suggesting heightened scrutiny of time, place, and manner restrictions, the Court often

applies a deferential standard of review in such cases).

      Here, any burden imposed on the Bonidys' purported Second Amendment rights by the

USPS regulation, is certainly not "significant" or "substantial."  See Dorosan, 350 Fed. Appx. at

876 ("If Dorosan wanted to carry a gun in his car but abide by the ban, he ostensibly could have

secured alternative parking arrangements off site.  Thus, Dorosan fails to demonstrate that

§ 232.1(*l*) has placed any significant burden on his ability to exercise his claimed Second

Amendment right.").  According to plaintiffs' own allegations, the Bonidys may, consistent with

the USPS regulation, drive to the post office with their concealed firearms and leave them in the

car parked on the public street directly in front of the Avon Post Office.  Second Am. Compl. ¶

22.  This public parking occasionally may be restricted or limited in the event of emergency

snow restrictions, which presumably would require the Bonidys to find somewhat less

convenient public parking elsewhere in Avon or make other parking arrangements if they choose

to bring their firearms with them on those days.  Id. ¶¶ 22, 23.  As in Dorosan, these slight

inconveniences can hardly be said to impose a "substantial" or "severe" restriction on the

Bonidys' exercise of their Second Amendment right.  Cf. Reese, 627 F.3d at 801 (noting that

District of Columbia handgun ban at issue in Heller "severely limit[ed]" the possession of

firearms).  In any event, the Postal Service should not be required to justify its Postal Service-wide regulation by documenting the unique circumstances surrounding each of its 36,400 retail locations in the United States.  See United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010) (en banc), cert. denied, __ S.Ct. __, 2011 WL 941018, 79 USLW 3539 (Mar. 21, 2011) ("[S]ome categorical disqualifications are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court.").

The Supreme Court has explained that "[t]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised." Nixon v. Shrink Missouri Government PAC, 528 U.S. 377, 391 (2000).  The Court has upheld restrictions on speech, even under a strict scrutiny standard of review, relying "solely on history, consensus, and 'simple common sense.'" Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995) (citations omitted).  In this case, the justification for the USPS regulation is neither novel nor implausible.  On the contrary, "simple common sense" demonstrates that the Postal Service has an important, indeed compelling, interest in promoting order and public safety and preventing armed violence on all of its property.  The Supreme Court has stated repeatedly that "the government's interest in preventing crime . . . is both legitimate and compelling." United States v. Salerno, 481 U.S. 739, 749 (1987) (citation omitted); see also Schall v. Martin, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citations and quotation marks omitted); Masciandaro, 2011 WL 1053618 at *15 (government has a substantial, even compelling, interest in "providing for the safety of individuals who visit and make use of the national parks," which include "area[s] where large numbers of people,

including children, congregate for recreation"); Skoien, 614 F.3d at 642 ("no one doubts that the

goal of . . . preventing armed mayhem, is an important governmental objective"). As one court

recently remarked, "[t]o the extent the rationale for laws that prohibit a person from bringing a

firearm into a school or government building needs justification, the tragic lessons of recent

history demonstrate that such places are especially vulnerable as targets for violence." United

States v. Pettengill, 682 F. Supp. 2d 49, 53 n.3 (D. Me. 2010). The USPS regulation is narrowly

tailored and substantially related to furthering public safety on postal property insofar as it only

affects those who would elect to carry or store firearms or other dangerous weapons on real

property under the charge and control of the Postal Service. See Reese, 627 F.3d at 804 & n.4

(upholding 18 U.S.C. § 922(g)(8) under intermediate scrutiny and finding that the statute would

pass muster even under a strict scrutiny test because "the government's interest in preventing

armed domestic violence is compelling" and the statutory requirements "are narrowly tailored to

ensure that only persons subject to specific types of domestic protection orders are subject to

restrictions on their Second Amendment rights."). The USPS regulation passes muster under any

level of scrutiny.

## CONCLUSION

The USPS regulation is a "presumptively lawful" prohibition on "the carrying of firearms

in sensitive places," as described in Heller, 554 U.S. at 626-27. Heller thus "specifically

forecloses" plaintiffs' claim. Nolan, 342 Fed. Appx. at 372. Moreover, the USPS regulation

does not "impose a burden on conduct falling within the scope of the Second Amendment's

guarantee," Reese, 627 F.3d at 800, and would pass muster under any level of constitutional

scrutiny in any event. This Court should grant the Motion to Dismiss.

Dated: April 25, 2011                                              Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN F. WALSH
United States Attorney

JOHN R. GRIFFITHS
Assistant Branch Director

s/ Lesley Farby
LESLEY R. FARBY (DC #495625)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-3481
Fax:  (202) 616-8470
E-mail: Lesley.Farby@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2011, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
jmanley@mountainstateslegal.com


/s/ Lesley Farby_____
LESLEY FARBY


.