## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

        Plaintiffs,

    v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
STEVE RUEHLE, Postmaster, Avon, Colorado,

        Defendants.

---

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Plaintiffs Debbie Bonidy, Tab Bonidy, and the National Association for Gun Rights

("NAGR")[1], by and through their undersigned attorney, hereby file their opposition to

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 16).

---

[1] Defendants assert that NAGR lacks standing "in its own right as opposed to in its representational capacity." Mot. to Dismiss at 6 n.4. As Defendants concede, NAGR has standing in its representational capacity. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 342–43 (1977). Whether NAGR has standing in its own right is largely irrelevant here because the Bonidys have standing to bring this as-applied challenge. *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). In cases where, as here, Plaintiffs seek injunctive and declaratory relief, so long as "at least one individual plaintiff . . . has demonstrated standing," a court "need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977); *see also Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981).

## INTRODUCTION

Plaintiffs' Second Amended Complaint raises two distinct issues: (1) Whether Defendants may prohibit the Bonidys from possessing a firearm in a private vehicle parked on postal property adjacent to the Avon Post Office; and (2) whether Defendants may prohibit the Bonidys from carrying a firearm inside the Avon Post Office.  On April 25, 2011, Defendants moved to dismiss Plaintiffs' claims.  Defendants' Motion to Dismiss relies principally on dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008).  Their Motion is unpersuasive because it attempts to extrapolate from the dicta a rule of law that is broader than the Court's dicta, at odds with the Court's reasoning, divergent from the historical background, and unsupported by the precedent flowing from *Heller*.  Contrary to Defendants' suggestion, the core conduct protected by the Second Amendment explicitly includes the right of law-abiding citizens to carry firearms for self-defense.  Moreover, even if the *Heller* dicta did apply to the instant case, Defendants would not be relieved of their burden of proving the constitutionality of the Postal Service firearms ban, as applied to the Bonidys.  Yet, at the motion to dismiss stage, Defendants are prohibited from presenting evidence in an attempt to meet this heavy burden.  Accepting the truth of the allegations in the Complaint, and drawing all inferences in the light most favorable to Plaintiffs, Defendants' Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

United States Postal Service ("USPS") regulations generally prohibit law-abiding individuals from possessing or carrying functional firearms, openly or concealed, onto any real property under the charge and control of the USPS.  39 C.F.R. § 232.1(*l*).  The Bonidys live in rural Colorado and, because they do not have home mail service, they must drive approximately

10 miles roundtrip everyday from their home to reach the local Post Office in Avon to pick up their mail.  Second Am. Compl. ¶¶ 15, 16, 19, 20.  There is a public parking lot adjacent to the Avon Post Office; the parking lot is located on real property under the charge and control of the USPS.  *Id*. ¶ 21.  The public USPS parking lot adjacent to the Avon Post Office is the only public parking consistently available to patrons of the Avon Post Office.  *Id*. ¶¶ 22–23.

The postal parking lot and the public area of the Avon Post Office where the Bonidys pick up their mail are not sensitive places.  Security personnel do not electronically screen persons entering the Avon Post Office to determine whether persons are carrying firearms, or weapons of any kind.  *Id*. ¶ 17.  Security personnel do not restrict access to the Avon Post Office to only those persons who have been screened and determined to be unarmed.  *Id*. ¶ 18.

The Bonidys lawfully own handguns, which they are licensed to carry pursuant to Colorado's Concealed Carry Act.  C.R.S. § 18-12-201 *et seq*.  Mr. and Mrs. Bonidy presently intend to possess a handgun for self-defense when traveling to, from, through, or on USPS property but are prevented from doing so by Defendants' active enforcement of 39 C.F.R. § 232.1(*l*).  Second Am. Compl. ¶ 24.  The Bonidys are law-abiding individuals; they are over 21 years old, have no history of substance abuse or criminal activity, are not subject to a protection order, have demonstrated competency with a handgun, and have been approved by the Eagle County Sheriff to carry a concealed handgun almost everywhere in the State.  *Id*. ¶ 25.

