# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 08-042 |
| CLARENCE PAUL DOROSAN | DIVISION "B" (3) |

WRITTEN REASONS
CONVICTION AND SENTENCE
FOR VIOLATING Title 39 C.F.R. § 232.1(l)

On this date, the above captioned matter came on for trial before the undersigned Magistrate Judge. *See* Order of Reference issued pursuant to Local Criminal Rule 5.1E(a) [Doc. # 20]. The defendant, Clarence Paul Dorosan ("Dorosan"), appeared and was represented by Federal Public Defender Roma Kent. Assistant United States Attorney Andre Jones appeared and prosecuted the case on behalf on the United States.

**Background**

Dorosan was charged with a violation of Title 39 C.F.R. § 232.1(l),[1] which provides:

> (l) Weapons and explosives. Notwithstanding the provisions of any other law, rule or regulation, no person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.

39 C.F.R. § 232.1(l). The statute requires that the regulation "be posted and kept posted at a conspicuous place on all such property." *Id.* at § 232.1(a).

The term "postal property" means "all real property under the charge and control of the Postal Service, to all tenant agencies and to all persons entering in or on such property." 39

---

[1] *See* Superseding Bill of Information filed May 9, 2008 [Doc. # 16].

C.F.R. § 232.1(a).[2] Section 232.1 further explicitly addresses vehicles and their contents brought into, while on or being removed from restricted nonpublic areas, to wit:

> (2) Vehicles and their contents brought into, while on, or being removed from restricted nonpublic areas are subject to inspection. A prominently displayed sign shall advise in advance that vehicles and their contents are subject to inspection when entering the restricted nonpublic area, while in the confines of the area, or when leaving the area. Persons entering these areas who object and refuse to consent to the inspection of the vehicle, its contents, or both, may be denied entry; after entering the area without objection, *consent shall be implied*. *A full search of* a person and *any vehicle driven* or occupied by the person may accompany an arrest.

*Id.* at § 232.1(b)(2) (italicized emphasis added). The penalties for violating the law at issue are set forth in the regulation under the subsection entitled "penalties and other law", to wit:

> (2) Whoever shall be found guilty of violating the rules and regulations in this section while on property under the charge and control of the Postal Service is subject to fine of not more than $50 or imprisonment of not more than 30 days, or both. Nothing contained in these rules and regulations shall be construed to abrogate any other Federal laws or regulations of any State and local laws and regulations applicable to any area in which the property is situated.

*Id.* at § 232.1(p)(2); *see also id.* at § 232.1(p)(1) (noting that alleged violations of said postal regulations may be heard either by a Federal district court or by a Federal magistrate in accordance with applicable court rules).

The government charge is that, on the 22nd day of October, 2007, Clarence Paul Dorosan "did [without official purpose] carry, conceal, and store a firearm, to wit: a Springfield Armory Model XD-40, semi-automatic pistol, bearing serial no. US 431816 on postal property" – i.e.,

---

[2] *See also* Orientation Booklet at p. 40 (setting forth "Rules and Regulations Governing Conduct on Postal Property; noting under "Applicability" that "[t]hese rules and regulations apply to all real property under the charge and control of the USPS; providing that "[n]o person while on postal property may carry firearms") [Gov't Exh. "1"].

"the United States Postal Service employee parking lot at the United States Post Office, located in Gretna Louisiana." Superseding Bill of Information filed May 9, 2008 [Doc. # 16].

The evidence at trial on the merits bears out beyond a reasonable doubt the summary factual basis provided by the Government at the outset and reiterated in this Court's decision rejecting the defendant's Second Amendment challenge. *See* Memorandum Opinion dated June 30, 2008 [Doc. # 33].

### Findings of Fact

On or about October 20, 2007, Norbert Lewis, a postal inspector at the Gretna Post Office in Gretna, Louisiana, discovered a black canvas bag on the workroom floor next to a letter case for Route 5301. Said route was worked by the defendant, Clarence Dorosan ("Dorosan"), a letter carrier on the previous day (October 19, 2007).[3] Lewis did not know to whom the bag belonged and when he lifted the bag a casing fell out of the bag. He opened the bag and found a magazine with twelve (12) rounds or .40 caliber hand gun ammunition and three (3) empty shell casings in the bag. Lewis called another supervisor, Elemuel Coleman, who watched Lewis secure the bag and lock it in a file cabinet until the Postal Inspectors arrived.[4] Dorosan was supposed to work the morning of October 20, 2007 but did not.

