IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS

      Plaintiffs,

      v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
STEVE RUEHLE, Postmaster, Avon, Colorado

      Defendants.

_____

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**
_____

**INTRODUCTION**

      The Supreme Court has repeatedly made clear that, although the Second Amendment

protects a right to keep and bear arms for lawful purposes, that right is not unlimited, and does

not permit any person to possess any weapon wherever he or she may choose. District of

Columbia v. Heller, 554 U.S. 570, 592, 595, 626-27 (2008); McDonald v. City of Chicago, 130

S. Ct. 3020, 3044, 3047 (2010). The Court specifically stated in Heller that "laws forbidding

the carrying of firearms in sensitive places such as schools and government buildings" are

"presumptively lawful," and further explained that restrictions on firearms in these particular

sensitive places were "merely examples" of lawful regulatory measures. 554 U.S. at 626-27.

Notwithstanding this clear language, plaintiffs contend that the United States Postal Service

regulation banning firearms on postal property (the "USPS regulation") violates the Bonidys' Second Amendment rights by preventing them from possessing firearms both inside the Avon, Colorado post office and in the adjacent parking lot owned and operated by the Postal Service.

Plaintiffs' assertion contradicts the Supreme Court's statement in <u>Heller</u> and the interpretations of that statement by the Tenth Circuit and numerous other courts, and defies common sense. Because the USPS regulation only prohibits the possession of weapons in a sensitive place, it does not even implicate the Second Amendment. Moreover, even assuming that the USPS regulation implicates the Second Amendment, any burden on a constitutional right is minimal and not subject to elevated constitutional scrutiny. At most, plaintiffs' allegations (taken as true for the purpose of this motion) establish that, if the Bonidys want to take their weapons to Avon, they merely have to park on the street adjacent to the post office parking lot or (on the few occasions when those spots are unavailable due to a snow emergency) somewhere else in Avon, and then must leave their weapons secured in their vehicle while they are in the post office. This very modest burden does not warrant heightened constitutional scrutiny, particularly given the deference that courts afford to government agencies to control their own property.

Finally, even if the Court were to evaluate the USPS regulation under heightened scrutiny, it should dismiss plaintiffs' Second Amended Complaint. Plaintiffs concede that the Postal Service has a compelling interest in promoting safety and preventing gun violence on its property. Contrary to plaintiffs' assertion, the Court need not receive evidence to conclude that the USPS regulation is reasonably related to that interest. Numerous courts, including the Tenth Circuit, have upheld prohibitions on the possession of firearms under heightened constitutional

scrutiny without requiring the government to submit evidence to justify the regulation.  Because

plaintiffs' claims fail as a matter of law, this Court should grant the motion to dismiss.

## ARGUMENT

### I.   The USPS Regulation Is Presumptively Lawful Under <u>Heller</u>

The Supreme Court explained in <u>Heller</u> that the right protected by the Second

Amendment is a limited one.  <u>See</u> <u>Heller</u>, 554 U.S. at 595 ("Of course, the right [conferred by

the Second Amendment] was not unlimited just as the First Amendment's right of free speech

was not.  Thus, we do not read the Second Amendment to protect the right of citizens to carry

arms for <u>any sort</u> of confrontation, just as we do not read the First Amendment to protect the

right of citizens to speak for <u>any purpose</u>.") (citation omitted; emphasis in original).

The Court specified, "nothing in our opinion should be taken to cast doubt on

longstanding prohibitions on the possession of firearms by felons and the mentally ill, <u>or laws</u>

<u>forbidding the carrying of firearms in sensitive places such as schools and government</u>

<u>buildings</u>, or laws imposing conditions and qualifications on the commercial sale of arms."  <u>Id.</u>

at 626-27 (emphasis added).  The Court made clear that those "presumptively lawful regulatory

measures" were merely examples, and that the list "does not purport to be exhaustive."  <u>Id.</u> at

626-27 n.26.  Because the USPS regulation prohibits firearms and other dangerous or deadly

weapons in a sensitive place, it is "presumptively lawful" under <u>Heller</u>.  <u>Id.</u>

#### A.   The Postal Property Covered By the USPS Regulation Is a Sensitive Place

In their opposition brief, plaintiffs argue that the postal property at issue here is not a

"sensitive place[]," <u>id.</u> at 626, because security personnel do not electronically screen persons

entering the Avon post office and parking lot.  Pl. Opp. to Def. Mot. to Dismiss (Rec. Doc. 17)

("Pl. Opp.") at 9.  But use of electronic screening is not a necessary condition for finding a

particular location to be a sensitive place, especially considering the diverse nature of

government owned and operated properties.  Indeed, Heller itself stated that laws forbidding

firearms in schools and government buildings – many of which do not employ electronic or any

other screening measures for individuals entering the property – were presumptively lawful

restrictions on firearms in sensitive places.  554 U.S. at 626.