On July 22, 2010, the Bonidys contacted the USPS to inquire as to whether they would be subject to prosecution pursuant to 39 C.F.R. § 232.1(*l*) if they carried a firearm on USPS property or stored a firearm in their cars while parked on USPS property when picking up their mail.  *Id*. ¶ 26, Ex. 1.  By return letter, Senior Vice President and General Counsel Mary Anne

Gibbons confirmed, on behalf of then-Postmaster General John Potter, that "the regulations governing Conduct on Postal Property prevent the Bonidys from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service. . . .  There are limited exceptions to this policy that would not apply here." *Id.* ¶ 27, Ex. 2.  Thus, 39 C.F.R. § 232.1(*l*) imposes a total ban on law-abiding individuals' possession of firearms; the USPS ban does not even allow the Bonidys to safely store a firearm in their vehicles.  This effectively results in a broad ban on possession of firearms—not only on USPS property—but also when the Bonidys are traveling to or from USPS property.  *Id.* at ¶ 24.

On October 4, 2010, Plaintiffs filed the instant action seeking declaratory and injunctive relief to remedy Defendants' unconstitutional deprivation of their right to keep and bear arms.  Defendants responded by filing a Motion to Dismiss.  This Court granted that Motion and dismissed Plaintiffs' Complaint with leave to amend.  Plaintiffs filed an amended Complaint raising two narrow claims for relief:  (1) Defendants violate the Second Amendment by prohibiting the Bonidys from possessing a firearm in a private vehicle parked in the public USPS parking lot adjacent to the Avon Post Office; and (2) Defendants violate the Second Amendment by prohibiting the Bonidys from carrying a firearm inside the Avon Post Office.  On April 25, 2011, Defendants again moved to dismiss Plaintiffs' claims.

## ARGUMENT

## I.   STANDARD OF REVIEW.

When reviewing a motion to dismiss for failure to state a claim, courts "accept all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in Plaintiff's favor."  *Kamplain v. Curry County Bd. of Com'rs*, 159 F.3d 1248, 1250 (10th Cir. 1998).

Defendants bear the burden of proving that the USPS ban does not violate the Constitution as applied to the Bonidys, and Plaintiffs must ultimately rebut any evidence offered by Defendants; but at the motion to dismiss stage, this Court "must assume that [Plaintiffs] can, even if it strikes [this Court] 'that a recovery is very remote and unlikely.'" *Dias v. City and County of Denver*, 567 F.3d 1169, 1184 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quoting *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). Accepting the truth of the allegations in the Complaint, and drawing all inferences in the light most favorable to Plaintiffs, this Court should deny Defendants' Motion to Dismiss.

## II.     THE SECOND AMENDMENT GUARANTEES THE RIGHT TO CARRY FIREARMS FOR SELF-DEFENSE IN CASE OF CONFRONTATION.

Defendants argue that the Second Amendment provides no protection for the right to keep and bear arms on USPS property; but this argument cannot be reconciled with the text of the Constitution. The core conduct protected by the Second Amendment explicitly includes the right to carry firearms for self-defense:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and *bear* Arms, shall not be infringed.

U.S. Const. amend. II (emphasis added). In *Heller*, the Supreme Court concluded in no uncertain terms that, "[a]t the time of the founding, as now, to 'bear' meant to 'carry.'" 554 U.S. at 584. The Court applied this common historical understanding of the term "bear" to conclude

that the Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *Id*. at 592. In reaching this conclusion, the Court adopted Justice Ginsburg's definition of the phrase "to bear arms," which she offered in *Muscarello v. United States*, 524 U.S. 125, 143 (1998):

> Surely a most familiar meaning is, as the Constitution's Second Amendment . . . indicate[s]: "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person."

*Heller*, 554 U.S. at 584 (internal citations omitted) (omissions in original). Thus, contrary to Defendants' suggestion, core conduct protected by the Second Amendment is infringed by the USPS firearms ban because it is a broad prohibition on the possession and carrying of firearms "in case of confrontation." *Id*.