Postal Inspector Sheldon Jones was called to the Gretna Post Office on Saturday, October 20, 2007 and he took statements from Postal Supervisor's Lewis and Coleman. P.I. Jones secured the ammunition and spent casing found in the black bag along with personal items including Clarence Paul Dorosan's mail badge. He sealed the items taken into custody in an evidence bag and placed same marked with his initials in the Postal Inspector's evidence room on October 22, 2007.[5]

On Monday, October 22, 2007, Postal Inspector Sheldon Jones returned to the Gretna Post Office accompanied by Postal Inspector Manuel Maciel-Rodriguez to conduct a follow up investigation regarding the recovery of the loaded magazine. At approximately 10:00 a.m., Dorosan arrived at the Post Office. Postal Inspectors identified themselves to Dorosan and requested to speak with him. Dorosan said he knew why they were there and stated, "Yes, I

---

[3]*See* Trial Testimony of Postal Supervisor Norbert Lewis[Government's 3rd Witness].

[4]*See id.*; Trial Testimony of Postal Supervisor Elemuel Coleman [Government's 2nd Witness].

[5]*See* Trial Testimony of Postal Inspector Sheldon Jones [Government's 1st Witness]; Ammunition found in Black Canvas Bag at Gretna Post Office on October 20, 2007 [Gov't Exh. "6"]

know about you finding the magazine in my bag but I can explain everything."[6]

Both Jones and Rodriguez escorted Dorosan to his locker and searched it along with a bag he was carrying. No weapons were found in the locker or the bag. Dorosan voluntarily surrendered a red pocket knife he was carrying on his person. The Postal Inspectors asked Dorosan if he was otherwise armed. Dorosan admitted having a gun in the glove compartment of his personal vehicle which was parked in the Post Office parking lot in front of the loading dock.[7] The employee parking lot is adjacent to the post office building and is enclosed by a gate.[8] The gate has a sign on both of its entrances which warns all parties entering that their vehicles are subject to search and cites Title 39 C.F.R. 232.1(b)(2).[9] Both Postal Inspectors escorted Dorosan to his vehicle and Dorosan remained behind the vehicle with Rodriquez, while Jones searched the vehicle. Dorosan unlocked the vehicle with the remote vehicle entry device and handed the keys to Postal Inspector Sheldon Jones, giving Jones verbal consent to unlock the glove compartment. In the glove compartment was a hand gun, holstered in a black canvas holster with an extra magazine attached to the holster.[10] Jones removed the gun from the holster. He later identified the gun as a Springfield Armory XD-40, semi-automatic handgun, serial no. U.S. 431816, stainless steel slide, with a black plastic grip. Jones advised Dorosan of his *Miranda* rights and then asked Dorosan if he would speak to him about the ammunition and firearm recovered on postal property. On the advice of his union steward, Dorosan declined to answer questions without an attorney present. While at the Gretna Post Office on October 22, 2007, P.I. Rodriguez took photographs of the firearm prohibition posters that were in the building, including those near the employee time clocks.[11] Rodriguez testified that there were

---

[6]*See id.*; Trial Testimony of Postal Inspector Manuel Maciel-Rodriguez [Government's 5th Witness].

[7]*See* Trial Testimony of Postal Inspector Sheldon Jones; Trial Testimony of Postal Inspector Manuel Maciel-Rodriguez (who marked the location of Dorosan's vehicle in the parking lot at the time it was searched by making a red "X" on the Site Plan of the Gretna Post Office which had been admitted as Gov't Exh. "3"].

[8]*See* Trial Testimony of Architect John E. Campo [Government's 4th Witness] (who authenticated the Facility Detail Report [Gov't Exh. "4"] as well as the Gretna Post Office Site Plan [Gov't Exh. "3"] and highlighted the boundaries of the postal property on the site plan with a yellow marker and verified that the property at issue is owned by the United States Postal Service).

[9]*See* Photographs of Employee Parking Lot [Gov't Exh. "8" *in globo*].

[10]*See* Firearm and Ammunition retrieved from Dorosan's Vehicle [Gov't Exh. "7" *in globo*].

[11]*See* Photographs of Firearms Prohibition Posters [Gov't Exh. "5" in globo]; Testimony of P.I. Rodriguez identifying photographs he took by both time clocks, in the employees' breakroom and on two different bulletin boards].

approximately 8 to 10 firearms prohibition signs posted in the facility that the he did not photograph. He and other witnesses did admit that there were no such signs posted outside of the facility.