Numerous courts have upheld restrictions on firearms in other sensitive places that do

not electronically screen all persons for firearms.  See, e.g., Hall v. Garcia, 2011 WL 939758, at

*1, 4 (N.D. Cal. Mar. 16, 2011) (upholding state statute prohibiting possession of a firearm on

"the grounds of a public or private school engaged in kindergarten through twelfth-grade

education and areas within 1000 feet of such property" and explaining, "[f]or the same reason

that schools are sensitive places – the presence of large numbers of children either at school or

traveling to and from it – possession of firearms within some distance around such locations

similarly presents the risk of danger and disruption"); Warden v. Nickels, 697 F. Supp. 2d 1221,

1224, 1229 (W.D. Wash. 2010) (upholding ban on firearms at city-owned park as a "permissible

restriction on the possession of firearms in a 'sensitive' place" and finding "no logical

distinction between a school on the one hand and a community center where educational and

recreational programming for children is also provided on the other.  Just as the Federal Courts

do not want civilians entering into courthouses with weapons, the City does not want those with

firearms entering certain parks where children and youth are likely present.");[1] United States v.

---

[1]  Warden predated the Supreme Court's decision in McDonald, and the court dismissed
plaintiff's Second Amendment challenge on the basis of then-controlling Ninth Circuit
precedent holding that the Second Amendment constrains only the actions of the federal
government, not the states.  697 F. Supp. 2d at 1225-26.  However, the court also analyzed the
question whether the Park rule violated Article I, § 24 of the Washington State Constitution, the
state parallel to the Second Amendment, relying on the Washington Supreme Court's decision

Lewis, 2008 WL 5412013, at *2 (D.V.I. Dec. 24, 2008) ("It is beyond peradventure that a school zone, where Lewis is alleged to have possessed a firearm, is precisely the type of location of which Heller spoke.  Indeed, Heller unambiguously forecloses a Second Amendment challenge to that offense under any level of scrutiny."); Digiacinto v. Rector & Visitors of George Mason Univ., 704 S.E.2d 365, 367, 370 (Va. 2011) (dismissing constitutional challenge to state statute prohibiting weapons on university property, including "academic buildings, administrative office buildings, student residence buildings, dining facilities, or while attending sporting, entertainment or educational events" because government-university property "is a 'sensitive place'").

The postal property covered by the USPS regulation – whether inside or outside postal buildings – is clearly a "sensitive place" within the meaning of Heller.  The United States Postal Service is statutorily obligated to "provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people . . . [and] provide prompt, reliable, and efficient services to patrons in all areas and . . . render postal services to all communities."  39 U.S.C. § 101(a).  Accordingly, the Postal Service is charged with maintaining facilities "of such character and in such locations, that postal patrons throughout the Nation will . . . have ready access to essential postal services."  Id. § 403(b).  To fulfill its statutory obligations, the Postal Service is authorized to "prescribe regulations necessary for the protection and administration of property owned or occupied by the Postal Service and persons on the property" and to "include reasonable penalties . . . for violations of the regulations."  18 U.S.C. § 3061(c)(4)(A).

---

to analyze that provision in light of Heller.  Id. at 1228-29 (citing State v. Sieyes, 225 P.3d 995 (Wash. 2010)).

The Postal Service's obligation to administer and protect its property and individuals on its property extends to parking lots, loading stations, postal vehicles, and all other property owned and operated by the Postal Service, as the Fifth Circuit has expressly recognized.  See United States v. Dorosan, 350 Fed. Appx. 874, 875-76 (5th Cir. 2009) (unpublished), cert. denied, 130 S. Ct. 1714 (2010) (holding that parking lot used by the Postal Service as a place of regular government business "falls under the 'sensitive places' exception recognized by Heller").[2]  Large numbers of people from all walks of life gather on postal property every day to drop off and pick up packages, engage in postal and other federal governmental financial transactions, exchange money, and interact with postal employees.  The Postal Service is responsible for protecting its employees and all the members of the public who enter postal property, and for securing all of the mail, packages, and money in its control.  These are without doubt the type of government functions covered by Heller's "sensitive places" exception.

### B.    The USPS Regulation Is Similar to Other Presumptively Lawful Federal Firearms Regulations and Is of Permissible Scope

Despite plaintiffs' repeated attempts to characterize the USPS regulation as a "uniquely broad prohibition," Pl. Opp. at 11, the USPS regulation is in fact similar to numerous federal statutes and regulations prohibiting or restricting firearms on federal property both inside and

---

[2]  In support of their argument that the postal property at issue here is not "sensitive," plaintiffs cite dictum by the Magistrate Judge in United States v. Dorosan, specifying that the constitutionality of the regulation's ban on firearms in public areas of postal property was not at issue in that case.  Pl. Opp. at 10.  But the mere fact that Dorosan did not involve a public area on postal property does not imply that the court would have reached a different result if it had. It could be argued, in fact, that areas open to the public are even more sensitive given the countless personal exchanges and monetary transactions that take place in those public areas involving millions of Postal Service customers.  Indeed, the Magistrate Judge in Dorosan agreed that the "Government has a significant interest in protecting the purposes to which it has dedicated the property (facilitating postal transactions) and ensuring the security of postal employees and the public. . . ."  Pl. Opp., Ex. 1 at 9 (emphasis supplied).