The *Heller* court's reliance on a number of 19th century authorities offers guidance about the nature of the right to carry. These cases stand for the proposition that if one manner of carrying a firearm outside the home is restricted, some other means of carrying arms must be preserved. These cases are of particular importance because "the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right" that can only be fully understood in light of the "historical background." *Heller*, 554 U.S. at 592. For example, as the Court noted in *Heller*:

> In *Nunn v. State,* [1 Ga. 243, 251 (1846)] the Georgia Supreme Court struck down a prohibition on carrying pistols openly (even though it upheld a prohibition on carrying concealed weapons). In *Andrews v. State,* [50 Tenn. 165, 187 (Tenn. 1871)] the Tennessee Supreme Court likewise held that a statute that forbade openly carrying a pistol "publicly or privately, without regard to time or place, or circumstances," violated the state constitutional provision (which the court equated with the Second Amendment). That was so even though the statute did not restrict the carrying of long guns. *See also State v. Reid,* 1 Ala. 612, 616–617 (1840) ("A statute which, under the pretence of regulating, amounts to a

> destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defence, [sic] would be clearly unconstitutional").

*Id*. at 629.  Thus, the Court indicated its approval of the longstanding principle that bans on carrying firearms outside the home, or regulations that amount to bans, violate the right to keep and bear arms.  As the Court's discussion of the 19th century authorities above illustrates, this proposition has long been accepted by state courts.  *See, e.g., Lakewood v. Pillow*, 501 P.2d 744, 745 (Colo. 1972); *City of Las Vegas v. Moberg*, 485 P.2d 737, 738 (N.M. Ct. App. 1971); *People v. Nakamura*, 62 P.2d 246, 247 (Colo. 1936); *People v. Zerillo*, 189 N.W. 927, 928 (Mich. 1922); *In re Brickey*, 70 P. 609, 609 (Idaho 1902).  Moreover, the rule that bans on the carrying of firearms by law-abiding individuals violate the right to keep and bear arms has been applied post-*Heller*.  *See Peruta v. County of San Diego*, 2010 WL 5137137, *6 (S.D. Cal. Dec. 10, 2010) (upholding California's concealed-handgun licensing law because the law still permitted unlicensed citizens to carry handguns in plain view).

The central holding of *Heller* concerns the constitutionality of possessing functional firearms in the home:  "the District's requirement . . . that firearms in the home be rendered and kept inoperable at all times . . . makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional."  *Id.* at 630.  The facts of that case did not give the Court occasion to rule on all aspects of Second Amendment law, and its holding is appropriately narrow.  *See id.* at 635 ("But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than *Reynolds v. United States*, our first in-depth Free Exercise Clause case, left that area in a state of utter certainty." (internal citation omitted)).  Yet, the Court made clear that the right to

"possess and carry weapons in case of confrontation" is the core of the right guaranteed by the Second Amendment. *Id*. at 592. In *McDonald v. City of Chicago*, the Court confirmed that the right protected is "fundamental to *our* scheme of ordered liberty." 561 U.S. ___, 130 S.Ct. 3020, 3050 (2010) (emphasis in original). *McDonald* emphasized that the Second Amendment does *not* embody "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id*. at 3045.

Thus, although the Court has not weighed in on the full contours of the right to carry, it is clear from *Heller* that the Court views the Second Amendment as explicitly guaranteeing the right to carry firearms for self-defense. *McDonald* teaches that this right is fundamental, like the rights protected by the First Amendment. Moreover, the Court has indicated approval for the majority view that bans on the carrying of firearms are unconstitutional. Thus, contrary to Defendants' suggestion, core conduct protected by the Second Amendment is infringed by the USPS firearms ban because it is a broad prohibition on the possession and carrying of firearms "in case of confrontation." *Heller*, 554 U.S. at 629. Accordingly, Defendants' Motion to Dismiss should be denied.

## III.   DEFENDANTS' ARGUMENT STRAINS THE *HELLER* DICTA TO ITS BREAKING POINT.

Defendants' argument—that the Second Amendment provides no protection for the right to keep and bear arms on USPS property—relies principally on dicta in *Heller*. As discussed below, the USPS firearms ban does not fit within the "presumptively lawful" regulatory measures identified in the *Heller* dicta. Moreover, even if the *Heller* dicta did apply to the instant case, Defendants would not be relieved of their burden of proving the constitutionality of the USPS ban. Accordingly, Defendants' motion should be denied.

### A.    The Postal Property at Issue is Not "Sensitive."

The USPS firearms ban is much broader than the "presumptively lawful" regulations

identified by the *Heller* dicta, and thus Defendants cannot escape the burden of proving that the

ban does not violate the Constitution.  Defendants overstate the scope of the Supreme Court's

dicta when they contend that:

> In *Heller*, the Court explained that "laws forbidding the carrying of firearms in sensitive places" are "presumptively lawful." . . . Postal property, including the inside of post office buildings, parking lots, and other property under the charge and control of the Postal Service, is a "sensitive place," and therefore, the regulation at issue is presumptively lawful.