David Olivier, the Postal Service's Orientation Training Manager, testified that all new employees are given an orientation packet which includes notices of prohibition of all firearms on postal property. He further identified and authenticated Dorosan's Individual Training Record [Gov't Exh. "2"] as well as the Orientation Booklet [Gov't Exh. "1"], which sets forth the Postal Service's ban of firearms from all postal property and explains the Zero Tolerance Policies of the agency which includes zero tolerance of workplace violence.[12]

## Conclusions of Law

The undersigned Magistrate Judge specifically finds that all of the elements of the violation charged in Count One of the Superseding Bill of Information have been proved by evidence (testimonial, documentary and physical) beyond a reasonable doubt. Moreover, the relevant facts found were and are to this date undisputed. The government has met its burden of proof (beyond a reasonable doubt) that, on the date at charged in the superseding bill in the Eastern District of Louisiana, the defendant violated 39 C.F.R. § 232.1(l). More specifically, the defendant has shown that Dorosan carried a firearm (a semi-automatic handgun) concealed in his vehicle onto "postal property" (the Gretna Post Office employee parking lot).[13] Said "postal property" is adjacent to the post office building, enclosed by a gate which has signs on both sides of the entrance, warning all persons entering that their vehicles are subject to search and as set forth in Title 39 C.F.R. § 232.1(b)(2).

The term "carry firearms" is not limited to the carrying of firearms on the person; rather, the Supreme Court in *Muscarello v. United States* explained that the term "also applies to a

---

[12]Orientation Booklet at pp. 39-40 [Gov't Exh. "1"]

[13]*See* Gretna Post Office Site Plan [Gov't Exh. "3 "]; Facility Detail Report [Gov't Exh. "4 "].

5

person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which accompanies a person."[14] This explication certainly encompasses the situation here, where Dorosan carried the firearm in his vehicle onto "postal property." *See* 39 C.F.R. §§ 232.1(a) and (b)(2). In addition to admitting to the postal inspectors that he did in fact have a gun in the glove compartment of his personal vehicle which was parked in the Gretna Post Office employee parking lot,[15] Dorosan unlocked the vehicle and handed the keys to Postal Inspector Sheldon Jones. The defendant gave Jones verbal consent to unlock the glove compartment. Moreover, the inspection revealed a hand gun in the glove compartment, holstered in a black canvas holster with an extra magazine attached to the holster. In addition to "carrying" the firearm on postal property, the defendant stored the hand gun in his vehicle during his shift. It clear to the undersigned from the evidence adduced that Dorosan both "carried" and "stored" his firearm on "postal property," even if the firearm was concealed in the locked glove compartment of his vehicle.[16]

The evidence presented is more than sufficient to find, as this Court does, that the defendant intended to have his firearm available for use immediately before entering the premises of the noticed "postal property," upon crossing through the gate threshold, during his shift on postal property and upon leaving the confines of the Gretna Post Office, albeit for

---

[14]*See e.g., Muscarello v. United States,* 524 U.S. 125, 126-27 (1998) (construing the phrase "carries a firearm" within the context of 18 U.S.C. § 924(c)(1); holding that a defendant carries a firearm if it is carried directly on his person or in his vehicle; noting that the statute responds in part to the concerns of law enforcement personnel, who had urged that "carrying short firearms in motor vehicles be classified as carrying such weapons concealed").

[15]*See* Photograph's of Employee's Gated Parking Lot [Gov't Exh. "8 " *in globo*].

[16]*See* Photograph of the Open Glove Compartment of Dorosan's Vehicle [Gov't Exh. "7"].

arguably legitimate reasons. However, that is not the litmus test of guilt or innocence in this case.

The Court has considered defense counsel's argument that Dorosan's vehicle is an extension of his home; however, that result obtains only when the vehicle is not parked on postal property where access is restricted. In this case, the restricted employee parking and loading area where Dorosan parked his vehicle during his shift bears signs that advise all who enter the gates, as follows:

> Vehicles and their contents brought into, while on, or being removed from restricted nonpublic areas are subject to inspection. A prominently displayed sign shall advise in advance that vehicles and their contents are subject to inspection when entering the restricted nonpublic area, while in the confines of the area, or when leaving the area. Persons entering these areas who object and refuse to consent to the inspection of the vehicle, its contents, or both, may be denied entry; after entering the area without objection, *consent shall be implied*. *A full search of a person and any vehicle driven* or occupied by the person may accompany an arrest.[17]

An area, such as the Gretna Post Office's employee parking lot, which bears warnings the likes of that aforestated can hardly be analogized to "home sweet home" or an extension of same. By the same token, privately owned vehicles parked on such "postal property" cannot be reasonably be considered an extension of home. The "postal property" at issue more closely approximates one of those "sensitive places" excepted by the Supreme Court in *Heller*,[18] the Court's latest

---

[17] 39 C.F.R. § 232.1(b)(2) (italicized emphasis added)

[18] In *Heller*, the Supreme Court cautioned that "nothing in our opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places ...." *District of Columbia v. Heller*, --- S.Ct. ----, 2008 WL 2520816 at ** 34-35 & n. 26 (U.S. Jun 26, 2008) (No. 07-290) (holding that the Second Amendment of the Constitution of the United States secures the fundamental right of all Americans to bear arms).