outside of government buildings.  See Mot. to Dismiss (Rec. Doc. 16) at 4 n.2 (collecting statutes and regulations).  But even assuming the USPS regulation is somewhat broader than other firearms regulations, that would not place it outside the "sensitive places" exception in Heller.  Not every type of government property is the same, and each federal (or state or local) agency must assess the particular safety and security considerations that are present in property that it controls.[3]

Concluding that postal property is not a "sensitive place" within the meaning of Heller would directly contravene the Supreme Court's decisions in Heller and McDonald by potentially "cast[ing] doubt" on many state and federal laws regulating firearms on government property.  Cf. Heller, 554 U.S. at 626 ("nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings"); McDonald, 130 S. Ct. at 3047 (repeating Heller's "assurances" that "incorporation [of the Second Amendment against the States] does not imperil every law regulating firearms").  The USPS regulation is a presumptively lawful regulation of firearms in a sensitive place.

---

[3]  Plaintiffs suggest that, by comparison to the USPS regulation, 18 U.S.C. § 930 strikes a more proper balance between the need for security and the Second Amendment because it does not prohibit, for most federal facilities, the "lawful carrying of firearms . . . incident to hunting or other lawful purposes."  Pl. Opp. at 11 (quoting 18 U.S.C. § 930(d)(3)).  Assuming, without conceding, that the Bonidys' possession of firearms on postal property would be "incident to hunting or other lawful purposes" within the meaning of 18 U.S.C. § 930(d)(3), plaintiffs overlook that the Postal Service's authority to prohibit firearms on its property derives not just from 18 U.S.C. § 930 (which applies to federal facilities generally), but also from its own specific statutory authority.  See 18 U.S.C. § 3061(c)(4)(A) (authorizing the Postmaster General to "prescribe regulations necessary for the protection and administration of property owned and occupied by the Postal Service and persons on the property" and to "include reasonable penalties . . . for violations of the regulations").

**II.      The USPS Regulation Does Not Violate the Constitution**

As explained in defendants' opening brief, courts within the Tenth Circuit and elsewhere have consistently relied on Heller to uphold regulatory measures like the USPS regulation, without the need for a detailed Second Amendment analysis.  See Mot. to Dismiss at 9-11 (collecting cases).[4]  This Court should follow this approach and uphold the regulation. However, even if the Court does not find that plaintiffs' challenge to the USPS regulation is "specifically foreclosed" by Heller, United States v. Nolan, 342 Fed. Appx. 368, 372 (10th Cir. 2009) (unpublished), the regulation does not violate the Second Amendment.

In United States v. Reese, the Tenth Circuit explained that Heller "suggests a two-pronged approach to Second Amendment challenges" to federal statutes and regulations.  627 F.3d 792, 800 (10th Cir. 2010), cert. denied, __ S. Ct. __, 2011 WL 1481316, 79 USLW 3610 (May 16, 2011) (quoting United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010), cert. denied, 131 S. Ct. 958 (2011)) (internal alterations omitted).  "Under this approach, a reviewing court first asks whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee."  Id.  "If it does not, the court's inquiry is complete."  Id. at 800-01.  "If it does, the court must evaluate the law under some form of means-end scrutiny."  Id. at 801.  "If the law passes muster under that standard, it is constitutional."  Id.  "If it fails, it is invalid."  Id.

Plaintiffs' claims fail at each part of the analysis.  First, the Second Amendment does not protect the specific right plaintiffs assert – a right to possess firearms on postal property.

---

[4]  Plaintiffs' assertion that the Tenth Circuit decision in United States v. McCane, 573 F.3d 1037 (10th Cir. 2009), was based on pre-Heller circuit precedent, is incorrect.  See Pl. Opp. at 14-15.  McCane expressly relied on Heller to uphold the regulation at issue.  573 F.3d at 1047. Moreover, as explained in defendants' opening brief, the Tenth Circuit and other courts have consistently extended Heller's reasoning to uphold firearms restrictions beyond those specifically enumerated in Heller.

Plaintiffs' extremely broad reading of the Second Amendment directly contradicts the Supreme Court's interpretation of that right in Heller and McDonald. Even assuming the USPS regulation implicates a Second Amendment right, it imposes no more than a small inconvenience, and therefore need not undergo heightened constitutional scrutiny. But the USPS regulation passes muster even under heightened constitutional scrutiny, and should be upheld.

**A.     There Is No Second Amendment Right to Possess a Firearm on Postal Property**

In Heller, the Court emphasized that the Second Amendment "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635; see also Reese, 627 F.3d at 800 (explaining that "the core purpose of the right was to allow 'law-abiding, responsible citizens to use arms in defense of hearth and home'") (quoting Heller, 554 U.S. at 635). Courts have been reluctant to expand the scope of the Second Amendment right beyond the core right recognized by Heller. See Mot. to Dismiss at 16-17 (collecting cases); see also Richards v. County of Yolo, 2011 WL 1885641, at *3 (E.D. Cal. May 16, 2011) ("Heller cannot be read to invalidate Yolo County's concealed weapon policy, as the Second Amendment does not create a fundamental right to carry a concealed weapon in public.").