Mot. to Dismiss at 2 (citation omitted).  As Defendants correctly state, the *Heller* dicta concerned

carrying firearms in "sensitive places."  554 U.S. at 626.  Defendants point to a case dealing with

an actual sensitive area, *United States v. Davis*, 304 Fed. Appx. 473 (9th Cir. 2008) (airplanes),

but that case is inapposite.  The postal property at issue in this case—a public USPS parking lot

and the public area of the Avon Post Office where the Bonidys pick up their mail—is not

"sensitive" in the sense of the *Heller* dicta.  Unlike airports or federal court facilities, security

personnel do not electronically screen persons entering the Avon Post Office to determine

whether persons are carrying firearms, or weapons of any kind.  Second Am. Compl. ¶ 17.

Security personnel do not restrict access to the Avon Post Office to only those persons who have

been screened and determined to be unarmed.  *Id*. ¶ 18.  The postal parking lot adjacent to the

Avon Post office is similarly unsecured and open to the public.  *Id*. ¶¶ 17–18, 21.[2]

---

[2] Even public schools provide a greater level of security than the Avon Post Office.  *See, e.g.,*
Denver Public Schools Policy KI, Visitors to Schools, *available at* http://tinyurl.com/68h9rx3.

Indeed, in the only post-*Heller* case to consider the constitutionality of the USPS ban, restricted access portions of postal property were determined to be "sensitive places," but the court declined to extend this reasoning to the public areas of postal property:

> [T]he constitutionality of the regulation's ban on carrying firearms . . . in public areas without official purpose—i.e., operating a vehicle [on postal property] while . . . armed with a loaded handgun stowed in the glove compartment . . . [is not] before the Court in this case, which involves the prohibited conduct of carrying and storing firearms without official purpose *in the gated/restricted access employee parking, loading and unloading area* of the subject "Postal property."

*United States v. Dorosan*, No. 08-042, Written Reasons for Conviction and Sentence at 9 (E.D. La. July 7, 2008) (emphasis added).[3]  The Fifth Circuit also noted the peculiarly sensitive nature of the restricted access postal property at issue in *Dorosan*, which the Post Office used "for loading mail and staging its mail trucks."  *United States v. Dorosan*, 350 Fed. Appx. 874 (5th Cir. 2009).

Here, the Bonidys claim only a right to possess firearms in public, non-restricted areas of postal property, including the public postal parking lot adjacent to the Avon Post Office.  In fact, their first claim for relief requests only the right to possess firearms in a private vehicle in the postal parking lot.  Second. Am. Compl. ¶ 31.  There is no plausible argument that the public USPS parking lot adjacent to the Avon Post Office is a "sensitive place."  *See Nordyke v. King*, 563 F.3d 439, 460 (9th Cir. 2009) ("The only one of these that seems odd as a 'sensitive place' is parking lots."), *vacated on other grounds*, ___ F.3d ___, 2011 WL 1632063 (9th Cir. 2011). Accordingly, there is substantial reason to conclude that the USPS firearms ban is not narrowly

---

[3] A copy of this decision is attached hereto as Exhibit 1.

focused on those "sensitive places" the *Heller* court had in mind when it referred to

"presumptively lawful" prohibitions on carrying firearms.

**B.      The USPS Ban is a Uniquely Broad Prohibition on the Right to Carry.**

The breadth of the USPS regulation at issue here places it outside the "presumptively

lawful" regulatory measures the Court identified in the *Heller* dicta.  As discussed above, the

USPS firearms ban prohibits possession of firearms not only "in . . . government buildings," but

also in the parking lots adjacent to those buildings.  This ban is broader than most other

regulations of firearms on federal property, which allow law-abiding citizens to possess firearms

in some capacity.  *See* Mot. to Dismiss at 4 n.2 (listing examples of regulations that do not

prohibit storage of a firearm).  For example, 18 U.S.C. § 930 strikes a balance between the need

for security in federal courthouses—evidenced by the robust security in place throughout those

buildings—and the constitutional right to carry.  Possession of a firearm "in a Federal court

facility" is prohibited.  18 U.S.C. § 930 (e)(1).  But outside federal court facilities, Congress did

not prohibit "the lawful carrying of firearms . . . incident to hunting or other lawful purposes."