7

opinion addressing the Second Amendment "right to bear arms." Certainly a loaded semi-automatic weapon, even if secured in the locked glove compartment of a privately owned vehicle, creates an opportunity for violence on such "postal property" – i.e., a "sensitive" area where access is restricted for reasons of facilitating the movement of inbound and outbound mail entrusted to the USPS.

Eradicating the potential for deadly workplace violence and ensuring the safety of both Government employees and the public on "postal property" is exactly the security measure that the regulation at issue was designed to effect. The regulation is an adjunct of the Postal Service's policies and more particularly the "zero tolerance" of workplace violence.[19] Indeed, many of those who use postal facilities, including postal workers, do so from necessity, not choice; many members of the public must go to a post office to conduct their business and personal correspondence, carrying cash for stamps or money orders. Postal employees must enter and exit the postal property at issue carrying the U.S. mail.[20]

As previously addressed in this Court's prior opinion, the postal regulation at issue (39

---

[19]*See* USPS Orientation for New Employees Participant WorkBook at pp. 29, 39-40 (January 2000 ed.) (noting that practices covered by the Postal Service's "Zero Tolerance Policies" include "workplace violence"; stating that the "possession of firearms and other dangerous weapons on postal property is prohibited by law," specifically 39 C.F.R. 232.1(l); and further elucidating its applicability to "all real property under the charge and control of the USPS") [Gov't Exh. "1"1]; U.S. Postal Service Individual Training Record of Clarence P. Dorosan entering service on June 30, 2001 (noting Dorosan's signature as having completed Postal Orientation on July 2, 2001 [Gov't Exh. "2"].

[20]*See, e. g., United States v. Kokinda,* 497 U.S. 720, 737 (1990) (Justice Kennedy concurring) (agreeing that the postal regulation of solicitation passes 1st Amendment constitutional muster and is reasonable as applied; noting that the Government has a significant interest in protecting the integrity of the purposes to which it has dedicated the property (facilitating postal transactions)).

C.F.R. § 232.1(l)) passes Second Amendment constitutional muster and is reasonable as applied to Dorosan.  The Government has a significant interest in protecting the integrity of the purposes to which it has dedicated the property (facilitating postal transactions) and ensuring the security of postal employees and the public who *must*: (1) visit postal property to conduct official and personal business; (2) wait single file in roped off lines inside of postal facilities; (3) idle in vehicles single file in "snorkel lanes"[21] on postal property to use "drive and drop" mail receptacles placed outside of the Post Office building; and (4) carry cash or other legal tender for stamps, money orders, passports and other goods and services provided by the United States Postal Service.

Noting the fact that there were no signs prominently displayed outside of the Gretna Post Office building publishing the regulation's prohibition against carrying firearms (§ 232.1(l)) or animals (§ 232.1(j)) on "postal property," the defendant argued that the statute was vague, overly broad and unconstitutional as applied to the defendant.  More particularly, defense counsel suggested that the regulation effectively outlaws conduct including matriculating the drop box lane in a vehicle with either a firearm or an animal safely stowed within its confines.  The undersigned Magistrate Judge expresses no opinion whatsoever as to the constitutionality of regulation's ban on carrying firearms or animals in public areas without official purpose – *i.e.*, operating a vehicle through the "snorkel lane" of the Gretna Post Office while accompanied by a pet Shih Tzu, other non-seeing eye dog or, perhaps, armed with a loaded handgun stowed in the glove compartment.  Neither of those issues are before the Court in this case, which involves the

---

[21]*See* Testimony of John Campo (describing the convenience lane designed for drive and drop mail deposit as the "snorkel lane" of the Gretna Post Office).

prohibited conduct of carrying and storing firearms without official purpose in the gated/restricted access employee parking, loading and unloading area of the subject "postal property."

For all of the above and foregoing reasons including those mentioned in open court, the defendant was found guilty beyond a reasonable doubt, convicted of count one of the superseding bill of information and sentenced to pay a fine of $25.00, which is payable within thirty (30) days of the entry of judgment in this case.

New Orleans, Louisiana, this 7th day of July, 2008.

                                    _____
                                    **DANIEL E. KNOWLES, III**
                                    **UNITED STATES MAGISTRATE JUDGE**