Plaintiffs contend that "the core conduct protected by the Second Amendment explicitly includes the right of law-abiding citizens to carry firearms for self-defense," Pl. Opp. at 2, and they ask this Court to adopt an interpretation of the Second Amendment that is far broader in scope than the one recognized in Heller's holding, which was limited to possession of a handgun by a law-abiding citizen in the home. Compare Heller, 554 U.S. at 635 ("[W]e hold that the District's ban on handgun possession in the home violates the Second Amendment, as

does its prohibition against rendering any lawful firearm in the home operable for the purpose

of immediate self-defense."), with Pl. Opp. at 8 ("[A]lthough the Court has not weighed in on

the full contours of the right to carry, it is clear from Heller that the Court views the Second

Amendment as explicitly guaranteeing the right to carry firearms for self-defense."); id. at 13

(noting that "self-defense has to take place wherever the person happens to be").[5]

     This Court need not decide the full scope of the Second Amendment right, however, to

grant the motion to dismiss.  However far that right extends, the Supreme Court has made clear

that it is not without limits, and it does not extend to sensitive places such as postal property.

Heller, 554 U.S. at 626 ("the right [secured by the Second Amendment] was not a right to keep

and carry any weapon whatsoever in any manner whatsoever and for whatever purpose").

### B.    Even Assuming the USPS Regulation Implicates a Second Amendment Right, It Does Not Impose a Substantial Burden on Any Such Right

     Because the USPS regulation does not impose a substantial burden on any right secured

by the Second Amendment, the Court need not engage in any heightened constitutional

scrutiny.  As the Court of Appeals for the Ninth Circuit recently held, "only regulations which

substantially burden the right to keep and to bear arms trigger heightened scrutiny under the

Second Amendment."  Nordyke v. King, __ F.3d __, 2011 WL 1632063, at *6 (9th Cir. May 2,

---

[5]  Although plaintiffs cite Peruta v. County of San Diego, 758 F. Supp. 2d 1106 (S.D. Cal. 2010), as a post-Heller decision applying "the rule that bans on the carrying of firearms by law-abiding individuals violate the right to keep and bear arms," Pl. Opp. at 7, in fact, that court expressly declined to decide "whether the Second Amendment encompasses Plaintiffs' asserted right to carry a loaded handgun in public."  Peruta, 758 F. Supp. 2d at 1115.  Rather, the court upheld the policy at issue after determining that it "would pass constitutional muster even if it burdens protected conduct."  Id.  The court also expressly acknowledged that, "unlike possession in the home," which is "the 'core' Second Amendment right," "carrying a concealed firearm in public presents a recognized threat to public order and poses an imminent threat to public safety."  Id. at 1116-17 (citations omitted).

2011).[6]  As that court explained, "[t]he Supreme Court's reasoning in <u>Heller</u> and <u>McDonald</u> suggests that heightened scrutiny does not apply unless a regulation substantially burdens the right to keep and to bear arms for self-defense."  <u>Id.</u> at *3.  In <u>Heller</u>, the Supreme Court "distinguished the blanket handgun ban there at issue from apparently permissible gun-control regulations, by examining the extent to which each law burdened the core right to armed self-defense" and "reasoned that, because handguns are extremely useful for self-defense, the District's complete handgun ban substantially burdened the core right to armed self-defense." <u>Id.</u> (citing <u>Heller</u>, 554 U.S. at 628-29).  "[T]he Supreme Court does not apply strict scrutiny to every law that regulates the exercise of a fundamental right. . . .  Instead, in a variety of contexts, the Court applies mere rational basis scrutiny to laws that regulate, but do not significantly burden, fundamental rights."  <u>Id.</u> at *6 (citation omitted).

As explained in defendants' opening brief, this approach is consistent with the Supreme Court's analysis of a variety of regulations that do not impose a "substantial" or "significant" burden on a constitutional right.  <u>See, e.g.</u>, <u>Zablocki v. Redhail</u>, 434 U.S. 374, 386 (1978) ("[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."); <u>Califano v. Jobst</u>, 434 U.S. 47, 48, 57 (1977) (using minimal rationality standard of review to uphold Social Security law that did not "significantly discourage[], let alone ma[k]e practically impossible" the right to marry), <u>quoted in</u> <u>Zablocki</u>, 434 U.S. at 386.  <u>See</u> Mot. to Dismiss at 21-22.

"[A] law does not substantially burden a constitutional right simply because it makes the right more expensive or more difficult to exercise."  <u>Nordyke</u>, 2011 WL 1632063, at *8 (citing <u>Gonzales v. Carhart</u>, 550 U.S. 124, 157-58 (2007)).  "The fact that a law which serves a valid

---

[6]  The Ninth Circuit decision in <u>Nordyke</u> was issued after defendants filed their motion to dismiss.

purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to [exercise a constitutional right] cannot be enough to invalidate it." Id. (quoting Carhart, 550 U.S. at 157-58).  Significantly, as the Ninth Circuit explained, "a regulation is particularly unlikely to impose a substantial burden on a constitutional right where it simply declines to use government funds or property to facilitate the exercise of that right." Id.