18 U.S.C. § 930(d)(3).[4]

Also because of the striking breadth of the USPS ban, the cases that have relied on the

*Heller* dicta provide no support for Defendants' position.[5]  For example, in *United States v.*

*Masciandaro*, the Fourth Circuit noted that "by permitting [National Park] patrons to carry

---

[4] The statute also explicitly recognizes the federal courts' inherent authority to regulate the courthouse and punish for contempt any violations of court rules.  18 U.S.C. § 930(f).

[5] Defendants cite a number of other cases, Mot. to Dismiss at 11, that either do not analyze the Second Amendment, *Warden v. Nickels*, 697 F. Supp. 2d 1221, 1224 (W.D. Wash. 2010), or do so in such a cursory manner as to have little persuasive value.  *See United States v. Davis*, 304 Fed. Appx. 473 (9th Cir. 2008); *United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008).

unloaded firearms within their vehicles, [36 C.F.R.] § 2.4(b) leaves largely intact the right to 'possess and carry weapons in case of confrontation.'" ___ F.3d ___, 2011 WL 1053618, *15 (4th Cir. 2011) (quoting *Heller*, 554 U.S. at 592). Similarly, the Virginia Supreme Court recently upheld a narrowly tailored university firearms regulation because it "does not impose a total ban of weapons on campus." *DiGiacinto v. Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 370 (Va. 2011) ("Individuals may still carry or possess weapons on the open grounds of GMU, and in other places on campus not enumerated in the regulation."). The USPS firearms ban is not nearly so narrow as 18 U.S.C. § 930, 36 C.F.R. § 2.4(b), or the other regulations cited by Defendants, because it prohibits all firearms without exception, both inside and outside government buildings.

The breadth of the USPS ban, in comparison to other regulations of firearms on federal property, imposes a significant burden on the right to carry. Because the USPS ban extends outside government buildings—and thus outside the *Heller* dicta—law-abiding citizens like the Bonidys are effectively prohibited from exercising the right to carry when traveling to, from, or through USPS property; the USPS ban does not even allow them to safely store a firearm in their vehicles.

Defendants suggest that the Bonidys can park off-site if they wish to exercise their Second Amendment rights. Mot. to Dismiss at 22. It is a question of fact whether this accommodation could actually save the USPS ban as applied here. At the motion to dismiss stage, this inference cuts against Defendants; thus the first claim for relief cannot be dismissed on this basis. *Dias*, 567 F.3d at 1184. Moreover, this accommodation does nothing to address the Bonidys' second claim for relief, the right to carry inside the Avon Post Office.

Plaintiffs have alleged that the only public parking consistently available to patrons of the Avon Post Office is under the charge and control of the USPS.  Second Am. Compl. ¶¶ 22–23. The only other public parking available to patrons of the Avon Post Office is on West Beaver Creek Boulevard.  *Id.* at 22.  However, parking on West Beaver Creek Boulevard is prohibited whenever snow accumulation exceeds two inches.  *Id.*  Because of this restriction, public parking on West Beaver Creek Boulevard is effectively unavailable throughout the winter.  *Id.*  The right to keep and bear arms is not subject to seasonal hiatus.

Nor is it any answer to say, as Defendants do, that if the Bonidys wish to exercise their Second Amendment rights, they can do so on public property in the general vicinity of the Post Office or elsewhere in the Town of Avon.  Mot. to Dismiss at 22; *see United States v. Grace*, 461 U.S. 171, 182 (1983) (rejecting the contention that a ban on speech on the Supreme Court grounds could be justified by allowing speech across the street).  This accommodation is especially hollow in the Second Amendment context, because "[s]ome rights, such as free speech, may be only slightly burdened by laws that bar speech in some places but allow it in many other places.  But self-defense has to take place wherever the person happens to be." Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009).