To the extent the USPS regulation imposes a burden on the Bonidys' purported constitutional right at all, any such burden is de minimis, as it only provides one discrete limitation on where they may lawfully possess firearms.  Plaintiffs assert that the USPS regulation "effects a broad prohibition on law-abiding citizens' right to keep and bear arms, not just on postal property, but everywhere a law-abiding individual travels before and after visiting postal property." Pl. Opp. at 16.  By its express terms, however, the USPS regulation does not affect the Bonidys' ability to possess firearms other than on property under the charge and control of the Postal Service.  The fact that the USPS regulation may have the incidental effect of making it slightly less convenient for the Bonidys to lawfully exercise their Second Amendment rights elsewhere cannot justify invalidating the law.  See Carhart, 550 U.S. at 157-58.[7]

_____

[7]  Plaintiffs' characterization of the USPS regulation as "effect[ing] a broad prohibition on law-abiding citizens' right to keep and bear arms, not just on postal property, but everywhere a law-abiding individual travels before and after visiting postal property," Pl. Opp. at 16, is unpersuasive.  Under plaintiffs' theory, all restrictions on the possession of weapons on federal property would have to be evaluated based on the effect they have on individuals' ability to carry guns while traveling to and from the property in question.  But plaintiffs have cited no authority for that theory, and their unprecedented and overly expansive approach would improperly limit the ability of government agencies to secure and administer property under their control.  The Postal Service's authority to control its property cannot vary depending on, for example, how far away customers live or what alternate travel or gun storage arrangements they can or cannot make.  The Postal Service therefore cannot be deemed responsible for

Here, the Postal Service has simply "decline[d] to use government . . . property to facilitate" plaintiffs' exercise of their claimed Second Amendment right, which makes it "particularly unlikely to impose a substantial burden" on any such right.  Nordyke, 2011 WL 1632063, at *8.  According to plaintiffs' own allegations, the Bonidys may, consistent with the USPS regulation, drive to the post office with their concealed firearms and leave them secured in their vehicle parked on the public street directly in front of the Avon post office for the few minutes it takes to retrieve their mail.  Second Am. Compl. ¶ 22.  This public parking occasionally may be restricted or limited in the event of emergency snow restrictions when snow accumulation exceeds two inches, which presumably would require the Bonidys to find somewhat less convenient public parking elsewhere in Avon or make other parking arrangements if they choose to bring their firearms with them on those days.  Id. ¶¶ 22, 23.  Even if, as plaintiffs allege, public street parking is "sporadic and unpredictable throughout the winter," id. ¶ 22, the USPS regulation itself can hardly be said to impose a "substantial" or "severe" restriction on the Bonidys' exercise of their Second Amendment right.  Compare Dorosan, 350 Fed. Appx. at 876 (USPS regulation does not "place[] any significant burden on . . . ability to exercise [a] claimed Second Amendment right"), with Heller, 554 U.S. at 629 ("Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban.").[8]

_____

secondary effects the USPS regulation might have on the Bonidys' ability to possess firearms during their travels to and from the Avon post office.

[8] The Second Amended Complaint does not allege that the Bonidys have ever been precluded from parking on the public street in front of the Avon post office because of snow restrictions, let alone that such restrictions affect them frequently.  Yet in their opposition to the motion to dismiss, plaintiffs assert – without support – that public parking near the post office "is effectively unavailable throughout the winter" and "subject to seasonal hiatus."  Pl. Opp. at 13.  Weather data, of which this Court may take judicial notice, indicates otherwise.  It is well

Because the Second Amended Complaint fails to allege facts that "suggest plausibly" that the USPS regulation "substantially burdens" the Bonidys' right to keep and bear arms, it "does not allege sufficient facts to state a Second Amendment claim capable of surviving a motion to dismiss."  Nordyke, 2011 WL 1632063 at *8.

### C.   The USPS Regulation Is a Permissible Measure Enacted by the Postal Service As the Proprietor of Postal Property

Even if the Court were to find that the USPS regulation substantially burdens the Bonidys' constitutional rights, the Court should uphold the regulation as a reasonable regulation enacted in the Postal Service's capacity as proprietor of postal property.  Although plaintiffs argue generally for a higher level of scrutiny, Pl. Opp. at 15, they never dispute that "governmental actions are subject to a lower level of [constitutional] scrutiny when the governmental function operating is not the power to regulate or license, as lawmaker, but, rather, as proprietor, to manage its internal operations."  United States v. Kokinda, 497 U.S.