Because the USPS ban is an outlier among regulations of firearms on federal property, there is substantial reason to conclude that it is not included among those "presumptively lawful" regulations the *Heller* court had in mind when it referred to prohibitions on carrying firearms "in sensitive places such as . . . government buildings."  Indeed, the USPS ban falls outside the plain

terms of the *Heller* dicta because the USPS ban extends outside government buildings and

applies to areas that could not reasonably be deemed "sensitive places."

### C.   Presumptively Lawful Regulations May Still be Unconstitutional.

Even if the USPS firearms ban could be crammed into the *Heller* dicta, this would

not result in a "free pass" for Defendants.  As the Seventh Circuit explained in a case

challenging the felon-in-possession prohibition of 18 U.S.C. § 922(g)(1):

> [T]he government does not get a free pass simply because Congress has
> established a "categorical ban"; it still must prove that the ban is constitutional, a
> mandate that flows from *Heller* itself.  *Heller* referred to felon disarmament bans
> only as "presumptively lawful," which, by implication, means that there must
> exist the possibility that the ban could be unconstitutional in the face of an as-
> applied challenge.  Therefore, putting the government through its paces in proving
> the constitutionality of § 922(g)(1) is only proper.

*United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *see also United States v. Chester*,

628 F.3d 673, 679 (4th Cir. 2010) ("In fact, the phrase 'presumptively lawful regulatory

measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be

unconstitutional in the face of an as-applied challenge.'") (quoting *Williams*).  Indeed, if the

*Heller* dicta absolved the USPS of the burden of proving the constitutionality of its firearms ban

as applied to the Bonidys, then *Heller* would impose something approximating the rational basis

test; that approach was explicitly rejected by *Heller*.  554 U.S. at 628 n.27 ("If all that was

required to overcome the right to keep and bear arms was a rational basis, the Second

Amendment would be redundant with the separate constitutional prohibitions on irrational laws,

and would have no effect."); *see also Chester*, 628 F.3d at 679.

Defendants are incorrect that Tenth Circuit precedent post-*Heller* absolves them of the

burden to prove the constitutionality of the USPS firearms ban.  In *United States v. McCane*, the

court rejected a challenge to the felon-in-possession prohibition of 18 U.S.C. § 922(g)(1) because the law of the circuit already foreclosed such a challenge.  573 F.3d 1037, 1047 (10th Cir. 2009).  A number of courts have applied a similar approach to § 922 challenges post-*Heller*.  *See United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009); *United States v. Frazier*, 314 Fed. Appx. 801, 807 (6th Cir. 2008); *United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008).

*United States v. Anderson* is instructive of this trend.  In that case, the Fifth Circuit held that a challenge to § 922(g)(1) "was foreclosed in this circuit by *United States v. Darrington*. . . . *Heller* provides no basis for reconsidering *Darrington*.  We therefore reaffirm *Darrington* and the constitutionality of § 922(g)."  *Anderson*, 559 F.3d at 352 (internal citations omitted).  The Tenth Circuit explicitly took the same approach in *McCane*.  573 F.3d at 1047 (citing *Anderson*).

Unlike § 922, no court has analyzed the USPS firearms ban as it applies in this case, *i.e.*, law-abiding citizens exercising the right to carry on public, non-sensitive postal property.  Moreover, as applied to the Bonidys, the ban places a heavy burden on the right of law-abiding citizens "to possess and carry weapons in case of confrontation" protected by the Second Amendment.  *Heller*, 554 U.S. at 592.  Accordingly, Defendants' Motion to Dismiss should be denied.

## IV.    DEFENDANTS CANNOT ESCAPE THEIR EVIDENTIARY BURDEN.

### A.    Under Strict or Intermediate Scrutiny, Defendants Bear the Evidentiary Burden.

Defendants urge this Court to apply a form of intermediate scrutiny to the USPS firearms ban.  Mot. to Dismiss at 18.  Although a per se invalidity test like that applied in *Heller* or strict scrutiny is the appropriate standard, this Court need not decide this question at the motion to dismiss stage.  Under any level of scrutiny, Defendants bear the burden of proving that the ban

does not violate the Constitution.  *Nixon v. Shrink Missouri Government PAC*, 528 U.S. 377, 379 (2000) ("This Court has never accepted mere conjecture as adequate to carry a First Amendment burden."); *Abilene Retail No. 30, Inc. v. Dickinson County*, 492 F.3d 1164, 1173–74 (10th Cir. 2007); s*ee also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438–39 (2002); *Chester*, 628 F.3d at 682 ("[W]e agree with those who advocate looking to the First Amendment as a guide in developing a standard of review for the Second Amendment.").  This requires Defendants to offer evidence to prove, at the very least, that the USPS firearms ban is a:

> [R]easonable restriction[] on the time, place, or manner of protected [conduct], [that] the restriction[] [is] justified without reference to the content of the regulated [conduct], that [it is] narrowly tailored to serve a significant governmental interest, and that [it] leave[s] open ample alternative channels . . . .