---

settled that "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."  Tal v. Hogan, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  The Federal Rules of Evidence permit judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b). Courts frequently take judicial notice of historic weather data such as daily snowfall.  See, e.g., Smallwood v. Foos, 2008 WL 3338374 at *3 n.2 (D. Colo. July 18, 2008).  According to snowfall data collected between 2005 - 2010, there was an average of 16.6 days per year in which it snowed more than two inches on a given day in Avon.  See Ex. 1.  Even assuming that public street parking was not available at any time on those days  – which, again, plaintiffs have not alleged – the USPS regulation cannot be said to create or impose a substantial burden on the Bonidys' exercise of their Second Amendment rights.  In any event, as explained in greater detail below, the Court need not evaluate the unique circumstances surrounding the Avon post office, or any of the Postal Service's 36,400 other retail locations, in order to evaluate whether the Postal Service-wide regulation substantially burdens a constitutional right, or if so, whether such burden is constitutionally permissible.  See United States v. Skoien, 614 F.3d 638, 641 (7th Cir. 2010) (en banc), cert. denied, 131 S. Ct. 1674 (2011) ("[S]ome categorical disqualifications are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court.").

720, 725 (1990) (plurality opinion) (quoting Cafeteria & Restaurant Workers v. McElroy, 367

U.S. 886, 896 (1961)) (internal alterations omitted).  Where, as here, the government is "acting

in its proprietary capacity," its action is valid "unless it is unreasonable, . . . 'arbitrary,

capricious, or invidious.'"  Id. at 725-26 (quoting Lehman v. City of Shaker Heights, 418 U.S.

298, 303 (1974)); id. at 737 (concluding that Postal Service regulation prohibiting "[s]oliciting

alms and contributions on postal premises" "passes constitutional muster under the Court's

usual test for reasonableness"); see also Int'l Soc'y for Krishna Consciousness, Inc. v. Lee, 505

U.S. 672, 679-80, 683 (1992) (noting that "government – like other property owners – has

power to preserve the property under its control for the use to which it is lawfully dedicated"

and finding "no doubt" that restriction on solicitation in government-operated airport passes

muster under "reasonableness" test) (citations omitted).

      The USPS regulation promotes order and public safety on postal property, actions that

are clearly not "unreasonable, arbitrary, capricious, or invidious."  Kokinda, 497 U.S. at 726.

Accordingly, the Court should uphold the USPS regulation as a permissible regulation of the

government's use of its own property.

> **D.**    **Even If the Court Applies Heightened Constitutional Scrutiny, the USPS**
> **Regulation Passes Muster**

      Even if this Court were to apply a more rigorous level of review, the USPS regulation

would pass constitutional muster.  To the extent it determines that a heightened level of

constitutional scrutiny is warranted, this Court should follow virtually every court to address the

issue and apply no more than intermediate scrutiny.  See Mot. to Dismiss at 19-24.  Plaintiffs

assert that "a per se invalidity test" or "strict scrutiny" is the appropriate standard, but provide

no support for this assertion.  Pl. Opp. at 15.  Although plaintiffs characterize the burden

imposed by the USPS ban as "overwhelming" because it applies to all firearms, id. at 18, as

explained above, the regulation merely imposes one discrete limitation on where persons may bring firearms.  Cf. Reese, 627 F.3d at 802 (applying intermediate scrutiny to a provision of 18 U.S.C. § 922 that "prohibits the possession of all types of firearms" in every place by a particular class of persons).  The Fourth Circuit recently applied intermediate scrutiny to a federal regulation prohibiting possession of a loaded handgun in a motor vehicle on national park land.  United States v. Masciandaro, 638 F.3d 458, 470-71 (4th Cir. 2011).  As that court explained, "[w]hile we find the application of strict scrutiny important to protect the core right of the self-defense of a law-abiding citizen in his home . . . , we conclude that a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home."  Id. at 471 (internal citation omitted).  No federal appellate court has applied a level of scrutiny beyond intermediate scrutiny to a restriction on the possession of firearms, and plaintiffs have provided this Court with no basis for deviating from the overwhelming weight of authority in this case.

"To pass constitutional muster under intermediate scrutiny, the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective."  Reese, 627 F.3d at 802 (citation omitted); see also id. at 801 (framing intermediate scrutiny inquiry as "whether the challenged law served a significant, substantial, or important governmental interest, and, if so, whether the fit between the challenged law and the asserted objective was reasonable, not perfect") (quoting Marzzarella, 614 F.3d at 98) (internal alterations omitted).  As the Supreme Court explained in the context of evaluating a restriction on commercial speech:

> What our decisions require is a fit between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily

> the least restrictive means but . . . a means narrowly tailored to achieve the
> desired objective.  Within those bounds we leave it to governmental
> decisionmakers to judge what manner of regulation may best be employed.

Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 480 (1989) (internal

alternations and citations omitted).

Plaintiffs concede that the Postal Service's interest in preventing armed violence on

postal property is "compelling."  Pl. Opp. at 20.  Indeed, the Supreme Court has held as much.

United States v. Salerno, 481 U.S. 739, 749 (1987) ("the government's interest in preventing

crime . . . is both legitimate and compelling") (citation omitted); Schall v. Martin, 467 U.S. 253,

264 (1984) ("The legitimate and compelling state interest in protecting the community from

crime cannot be doubted.") (citations and quotation marks omitted).  However, plaintiffs

contend that defendants "fail to draw a connection" between this interest and the USPS

regulation.  Pl. Opp. at 20.