*United States v. Kokinda*, 497 U.S. 720, 738 (1990) (internal quotations omitted).  Moreover, Plaintiffs must then have an opportunity to "rebut the [Defendants'] proffered evidence." *Abilene Retail*, 492 F.3d at 1174.  This evidentiary inquiry is inappropriate at the motion to dismiss stage.  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (internal quotation omitted)).  Accordingly, Defendants' Motion to Dismiss should be denied.

### B.    Defendants' Suggested Level of Scrutiny Relegates the Second Amendment to Second-Class Status.

The USPS firearms ban effects a broad prohibition on law-abiding citizens' right to keep and bear arms, not just on postal property, but everywhere a law-abiding individual travels before and after visiting postal property.  No court has applied *Heller* and *McDonald* to analyze

such a broad ban.  Defendants cite a number of cases in support of the proposition that a weak

form of intermediate scrutiny applies, but these cases involve either:  (1) regulations that apply

only to people who "undeniably pose a heightened danger of misusing firearms," *United States v.*

*Reese*, 627 F.3d 792, 802 (10th Cir. 2010); or (2) regulations that are less burdensome.  *See*

*Chester*, 628 F.3d at 682 ("In the analogous First Amendment context, the level of scrutiny we

apply depends on the nature of the conduct being regulated and the degree to which the

challenged law burdens the right.").  Defendants' cavalier approach to the Second Amendment

should be rejected.

Defendants' reliance on cases involving 18 U.S.C. § 922 is unavailing.  Courts reviewing

the prohibitions contained in § 922, including the Tenth Circuit, have ruled that intermediate

scrutiny applies in those cases only because the various subsections of § 922 "prohibit the

possession of firearms by narrow classes of persons who, based on their past behavior, are more

likely to engage in domestic violence.  Based upon these characteristics, we conclude that §

922(g)(8), like the statutes at issue in *Marzzarella* and *Skoien*, is subject to intermediate

scrutiny." *Reese*, 627 F.3d at 802 (citing *United States v. Marzzarella*, 614 F.3d 85 (3d Cir.

2010) and *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010)); *see also Chester*, 628 F.3d at

683.  A criminal's violent history makes his claim of Second Amendment rights "of less

constitutional moment," *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,

447 U.S. 557, 563 n.5 (1980), and thus it is logical that the Circuit Courts have applied a

different level of scrutiny in cases challenging § 922.

Debbie and Tab Bonidy have nothing in common with the felons and misdemeanants

disarmed by § 922.  The Bonidys are law-abiding individuals; they are over 21 years old, have

no history of substance abuse or criminal activity, are not subject to a protection order, have

demonstrated competency with a handgun, and have been approved by the Eagle County Sheriff

to carry a concealed handgun almost everywhere in the State.  Second Am. Compl. ¶ 25.  There

is simply no basis for drawing a connection between *Reese* and other cases analyzing § 922 and

the scrupulously law-abiding Plaintiffs in this case.  Accordingly, this Court should not apply

intermediate scrutiny.

Moreover, as discussed above, *infra* Part III.B., unlike other limitations on the right to

keep and bear arms that have been analyzed under intermediate scrutiny, the USPS ban leaves no

room for "the right to 'possess and carry weapons in case of confrontation.'"  *Masciandaro*,

2011 WL 1053618, *15 (quoting *Heller*, 554 U.S. at 592); *DiGiacinto*, 704 S.E.2d at 370

("Individuals may still carry or possess weapons on the open grounds of GMU . . . .");

*GeorgiaCarry.Org  v. Georgia*, ___ F. Supp. 2d ___, 2011 WL 240108, *13 (M.D. Ga. 2011)