To uphold the regulation under intermediate scrutiny, the Court need not determine that

the regulation is "likely to be effective."  Nordyke, 2011 WL 1632063 at *5.  Indeed, courts are

ill-equipped to make these sorts of predictive judgments.  See id. ("Sorting gun-control

regulations based on their likely effectiveness is a task better fit for the legislature."); see also

Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense: An

Analytical Framework and a Research Agenda, 56 UCLA L. Rev. 1443, 1461 (2009) (arguing

that it "is likely to be especially hard" to "estimate the effectiveness of a [gun-control] law in

preventing future crime and injury").  Rather, the Court must determine that the USPS

regulation is "substantially" or "reasonably" related to the Postal Service's interest in preventing

armed violence on its property.  Reese, 627 F.3d at 801-02.  Common sense dictates that it is –

the notion that prohibiting guns on postal property will lead to less gun violence on postal

property is surely not an unreasonable one.[9]

Plaintiffs claim that research indicates that licensed concealed carry is not associated

with a "net increase in crime or death." Pl. Opp. at 20. Even assuming that this research

supports the conclusion plaintiffs assert, it is not relevant to the only question this Court must

answer: whether prohibiting possession of firearms by all persons on postal property is

reasonably related to the Postal Service's compelling interest here. The Postal Service is not

limited to the "least restrictive means" possible to accomplish its ends. Fox, 492 U.S. at 480.

Just as speed limits applicable to all persons (whether or not they are inclined to drive

recklessly) reasonably advance the governmental interest of promoting safety on the roads, so

too does the prohibition on firearms on postal property applicable to all persons (whether or not

they are "law-abiding, licensed individuals such as the Bonidys," Pl. Opp. at 20) reasonably

advance the government interest of promoting safety on postal property. Because the fit

between the government objective and the regulation is a "reasonable" one, Reese, 627 F.3d at

801, courts "leave it to governmental decisionmakers to judge what manner of regulation may

best be employed." Fox, 492 U.S. at 480.

**III.    Plaintiffs' Challenge to the Constitutionality of the USPS Regulation Is
Appropriately Resolved on a Motion to Dismiss Without the Submission of
Evidence**

Plaintiffs' assertion that defendants must "offer evidence to prove" that the USPS

---

[9] As explained in further detail below, contrary to plaintiffs' assertion, the government need not
submit evidence in order to demonstrate that the challenged law passes intermediate scrutiny.
See Reese, 627 F.3d at 802-04 (upholding challenged regulation under intermediate scrutiny,
and even strict scrutiny, without requiring submission of evidence in district court); Skoien, 614
F.3d at 641 ("Heller did not suggest that disqualifications would be effective only if the statute's
benefits are first established by admissible evidence.").

regulation is reasonable and that plaintiffs "must then have an opportunity to rebut the

Defendants' proffered evidence," Pl. Opp. at 16, is erroneous.  The case on which plaintiffs

rely, Abilene Retail No. 30, Inc. v. Dickinson County, 492 F.3d 1164 (10th Cir. 2007), involved

a First Amendment challenge to a county zoning ordinance restricting the location and mode of

operation of an adult bookstore.  Id. at 1167.  In that case, the government was using its power

"to regulate or license" rather than "to manage its internal operations."  Kokinda, 497 U.S. at

725.  Moreover, as the Court of Appeals explained, "where First Amendment interests are

implicated, this court is obligated to make an independent examination of the record in its

entirety to ensure the challenged regulation does not improperly limit expressive interests."

Abilene Retail, 492 F.3d at 1170.  This involves an extensive inquiry unique to the free speech

context.[10]  Courts have not used this approach in the Second Amendment context, and with

---

[10] As the Court of Appeals explained in Abilene Retail, "[w]hen analyzing whether a time, place, or manner regulation violates the First Amendment's guarantee of freedom of speech, we must first determine whether the ordinance is content based or content neutral."  492 F.3d at 1171 (citing City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434 (2002)).  To determine content neutrality, the court must "verify[] that the predominant concerns motivating the ordinance were with the secondary effects of adult speech, and not with the content of the adult speech."  Id. (quoting Alameda Books, Inc., 535 U.S. at 440-41).  "So long as the materials [used to justify the ordinance] are reasonably believed to be relevant to the problem that the municipality addresses, we will presumptively classify the . . . legislative purpose as content neutral."  Id. (internal alterations and citation omitted).  "Once a local government has established that its purpose in enacting a time, place, or manner regulation was legitimate," the court must determine whether the ordinance was "designed to serve a substantial governmental interest and allow for reasonable alternative avenues of communication."  Id. at 1173 (quoting City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 50 (1986)).  "In answering this question, we apply a burden-shifting approach."  Id. (citing Alameda Books, 535 U.S. at 438-39).  "First, the Board must show that, in passing [the challenged ordinance], it relied on evidence that is reasonably believed to be relevant for demonstrating a connection between speech and a substantial, independent government interest."  Id.  "If the Board can make this showing, [the plaintiff] may rebut the Board's proffered evidence either by demonstrating that the Board's evidence does not support its rationale or by furnishing evidence that disputes the Board's factual findings."  Id. at 1174.  "If [the plaintiff] succeeds in casting doubt on the Board's rationale in either manner then burden shifts back to the Board to supplement the record with evidence renewing support for a theory that justifies its ordinance."  Id.