("[T]he statute would allow [the CEO of the Tabernacle] to keep a firearm in his office if he

obtained permission from security or management personnel of the Tabernacle and kept it

secured or stored as directed.").  In a significant way, the USPS ban imposes a greater burden

than even the handgun bans at issue in *Heller* and *McDonald*; at least in those cases self-defense

with a long gun was still possible, whereas the USPS ban applies to all firearms.  *See Heller*, 554

U.S. at 629; *McDonald*, 130 S.Ct at 3106 (Stevens, J., dissenting).  The overwhelming burden

imposed by the USPS ban, both on the Bonidys' right to possess a firearm on postal property and

when traveling to and from postal property, demonstrates that intermediate scrutiny is not the

appropriate standard.  *See Chester*, 628 F.3d at 682 ("'A severe burden on the core Second

Amendment right of armed self-defense should require strong justification.  But less severe

burdens on the right, laws that merely regulate rather than restrict, and laws that do not implicate the central self-defense concern of the Second Amendment, may be more easily justified.'" (quoting *United States v. Skoien*, 587 F.3d 803, 813–14 (7th Cir. 2009), *vacated*, 614 F.3d 638 (7th Cir. 2010))).

Defendants ignore these important distinctions between the cited cases and the case at bar.  Instead, they argue that the rigorous review employed by courts in the First Amendment context is inapplicable to the Second Amendment, and thus a weak form of intermediate scrutiny should apply in all Second Amendment challenges.  Defendants wrongly urge this court to abdicate its duty "to make an independent examination of the record in its entirety to ensure the challenged regulation does not improperly limit [fundamental constitutional rights]."  *Abilene Retail*, 492 F.3d at 1170.  Accordingly, Defendants' Motion to Dismiss should be denied.

### C.   Defendants Cannot Carry Their Evidentiary Burden.

Under any level of scrutiny, it is unclear what evidence Defendants could possibly marshal in an effort to support their draconian ban, especially in light of the utter lack of security in the Avon Post Office and its adjacent parking lot.  *See* Second Am. Compl. ¶¶ 17–18.  Under strict scrutiny, Defendants must show that the USPS ban is "narrowly tailored to serve a compelling governmental interest."  *Abrams v. Johnson*, 521 U.S. 74, 91 (1997).  Under intermediate scrutiny, Defendants must meet a similar burden, but the means chosen "need not be the least restrictive or least intrusive means" of accomplishing the government's interest.  *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  In either case, a "complete ban [on constitutionally protected activity] can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil."  *Frisby v. Schultz*, 487 U.S. 474, 485–86

(1988) (citing *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808–810

(1984)).  Defendants have done nothing to show how the USPS ban meets either intermediate or

strict scrutiny, nor is it clear how such evidence could be produced.

Defendants claim an interest in "preventing armed violence on all" USPS property.  Mot.

to Dismiss at 23.  Certainly this is a compelling governmental interest.  But Defendants fail to

draw a connection between this interest and the means Defendants have chosen to advance that

interest.  This is unsurprising because, in fact, such a connection does not exist.  Statistics show a

clear lack of evidence to support any connection between the government's interest in public

safety and disarming law-abiding, licensed individuals such as the Bonidys.  *See* Volokh, 56

UCLA L. Rev. at 1520 n.323 (citing research showing no net increase in crime or death

associated with licensed concealed carry).  The Bonidys' possession of a firearm in non-sensitive

places—a private vehicle parked in a public parking lot or in the public area of the Avon Post

Office where the Bonidys pick up their mail—is not "an appropriately targeted evil," *Frisby*, 487

U.S. at 485, and thus the sweep of the USPS ban is unconstitutionally broad.  While the

connection between preventing violent crime and disarming violent felons may be obvious, the

correlation in the instant context falls short of the precision required by the Constitution.  *See*

*Heller*, 554 U.S. at 628.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.


DATED this 19th day of May 2011.

Respectfully Submitted By:


<u>/s/ James M. Manley</u>
James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)
jmanley@mountainstateslegal.com

Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of May 2011, I filed the foregoing document electronically through the CM/ECF system, which caused the following to be served by electronic means:

Leslie Farby
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7220
P.O. Box 883
Washington, DC 20044
Lesley.Farby@usdoj.gov

 /s/ James M. Manley
James M. Manley