good reason.  Although aspects of First Amendment jurisprudence will certainly assist in understanding the meaning and scope of the Second Amendment, <u>Heller</u>'s references to the First Amendment "are hardly an invitation to import the First Amendment's idiosyncratic doctrines wholesale into a Second Amendment context, where, without a link to expressive conduct, they will often appear unjustified."  <u>United States v. Chester</u>, 628 F.3d 673, 687 (4th Cir. 2010) (Davis, J., concurring in the judgment).  Moreover, the burden-shifting approach urged by plaintiffs is inconsistent with the Supreme Court's statement in <u>Heller</u> that "laws forbidding the carrying of firearms in sensitive places" are "presumptively lawful."  554 U.S. at 626.

As noted above, numerous courts, including the Tenth Circuit, have upheld the constitutionality of firearms regulations under intermediate scrutiny without requiring the government to submit evidence in the district court.  <u>See, e.g.</u>, <u>Reese</u>, 627 F.3d at 802-04;[11] <u>Masciandaro</u>, 638 F.3d at 473-74; <u>Skoien</u>, 614 F.3d at 641.  The Supreme Court has explained that "[t]he quantum of empirical evidence needed to satisfy heightened judicial scrutiny of legislative judgments will vary up or down with the novelty and plausibility of the justification raised."  <u>Nixon v. Shrink Missouri Government PAC</u>, 528 U.S. 377, 391 (2000).  The Court has upheld restrictions on speech, even under a strict scrutiny standard of review, in some cases relying "solely on history, consensus, and 'simple common sense.'"  <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 628 (1995) (citations omitted); <u>see also</u> <u>Milavetz, Gallop & Milavetz, P.A. v. United States</u>, 130 S. Ct. 1324, 1340 (2010) (rejecting notion that government must adduce evidence to justify restriction on speech and noting "[w]hen the possibility of deception is as

_____

[11] Without requiring the submission of evidence in the district court, the Court of Appeals in <u>Reese</u> even found that the statute at issue would pass muster under a strict scrutiny standard. 627 F.3d at 804 n.4.

self-evident as it is in this case, we need not require the State to conduct a survey of the public before it may determine that the advertisement had a tendency to mislead") (internal alterations and citations omitted).

In this case, the justification for the USPS regulation is neither novel nor implausible. On the contrary, "simple common sense" confirms that the Postal Service has an important interest in promoting order and public safety and preventing armed violence on all of its property, and that the fit between that objective and the USPS regulation is reasonable.  As numerous other courts have already done, this Court can decide, as a matter of law, whether the regulation imposes a substantial burden on conduct protected by the Second Amendment, and if so, whether the regulation passes constitutional muster under the appropriate level of scrutiny. See, e.g., Nordyke, 2011 WL 1632063, at *8 (concluding that complaint "does not allege sufficient facts to state a Second Amendment claim capable of surviving a motion to dismiss" because it does not "suggest plausibly that the Ordinance substantially burdens [plaintiffs'] right to keep and bear arms"); GeorgiaCarry.Org v. Georgia, __ F. Supp. 2d. __, 2011 WL 240108, at *9, 11 (M.D. Ga. Jan. 24, 2011) (assuming without deciding that law prohibiting weapons in places of worship burdens conduct protected by Second Amendment but dismissing Second Amendment claim on the ground that the law bears a substantial relationship to the important goal of protecting the free exercise of religion); Warden, 697 F. Supp. 2d at 1229-30 (dismissing claim that city ordinance prohibiting firearms at park facilities violates right to bear arms and concluding that ordinance "is a reasonable and narrow limitation that is substantially and directly related to protecting public safety and welfare at parks where youth and children seek safe recreation"); Digiacinto, 704 S.E.2d at 367, 370 (dismissing constitutional challenge

toggle

to state statute prohibiting weapons on certain university property because university "is a 'sensitive place'").

## CONCLUSION

The USPS regulation is a "presumptively lawful" prohibition on "the carrying of firearms in sensitive places," as described in <u>Heller</u>, 554 U.S. at 626-27.  <u>Heller</u> thus "specifically forecloses" plaintiffs' claim.  <u>Nolan</u>, 342 Fed. Appx. at 372.  Moreover, the USPS regulation does not impose a substantial burden "on conduct falling within the scope of the Second Amendment's guarantee," <u>Reese</u>, 627 F.3d at 800, and would pass muster under any applicable level of constitutional scrutiny in any event.  This Court should grant the Motion to Dismiss.

Dated: June 6, 2011

Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN F. WALSH
United States Attorney

JOHN R. GRIFFITHS
Assistant Branch Director

<u>s/ Lesley Farby</u>
LESLEY R. FARBY (DC #495625)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone:  (202) 514-3481
Fax:  (202) 616-8470
E-mail: Lesley.Farby@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2011, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
jmanley@mountainstateslegal.com

/s/ Lesley Farby_____
LESLEY FARBY

.