IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

```
DEBBIE BONIDY, TAB BONIDY    )
AND NATIONAL ASSOCIATION     )
FOR GUN RIGHTS,              )
                             )
              Plaintiffs,    )
                             )
         vs.                 )    1:10-cv-02408-RPM
                             )
UNITED STATES POSTAL         )
SERVICE, STEVE RUEHLE AND    )
PATRICK DONOHUE,             )
                             )
              Defendants.    )
```
_____

MOTION HEARING
TRANSCRIPT OF PROCEEDINGS
_____

            Proceedings held before the HONORABLE RICHARD P.

MATSCH, U.S. District Judge for the District of Colorado,

beginning at 1:59 p.m. on the 18th day of November, 2011 in

Courtroom A, United States Courthouse, Denver, Colorado.

                    APPEARANCES

For the Plaintiffs:        James M. Manley, Esq.
                           Mountain States Legal Foundation
                           2596 South Lewis Way
                           Lakewood, Colorado  80227

For the Defendants:        Lesley Rebecca Farby, Esq.
                           US Department of Justice-DC #883
                           20 Massachusetts Avenue, N.W.
                           Washington, D.C.  20044


        Proceedings recorded by electronic sound recording;
          transcript produced by transcription service.

1                    P R O C E E D I N G S

2        (At 1:59 p.m. on November 18, 2011, in the United States

3   District Court at Denver, Colorado, before the HONORABLE

4   RICHARD P. MATSCH, U.S. District Judge, with counsel for the

5   parties present, the following proceedings were had:)

6        THE COURT:  Please be seated.  We're here in Civil

7   10-CV-2408, Debbie Bondy and Tab--Bonidy, I think it is, and

8   Tab Bonidy, National Association for Gun Rights against the

9   United States Postal Service, John Potter and Steve Ruehle in

10   their roles as Postmaster General and Postmaster at Avon, on

11   the defendants' motion to dismiss the second amended

12   complaint.

13        So, Mr. Manley, for the plaintiffs, and Ms. Farby

14   for the defendants, good afternoon.  Well, on the allegations

15   of the plaintiffs here, they live in the mountains, outside

16   of Avon, Colorado.  They don't receive postal service at

17   their home; therefore, to get their mail they drive to Avon

18   and to the post office there.  As I understand it, the post

19   office there has adjacent to it a public parking lot, but

20   it's under the ownership and control of the Postal Service,

21   and the regulation that is involved in the case prohibits a

22   firearm, carrying or having possession of a firearm, anywhere

23   on this property, which includes the parking lot.  And the

24   plaintiffs say that this impinges on their rights protected

25   by the Second Amendment.

1           And in addressing the issue on motion to dismiss,
2   there are two claims here; one is the parking lot, one is the
3   building, and they may be different, but the defendant's
4   position, as I understand it, is that we should, as the Tenth
5   Circuit has done in connection with a different statute, the
6   criminal statute, 922, has stated that the Supreme Court--
7   their understanding of the Supreme Court view is that there
8   should be a two-step analysis.  One is whether the regulation
9   is affecting conducting as protected by the Second Amendment,
10  and then the second is under whatever standard of review,
11  there is justification for that effect on the affected
12  conduct.
13          So, Ms. Farby, I'll hear from you in support of
14  your motion, and, you know, I recognize, as you do, that the
15  specific conduct involved in <u>Heller</u> was having a firearm in
16  their home for self-defense, but I don't understand you to be
17  arguing here, and maybe I'm mistaken, that you're limiting
18  the Second Amendment protection to the home, are you?
19      MS. FARBY:  Well, Your Honor, the Court need not address
20  how far--whether the Second Amendment right extends outside
21  the home, and if so, how far it extends, because the Supreme
22  Court has made clear that however far that right extends, it
23  does not extend to sensitive places.
24      THE COURT:  Well, I know, but the question of whether
25  this is a sensitive area or not is a question.

1        MS. FARBY:  Yes, Your Honor, and the plaintiff's claims

2   that the United States Postal Service regulation violates

3   their Second Amendment right, fails for a number of reasons.

4   There's at least four reasons which I can briefly list, and

5   then I can explain each one in slightly more detail.

6            First, the plaintiff's claims are foreclosed by the

7   Supreme Court decision in <u>Heller</u>.  The Court stated there

8   that--

9        THE COURT:  Well, I don't agree with that.  That's what

10   I was just talking about.

11        MS. FARBY:  Well, Your Honor, what the Court there said

12   is that its opinion should not be taken to cast doubt on laws

13   forbidding firearms in sensitive places.

14        THE COURT:  Right.

15        MS. FARBY:  So--

16        THE COURT:  I understand that.  What is sensitive about

17   this parking lot?  That's going to be the issue in the case,

18   isn't it?

19        MS. FARBY:  Absolutely, Your Honor.  I will jump to that

20   issue.

21        THE COURT:  Yeah, okay.

22        MS. FARBY:  The Court made clear that the specific

23   sensitive places that it listed in the <u>Heller</u> decision, which

24   was schools and government buildings--

25        THE COURT:  Sure.

1     MS. FARBY:  --were not the only kinds of sensitive

2   places, and the Court was specific that the places and the

3   kinds of regulations were not an exhaustive list.  Many

4   Courts have upheld restrictions on firearms in sensitive

5   places beyond the inside of schools and government buildings.

6   But the Court need not decide the full scope of what might

7   constitute a sensitive place in order to conclude that Postal

8   property is a sensitive.

9     THE COURT:  Well--

10    MS. FARBY:  That's the approach that the Fifth Circuit

11  took in United States versus Dorrison (phonetic).  The Fifth

12  Circuit there found that the Postal parking lot at issue

13  there was a sensitive place under Heller and it upheld the

14  exact regulation--

15    THE COURT:  Well, that's an employee parking lot.

16    MS. FARBY:  In that case, Your Honor, it was an employee

17  parking lot--

18    THE COURT:  Right.

19    MS. FARBY:  --but the decision said that the parking lot

20  there was used as a place of regular government business.

21    THE COURT:  Sure.  That's where the employees come to

22  park, and, you know, you can take judicial notice that

23  there's been employee, co-employee violence in Postal Service

24  places.

25    MS. FARBY:  That's true, Your Honor.

1       THE COURT:  That's not this case.

2       MS. FARBY:  That is not this case, but the parking lot,

3  the public parking lot that's used by Postal patrons in this

4  case, is also a sensitive place.

5       THE COURT:  This isn't limited to Postal patrons, is it?

6       MS. FARBY:  The parking lot?

7       THE COURT:  Yeah.

8       MS. FARBY:  Well, employees may park there.  I'm not

9  sure--

10      THE COURT:  It isn't limited to Postal employees or

11  Postal patrons, is it?

12      MS. FARBY:  No, Your Honor.

13      THE COURT:  Okay, so it's a public parking lot.

14      MS. FARBY:  It is a public parking lot but it is on

15  property that's under the charge and control of the Postal

16  Service.

17      THE COURT:  I understand that.

18      MS. FARBY:  It is--

19      THE COURT:  That's not disputed.

20      MS. FARBY:  It--the parking lot itself facilitates the

21  Postal function that Postal--to which Postal property is

22  dedicated.

23      THE COURT:  But I'm understanding you could--a person

24  can park in this Postal-owned parking lot and do anything and

25  not just go to the post office, right?

1          MS. FARBY:  I'm not sure about that, Your Honor.

2          THE COURT:  Well, that's what the allegation is, and

3     we're stuck with the allegation.  When it says public, to me

4     that means not restricted to Postal patrons.

5          MS. FARBY:  The parking lot is certainly dedicated for

6     the use of Postal patrons.

7          THE COURT:  That isn't the issue, though, Counsel, it's

8     who can park there.

9          MS. FARBY:  The parking lot is designed to serve a

10    Postal function.

11         THE COURT:  Who can park there?  Anybody can--

12         MS. FARBY:  Anybody.  Anybody can park there, Your

13    Honor.

14         THE COURT:  Okay.

15         MS. FARBY:  At least we'll assume that for purposes of

16    this motion.

17         THE COURT:  Right, we have to, because that's the

18    complaint.

19         MS. FARBY:  Yes, Your Honor.  The Postal parking lot,

20    like the Postal building itself, and all other property under

21    the charge and control of the Postal Service, is sensitive

22    for a number of different reasons.  It is government property

23    that is used for a government purpose, just like the parking

24    lot that was at issue in Dorrison, and it is pursuant to the

25    Postal Service's constitutional and statutory authority to

1   provide Postal services and administer Postal property.

2       THE COURT:   All right, what is providing Postal

3   services?   It's providing them to the public--

4       MS. FARBY:   Yes.

5       THE COURT:   --right?   Okay.

6       MS. FARBY:   Because it is a government property used to

7   facilitate a government function, the government should be

8   able to able to assess the security needs of that property,

9   just as it should for courthouses, like this one, military

10  bases, Social Security offices, and the various other kinds

11  of government property that exists.   As Your Honor

12  referenced, unfortunately, there is a history of violence on

13  Postal property--

14      THE COURT:   Right.

15      MS. FARBY:   --and that makes Postal property

16  particularly sensitive.   Postal property is also a particular

17  category of government property where large numbers of people

18  congregate on a daily basis.   I think it's instructive to

19  look at what the District Court said in The United States

20  versus Matzi Andaro case (phonetic), out of the Eastern

21  District of Virginia, which was subsequently affirmed by the

22  Fourth Circuit, and that case dealt with motor vehicles on

23  national parkland.   But what the Court said, analyzing

24  Heller, was that the schools and government buildings are

25  sensitive places because, unlike homes, they are public

1   properties where large numbers of people, often strangers,

2   and including children, congregate, and, therefore, the

3   Second Amendment leaves the judgment of whether and how to

4   regulate firearms and other weapons to policy makers, not to

5   the judiciary.

6          The same is true of the Postal property that's at

7   issue here.  But, unlike national parks, for example, Postal

8   property is location where monetary transactions routinely

9   take place.  Those monetary transactions also make Postal

10  property sensitive.  And it's the mail itself, the Postal

11  function, that makes Postal property sensitive.  The Postal

12  Service is responsible for the--

13         THE COURT:  Well, aren't all these things justifications

14  that I'm being asked to assume?  I mean, this is a threshold

15  motion.  This is a motion that says there's no claim for

16  relief stated.  You're giving me a lot of support for the

17  regulation, but that isn't before me.

18         MS. FARBY:  Well, Your Honor--

19         THE COURT:  You're asking me to accept that, you know,

20  on its face, this absolute prohibition is justified.  Well,

21  it's hard for me to do that under 12(b)(6).

22         MS. FARBY:  Your Honor, the Supreme Court has made clear

23  that when the government is acting in its role as a

24  proprietor of property, not in its role as the regulator or

25  the licensor, which is often the case in some of these Second

1    Amendment decisions.  But here the government is acting in

2    its role as proprietor of its own property, and in those

3    circumstances the Courts have made clear that the government

4    regulation is valid unless it is unreasonable--

5         THE COURT:  Well--

6         MS. FARBY:  --arbitrary or capricious, and so,

7    therefore--

8         THE COURT:  --if this were a case in which the

9    government was--Postal Service was restricting what could be

10   on a bumper sticker, for example, parked in this public

11   parking lot, would that be justified, because it's

12   proprietary?

13        MS. FARBY:  Not necessarily, Your Honor, but the

14   standard--

15        THE COURT:  No, of course not.

16        MS. FARBY:  --but the standard would be whether it was a

17   reasonable regulation, and so here too, because the

18   Postal--the Postal Service is acting in its proprietary

19   capacity, its actions--

20        THE COURT:  But I'm--that's what I'm challenging, your

21   position that, because it's proprietary you can't look at

22   whether it affects any constitutionally protected activity.

23   You would agree, wouldn't you, that if somebody comes in

24   there with a bumper sticker that says, "I hate the Postal

25   Service," the Postal Service can't keep them out.

1       MS. FARBY:  Yes, Your Honor, because that would likely

2   be an unreasonable regulation, but here--

3       THE COURT:  Well--

4       MS. FARBY:  --the Postal Service decision to prohibit

5   firearms on its property to further the interest in public

6   safety--

7       THE COURT:  Well, isn't that the very question, whether

8   that is reasonable, whether there's no way in which, by a

9   permitting process or in any other fashion, like trigger

10  locks--you know, there are a lot of ways in which a firearm,

11  on this--at least the public parking lot, can be considered

12  inaccessible while it's on the public parking area.  Right?

13      MS. FARBY:  Right.

14      THE COURT:  You could have a requirement that there be a

15  trigger lock, that it be in a glove compartment, locked.  And

16  what would be wrong with that?

17      MS. FARBY:  Well, the Supreme Court has made clear that

18  when--

19      THE COURT:  Don't talk about the Supreme Court, I'm

20  talking about this case.

21      MS. FARBY:  Okay.  The Postal Service is not required to

22  enact the most reasonable, or the only reasonable,

23  regulation, so just because the Postal Service could have

24  imposed a standard that was less stringent than the one it

25  has imposed, does not mean that the standard it did impose is

 1   unreasonable when it's acting in its proprietary capacity.

 2   That's established case law.  As long as the Postal Service

 3   regulation is reasonable then it passes muster, and here the

 4   Postal Service--

 5         THE COURT:  Well, how do I know whether it's reasonable?

 6   That's the problem with this being considered on a motion to

 7   dismiss.  The reasonableness of it depends upon whether there

 8   are any other alternatives.

 9         MS. FARBY:  Well, again, Your Honor, the Court has made

10   clear that the Postal Service is not limited to the least

11   restrictive means available to it to further its purpose.

12         THE COURT:  What Court said that?

13         MS. FARBY:  The Supreme Court, Your Honor.

14         THE COURT:  In what?

15         MS. FARBY:  I'll provide the cite, Your Honor.

16         (Pause.)

17          The case I'm referring to, and I believe that

18   language is found in many different cases, but the specific

19   language I'm referring to is in Board of Trustees of State

20   University of New York versus Fox, which is a 1989 Supreme

21   Court--

22         THE COURT:  Yeah, which doesn't deal with the Postal

23   Service.

24         MS. FARBY:  No, it doesn't deal with the Postal

25   Service--

```
 1        THE COURT:  No.

 2        MS. FARBY:  --but what it does deal with is the standard

 3   for addressing the reasonableness of a government

 4   regulation--

 5        THE COURT:  Yeah, and what--

 6        MS. FARBY:  --and that--

 7        THE COURT:  In what context did that come up?

 8        MS. FARBY:  Well, that was in the context of

 9   intermediate scrutiny, Your Honor, and--

10        THE COURT:  After what--not on a motion to dismiss,

11   right?

12        MS. FARBY:  I'm not sure of the--

13        THE COURT:  Yeah.

14        MS. FARBY:  --posture of that case, Your Honor, but

15   numerous Courts have granted motions to dismiss,

16   challenging--where cases have challenged firearms

17   regulations.

18        THE COURT:  I know, but there are a lot of cases before

19   Heller, and there are a lot of cases that were interpreting

20   the Second Amendment as not protecting any individual

21   liberty, right?

22        MS. FARBY:  That's true.

23        THE COURT:  I mean, that's the way the law was before

24   Heller, and, of course, that's why these cases before Heller

25   are difficult to apply, because they were all in the context
```

1    of what we used to think the law was as to the scope of the

2    Second Amendment, that it was a collective right, not an

3    individual right.  Now that the Supreme Court has changed

4    course on that, we're all struggling with trying to define

5    what that right is.  And, you know, we've got a lot of

6    post-<u>Heller</u> cases, and you and opposing counsel have cited

7    them, and there have been some since the briefing here, at

8    the District Court level.  But the problem comes back to what

9    are the dimensions of this individually protected liberty

10   interest, that's--we're struggling with that.

11       MS. FARBY:  I understand, Your Honor.  I think it's

12   instructive to look at what the Supreme Court did say in

13   <u>Heller</u>, and what it said was that its decision should not be

14   taken to cast doubt on laws forbidding firearms in sensitive

15   places.

16       THE COURT:  I understand that, but--

17       MS. FARBY:  By requiring the government to submit

18   evidence at trial in order to justify its restrictions on

19   firearms in every single sensitive place, that inherently

20   would cast doubt on many of the regulations that the Supreme

21   Court--

22       THE COURT:  Well, and--

23       MS. FARBY:  --found shouldn't be cast into doubt.

24       THE COURT:  --and to just accept your position that you

25   can't challenge this regulation casts doubt on whether there

1   is a Second Amendment.

2        MS. FARBY:  No, Your Honor, that's not true.

3        THE COURT:  Well, doesn't it?

4        MS. FARBY:  The Second--the Postal Service regulation

5   here doesn't affect Second Amendment rights at all outside of

6   Postal property.  It's a narrow regulation.  All it does is

7   says you can't bring firearms onto Postal property, and the

8   regulation, of course, says nothing about any other place in

9   which the Bonidys or any other person might exercise their

10  Second Amendment right.  It's a very narrow regulation.

11       THE COURT:  Not when it comes to a public parking lot it

12  doesn't seem narrow to me.

13       MS. FARBY:  It's narrow in the sense that it only

14  prohibits firearms on Postal property, which is a very

15  discrete place.

16       THE COURT:  Okay.  I think that's your argument, right?

17  You can't touch.

18       MS. FARBY:  Well, it's a matter of common sense that the

19  regulation here is reasonably related to the Postal Service's

20  compelling interest in preventing violence on its property.

21  And the Supreme Court has upheld restrictions on

22  constitutionally protected rights based on common sense, even

23  in a strict--even under a strict scrutiny standard.  So the

24  Supreme Court has said that the level of evidence that's

25  needed to justify a regulation varies up or down depending on

1   the novelty or plausibility of the justification.

2      THE COURT:  Exactly right, and that is why, it seems to

3   me, in this case we have to consider the special

4   circumstances alleged in this second amended complaint, being

5   that these are folks who don't have postal service at home,

6   they live in a remote area, they have--and I don't know that

7   this changes the scope of the Second Amendment, but they have

8   a concealed carry permit, which, under Colorado law, permits

9   them to carry a firearm in public places, and they only can

10  access this Postal building when it's under the snow

11  ordinance in Avon through this parking lot, unless they park

12  somewhere remotely from this building.  Now those are the

13  facts of the case, as alleged.

14     MS. FARBY:  Those are the facts of the case as alleged,

15  and as alleged, the plaintiffs have not established--or, have

16  not even alleged that--have not alleged facts sufficient to

17  show that the Postal Service regulation imposes a substantial

18  burden on their constitutionally protected right.

19     THE COURT:  Yeah, and, you know, this is not a facial

20  attack, this is an as-applied challenge--

21     MS. FARBY:  Yes.

22     THE COURT:  --and that's why these facts that I have

23  just referred to, that are alleged in the Second Amendment

24  complaint, seem to me to be significant for consideration

25  here.

```
 1        MS. FARBY:  Your Honor, even the facts as alleged in the
 2   Second Amendment--in the second amended complaint, do not
 3   allege--do not establish that the Postal Service regulation
 4   substantially burdens the right--there may be an incident
 5   burden on the Bonidys' purported constitutional right, but
 6   incident burdens are not sufficient, Your Honor.  There is no
 7   substantial burden on their right, and that's what the--
 8        THE COURT:  Is there a right to receive mail?
 9        MS. FARBY:  There's not necessarily a constitutional
10   right to receive mail, but--
11        THE COURT:  What is the--the Postal Service is supposed
12   to serve, right?
13        MS. FARBY:  Yes.
14        THE COURT:  It's supposed to serve the public.
15        MS. FARBY:  Yes.
16        THE COURT:  Supposed to deliver mail to the public.
17        MS. FARBY:  Yes.
18        THE COURT:  In cases where there's no home delivery,
19   there has to be access to the Postal Service office to get
20   the mail.
21        MS. FARBY:  Yes, and there is that access here, Your
22   Honor.
23        THE COURT:  How?
24        MS. FARBY:  At--
25        THE COURT:  If the access is unavailable to the
```

1  plaintiffs, if they claim that they can't get there without

2  having their guns in the car, here we are.

3      MS. FARBY:  As alleged in the complaint, Your Honor,

4  they can park on the public street that's directly in front

5  of the post office--

6      THE COURT:  Not on snow days.

7      MS. FARBY:  On days--well, note, Your Honor, the

8  complaint does not allege anywhere that the Bonidys have ever

9  been precluded from parking on the public street.  They

10  may--they alleged--

11     THE COURT:   There's an ordinance that says you can't

12  park on this street when it's snowing.  It had two inches of

13  snow.  There it is.

14     MS. FARBY:  What the ordinance says is that street

15  parking may be limited when there's an accumulation of

16  greater than two inches of snow.

17     THE COURT:  Right.

18     MS. FARBY:  The complaint does not allege that they have

19  ever been precluded from parking on the public street.

20     THE COURT:  Have you ever been to Avon, Colorado?

21     MS. FARBY:  I have not, Your Honor.

22     THE COURT:  It snows a lot in Avon, Colorado.

23     MS. FARBY:  I understand, Your Honor, and actually, in

24  our reply brief, we submitted statistics about the average

25  number of days with more than two inches of snow, but the

1  complaint is silent as to whether--or, whether the plaintiffs

2  have ever been precluded from parking on that public street.

3      THE COURT:  Why does it have to allege a date when the

4  ordinance says you can't park here?

5      MS. FARBY:  Because they have not been able--they have

6  not alleged that there has ever been a substantial--

7      THE COURT:  Why would it make a difference whether

8  they've ever--I mean, it's--you said common sense.  Common

9  sense is that when there's an ordinance that says you can't

10  park here when there's two inches of snow, and you're in

11  Avon, Colorado, they've had days when they can't park there.

12  That's common sense, agreed?

13      MS. FARBY:  I agree with that, Your Honor, but in order

14  for the Court to even look at whether this regulation

15  infringes a constitutional right, there must be a substantial

16  infringement, and they have not alleged a substantial

17  infringement.  That's--

18      THE COURT:  What constitutes a substantial infringement,

19  more than one day?  Does it have to be more than ten days?

20  What are you talking about?

21      MS. FARBY:  I don't know, Your Honor.

22      THE COURT:  Exactly.

23      MS. FARBY:  It's not necessary to decide what the outer

24  limits of a substantial burden would be because they have not

25  alleged it here.  They have not alleged that they have ever

```
 1   been precluded from parking on the public street with their
 2   firearm because of these--the snow ordinance.  And in any
 3   event, Your Honor, the snow would--the restrictions on
 4   parking on the public street is likely just an incidental
 5   burden.  It's not attributable to the Postal Service
 6   regulation itself.  I mean, the Postal Services doesn't have
 7   to provide parking to its patrons at all.  There are plenty
 8   of Postal--post offices in urban areas--
 9        THE COURT:  We're talking about Avon, Colorado, not
10   plenty of other areas.  This case is factually specific.
11        MS. FARBY:  Yes, Your Honor.  Under the facts as alleged
12   by the plaintiffs, they have never been precluded from
13   parking on the public street in front of the Avon Post
14   Office.
15        THE COURT:  Well, this--
16        MS. FARBY:  It's not--it's--
17        THE COURT:  --you know, you're going round and round.  I
18   object that.
19        MS. FARBY:  And--
20        THE COURT:  Let me hear from the plaintiff.  Mr. Manley.
21            I've been talking about the parking lot because it
22   seems to me to be qualitatively different from the building,
23   and you've got two claims.  The first one is the building, so
24   it seems to me that the burden, as defendant's counsel wishes
25   to call it, on the protected interest under the Second
```

```
 1    Amendment, is slight, if they can park in the public parking
 2    lot immediately adjacent to the building and go into the
 3    building without their firearms.  Now, are you contending in
 4    the first claim for relief that they must have the firearms
 5    with them when they go in the building?
 6         MR. MANLEY:  In the first claim for relief?  No, Your
 7    Honor, the--it's--
 8         THE COURT:  Well, what are you claiming?
 9         MR. MANLEY:  In the first claim for relief we're simply
10    contending that the Bonidys have a constitutional right to
11    possess a firearm in their car in the parking lot.
12         THE COURT:  Well--
13         MR. MANLEY:  That's the first claim for relief.
14         THE COURT:  --I thought the first claim for relief was
15    the building.  Maybe I've got them reversed.  You've got a
16    claim that they can go into the building.
17         MR. MANLEY:  Yes, that's the second claim for relief,
18    Your Honor.
19         THE COURT:  Okay, I've got them reversed.
20         MR. MANLEY:  And, yes, the Second Amendment protects the
21    right to keep and bear arms for self-defense.  And that right
22    has to be exercised wherever the person happens to be when
23    that--the need for self-defense arises, and so the burden on
24    the Bonidys, if they're in the post office and need to
25    exercise the right to self-defense, is total, it's complete.
```

1    The right is rendered--

2        THE COURT:  So they could walk into this building with

3    their firearms?

4        MR. MANLEY:  Well, no, I don't think so, Your Honor,

5    because this building is qualitatively different.  The--this

6    building--

7        THE COURT:  What's the difference?  What's the

8    difference?

9        MR. MANLEY:  Well, this building has security, it has

10   screening, and it has restricted access.  There are metal

11   detectors at every entrance, and only individuals who have

12   been verified to be unarmed are allowed to enter the

13   building--

14       THE COURT:  Okay.

15       MR. MANLEY:  --and then when they're here, they're under

16   the--everyone in the building is under the protection of

17   the--

18       THE COURT:  Now--

19       MR. MANLEY:  --Security Service.

20       THE COURT:  --the plaintiffs, when, you know, the fact

21   that there's a concealed carry permit, how does that affect

22   the claim--the case?

23       MR. MANLEY:  Well, factually, Your Honor, it shows that

24   they're law-abiding individuals.

25       THE COURT:  I know, but, you know, the Second Amendment

1    presumes everybody is law-abiding, unless you come within one

2    of their restrictions on having firearms, like 922 of Title

3    18.   That's a different thing entirely, if you're a convicted

4    felon or illegal--all these other things.   So, but I don't

5    see that the concealed carry--it just means that the Eagle

6    County Sheriff has granted them a permit under Colorado law,

7    but I don't think that affects the scope of the Second

8    Amendment, do you?

9         MR. MANLEY:   I agree, Your Honor, and--

10        THE COURT:   Okay.

11        MR. MANLEY:   --and I think all it shows is that the--is

12   that the Bonidys aren't those people--

13        THE COURT:   Yeah.

14        MR. MANLEY:   --that are identified by 922.

15        THE COURT:   So this right of self-defense is not

16   different for them than it is for any other person who is not

17   restricted from having possession of firearms, true?

18        MR. MANLEY:   I think that's correct, Your Honor, yes.

19        THE COURT:   Yeah, all right.

20        MR. MANLEY:   I think it calls in the level of vetting

21   that the Bonidys have undergone through the sheriff, through

22   the background checks, indicates that perhaps the defendant's

23   interest in security are not connected to denying the Bonidys

24   the right to keep and bear arms.   So it calls into the

25   question the rationale for the Postal ban--

1          THE COURT:  You don't--

2          MR. MANLEY:  --especially as applied to the Bonidys.

3          THE COURT:  In Colorado you don't get a concealed carry

4    permit--do you have to show you have a particularized need

5    for protection?

6          MR. MANLEY:  No, Your Honor.

7          THE COURT:  Yeah, I didn't think so.  You simply have to

8    show you know how to handle a firearm, that you don't have

9    any of the restrictions on your mental capacity and all those

10   things, and you have a clean record, and then you can get it.

11   So that's why, when we look at this question of the

12   protection of self--well, self-protection, insofar as <u>Heller</u>

13   was based on the need for self-protection as justification

14   for the individual right to have a firearm, you know, I think

15   that we have to look at this case as whether they had a

16   concealed carry permit or not, whether they have special

17   circumstances of being in an area where they may need

18   self-protection from animals, for that matter.

19          But what it seems to me is important here is their

20   access to their mail.  Now I questioned Ms. Farby about the,

21   you know, what is the Postal Service.  It's to serve and give

22   you access to mail addressed to you.  They don't get mail

23   service at home, and that may be a special circumstance in

24   this case.  Not everybody has to go to the post office to get

25   their mail.

1        Your contention, as I understand it then from what
2   I've heard you say here, and from what I saw in the papers
3   filed, is that given that the postal facility in Avon,
4   Colorado is not a secured area with--so that anybody inside
5   of it feels protected by the security measures that are in
6   place, that it ought to be, and, therefore, its public
7   access, you ought to be able to have self-protection there.
8   That's your contention.

9        MR. MANLEY:  Yes, Your Honor.  The Avon Post Office is
10  no different from a grocery store or a gas station or a bank
11  in Avon.  They're all places that are open to the public,
12  that have no security measures in place, like a courthouse or
13  an airport, or other federal facilities that are similarly
14  protected.

15       THE COURT:  Now we don't have any case authority for
16  that, do we?

17       MR. MANLEY:  For that, that rule, Your Honor?

18       THE COURT:  Yeah.  For that distinction between public
19  buildings that are within a secure zone, so to speak, and
20  those that aren't.  That's something that I'm not--that I
21  haven't seen in any of the cases that I've reviewed.

22       MR. MANLEY:  I don't--I'm not familiar with any case
23  law, Your Honor.

24       THE COURT:  All right.

25       MR. MANLEY:  What I'm--what I do know is that the laws

1   of the states, for instance, Colorado, reflect that

2   distinction.  A concealed carry permit in Colorado doesn't

3   authorize a person to carry into a public building that has a

4   metal detector, or a federal building where federal law

5   prohibits--

6        THE COURT:  In that in a state statute, or--

7        MR. MANLEY:  It is, Your Honor, yes.

8        THE COURT:  Okay.

9        MR. MANLEY:  And so the, you know, the laws of the

10  states reflect that, that distinction, and it seems to be an

11  objective distinction that's based on the character of the

12  building, it's based on the how the building is being

13  secured, rather than just an arbitrary whim of some

14  government official saying, "This place is sensitive for--"

15       THE COURT:  Now that--

16       MR. MANLEY:  "--for no objective reason."

17       THE COURT:  The background of this case is that there

18  was an effort made here by the--is it Ba-needy (phonetic)?

19       MR. MANLEY:  I think it's Bon-iddy (phonetic).

20       THE COURT:  --that the Bonidys attempted to get some

21  kind of accommodation to permit--and agreed, for example, to

22  a locked glove compartment, is that right?

23       MR. MANLEY:  That's correct.

24       THE COURT:  I mean, that isn't in our complaint, but I'm

25  talking about the background.

1        MR. MANLEY:  Well, the--we actually do allege in the

2    complaint that the Bonidys contacted--

3        THE COURT:  Yeah, okay.

4        MR. MANLEY:  --the post office and requested recognition

5    of their right to carry on the Postal property, either in the

6    car or, obviously, what they truly desire is to be able to

7    carry, you know, when they go into the building as well, but

8    they requested both of those--

9        THE COURT:  Yeah.

10        MR. MANLEY:  --accommodations.

11        THE COURT:  So, as I understand this case then, if it

12    were to go forward, we would be looking at whether there are

13    means to, you know, the--the government interest here is

14    public safety, with respect to property that's under the

15    ownership and control of the Postal Service, an--I don't know

16    if the Postal Service is technically an agent, or agency of

17    the government anymore or not, but at any rate, your--as we

18    go forward, you would be looking at--and, of course, opposing

19    counsel says you don't have to have least restrictive.  But,

20    as I understand your case, it is somewhat like a First

21    Amendment case, in terms of balancing, or attempting to

22    balance, the protected interests of the individual plaintiffs

23    versus the governmental interests in public safety, and,

24    therefore, as I--and tell me if I'm wrong in understanding

25    this, you're not averse to some reasonable accommodation in

```
 1   balancing these interests.  Is that true?
 2        MR. MANLEY:  Yes, Your Honor, I think there's--
 3        THE COURT:  Yeah.
 4        MR. MANLEY:  --there's a balance that needs to be
 5   struck--
 6        THE COURT:  Yeah.
 7        MR. MANLEY:  --and where that balance lies is something
 8   that we need to determine--
 9        THE COURT:  You're not--
10        MR. MANLEY:  --based on the evidence.
11        THE COURT:  --therefore, claiming an absolute right to
12   have these handguns in a holster, covered, and walk anywhere
13   you want to on the property.
14        MR. MANLEY:  Well, no, certainly, and we're not claiming
15   that the Bonidys have a right to walk into the restricted
16   area of the post office, or the restricted parking lot if
17   there--I'm not sure that there is one at Avon, but I'd
18   imagine there is, where they stage the mail trucks.  We're
19   not arguing with any of that, simply the public areas where
20   the general public is allowed--
21        THE COURT:  Yeah.  Now I--
22        MR. MANLEY:  --to come and go freely.
23        THE COURT:  --you know, I'm assuming that the--I've
24   never seen this post office, so I'm assuming there are boxes
25   or--is that right?  They have a p.o. box and--
```

1      MR. MANLEY:  That's right, Your Honor.

2      THE COURT:  --they go and unlock it and take out--I

3  don't know if they do that anymore.

4      MR. MANLEY:  No, that's right.  Yes, the post office

5  provides the Bonidys with a post office box--

6      THE COURT:  Yeah.

7      MR. MANLEY:  --and that's how they get their mail.

8      THE COURT:  So, and they rent a box?

9      MR. MANLEY:  The box is provided free of charge because

10  the Postal Service--

11      THE COURT:  Because there's no--

12      MR. MANLEY:  --doesn't deliver to their home.

13      THE COURT:  --home delivery.  And I assume, given the

14  nature of Eagle County, that's true of a lot of folks up

15  there.  There's limited home delivery.

16      MR. MANLEY:  At the very least, the Bonidys' neighbors

17  fall into the same group.

18      THE COURT:  So how would this case go forward?  What are

19  you suggesting?

20      MR. MANLEY:  Well, Your Honor, the defendants have the

21  burden to justify their regulation, and then the plaintiffs

22  would have to rebut any evidence that they offer.  That's the

23  evidentiary procedure in the First Amendment context, and, as

24  you, I think, correctly point out, that this is like a First

25  Amendment case.

1          THE COURT:  Okay.  Thank you.

2          MR. MANLEY:  Thank you.

3          THE COURT:  Well, I think I've--I think I've got your

4     arguments, Ms. Farby, have I?  You may--

5          MS. FARBY:  Your Honor, can I briefly be heard--

6          THE COURT:  Yeah, sure.

7          MS. FARBY:  --to address some points raised?

8          THE COURT:  Yeah.

9          MS. FARBY:  Thank you.  I'll be brief, Your Honor, I

10    just want to address a couple of points made by opposing

11    counsel.  The Courts and Heller have made clear that

12    categorical restrictions are permitted, and so here the

13    Postal Service should not have to go property by property,

14    patron by patron, to determine whether that person or that

15    property should be restricted.  Categorical prohibitions on

16    possession of firearms in sensitive places are permitted,

17    that's what the Supreme Court said in Heller.

18         THE COURT:  I know, but the whole issue is what's a

19    sensitive place?

20         MS. FARBY:  Right, Your Honor, and, again, the Court

21    there made clear that schools and government buildings are

22    not the only kinds of sensitive places.

23         THE COURT:  I know that, but they don't tell us what

24    else is.

25         MS. FARBY:  That's right, Your Honor, and counsel's

```
 1    suggestion that only places that electronically screen

 2    persons entering the property, that's just directly contrary

 3    to Heller because there's many schools and government

 4    buildings themselves that don't screen people walking into

 5    the building, but under Heller--

 6          THE COURT:  Yeah.

 7          MS. FARBY:  --those are sensitive places where firearms

 8    may be prohibited.

 9          THE COURT:  Well, you know, Heller raises more question

10    than it answers.

11          MS. FARBY:  But it does provide guidance, Your Honor,

12    and--

13          THE COURT:  Very little.

14          MS. FARBY:  --the Tenth Circuit has taken the Court at

15    its word in finding that restrictions beyond those expressly

16    enumerated in Heller--

17          THE COURT:  Criminal restrictions.

18          MS. FARBY:  Yes, criminal restrictions--

19          THE COURT:  Yeah.

20          MS. FARBY:  --but other Courts outside of the Tenth

21    Circuit have found restrictions in sensitive places to be

22    within Heller, even though they're not schools or government

23    buildings.

24          THE COURT:  And not a post office.

25          MS. FARBY:  Well, Dorrison--
```

```
 1          THE COURT:  That's a restricted area.

 2          MS. FARBY:  It was a restricted area, Your Honor, but--

 3          THE COURT:  That's not this case.

 4          MS. FARBY:  It's not this case but the Court there

 5     didn't limit its decision to the fact it was a restricted

 6     area.  What it said was it was used as a place of regular

 7     government business--

 8          THE COURT:  Yes.

 9          MS. FARBY:  --and the parking lot--

10          THE COURT:  By employees of the government.

11          MS. FARBY:  But with the Court there's--

12          THE COURT:  And you know the background of Postal

13     violence has been employee on employees, or ex-employees.

14          MS. FARBY:  I believe that's true in part, I--

15          THE COURT:  Yeah.

16          MS. FARBY:  The public areas of the Postal--of the post

17     office and the parking lot are also sensitive because of the

18     mail.  The mail is carried in the public areas and there is

19     often sensitive information and valuable material--

20          THE COURT:  Well, sure--

21          MS. FARBY:  --that goes--

22          THE COURT:  --but there's also the public interest in

23     getting the mail.

24          MS. FARBY:  That--that's--

25          THE COURT:  The public's a part of the government
```

1   function here.  This is a public building.

2       MS. FARBY:  The notion that the Postal Service should

3   have to decide on an individual basis whether a person should

4   be permitted to bring firearms onto property would cast into

5   doubt a whole range of federal restrictions on--

6       THE COURT:  Why?  Why would that be true?  Why can't

7   they just issue a permit to these people--

8       MS. FARBY:  Well, nothing's--

9       THE COURT:  --with restrictions?

10      MS. FARBY:  Well, nothing would stop the next person

11  from seeking the same restriction.  Nothing would stop

12  somebody from challenging the prohibition on firearms in this

13  building, Your Honor, and the government shouldn't have to

14  submit to go through an extensive process and trial where

15  they have to submit evidence to justify each and every

16  restriction--

17      THE COURT:  Well--

18      MS. FARBY:  --in each every government property.

19      THE COURT:  --I'm denying--

20      MS. FARBY:  Congress--

21      THE COURT:  I'm going to deny your motion.  We're going

22  to go forward.  We're going to determine the reasonableness

23  of this under whatever standard we finally develop, probably

24  the intermediate scrutiny.  So you're going to answer, and

25  we're going to have a scheduling conference--

1      MS. FARBY:  Thank you.

2      THE COURT:  --to determine what limits there should be

3  on discovery in the case, and questions of who goes forward

4  with what evidence.  Those are things that are not clear to

5  me.  But what is clear to me at this time is that this

6  regulation, as applied to these people, cannot just be

7  accepted because the government--the Postal Service says so.

8  And that's where we are.  Now you're going to continue with

9  the case, I presume.

10     MS. FARBY:  Yes, Your Honor.

11     THE COURT:  And you have travel obligations--I mean, you

12  have a burden of travel.

13     MS. FARBY:  Yes, Your Honor.

14     THE COURT:  So what I'd like to do is set a scheduling

15  conference while you're here.

16     MS. FARBY:  Okay.

17     THE COURT:  I don't mean today, but, I mean, set a date

18  for it while you're here--

19     MS. FARBY:  Okay.

20     THE COURT:  --and, you know, it'll have to be in

21  January.  So do you have a calendar with you then?

22     MS. FARBY:  Yes, Your Honor.

23     THE COURT:  Okay.

24     MS. FARBY:  Give me a moment, please.

25     THE COURT:  Well, let's talk about a date.  And I

1    don't--I'm presuming that it would be easier for you to do it

2    in the morning?

3          MS. FARBY:  Yes, Your Honor.

4          THE COURT:  Yeah, instead of--here we are, you're out

5    here in--you may have to spend a weekend out here.  Well,

6    that isn't so bad.  But how about January 12th?  That's a

7    Thursday.  Let's say 10:00 o'clock, or 11:00 o'clock, I don't

8    know--

9          MS. FARBY:  Your Honor, give me one moment to--

10         THE COURT:  Sure.

11         MS. FARBY:  --check to make sure--

12         THE COURT:  Yeah.

13         MS. FARBY:  --I don't have anything--

14         THE COURT:  Of course.

15         MR. MANLEY:  Your Honor, I do know that I'll be

16   traveling earlier in that week.  I do intend to be back--

17         THE COURT:  This is a Thursday.

18         MR. MANLEY:  Yes, I intend to be back on Thursday, but I

19   don't know what my travel arrangements are at this point.  I

20   may be traveling on Thursday, I don't know.

21         THE COURT:  Well, we could go--I can't--I'd have to go

22   into the week of the 23rd then.  What about the 26th, January

23   26th?

24         MS. FARBY:  Your Honor, that's fine for me--

25         THE COURT:  What time of day is best for you?  I've got

1   that--

2      MS. FARBY:  Thank you, Your Honor.  I assume you want

3   the scheduling conference in person, and not--

4      THE COURT:  Oh, yes, for sure.  It's face to face here.

5      MS. FARBY:  Thank you, Your Honor.  The morning is

6   preferable, but, of course, I'll--whatever you--

7      THE COURT:  Well, is 10:00 o'clock--

8      MS. FARBY:  That's fine.

9      THE COURT:  --suitable?  How about you, Mr. Manley?

10     MR. MANLEY:  I believe that works for me, Your Honor.

11     THE COURT:  Okay.  Ten o'clock, January 26th, for the

12  scheduling conference, and, of course, we'll need the answer

13  before then.  And I have procedures that are posted with the

14  form of scheduling order and so forth that, Ms. Farby, you

15  may not yet be familiar with, but you will be.  And it

16  provides that counsel attempt to meet and agree on a proposed

17  scheduling order, but it not be filed electronically, that it

18  be submitted in paper form, and it could come through Mr.

19  Manley then, since he's got better access than you do to the

20  courthouse.  So you'll see all that, and we'll see where this

21  case goes.  So, any questions then?  We'll go forward and see

22  how we're going to address these interesting questions.

23  Okay?  Court's in recess.

24     (2:45 p.m. - Whereupon, the proceedings were concluded.)

25

1                          <u>TRANSCRIBER'S CERTIFICATE</u>

2

3          I hereby certify that the foregoing has been

4    transcribed by me to the best of my ability and constitutes a

5    true and accurate transcript of the mechanically recorded

6    proceedings in the above matter.

7          Dated at Aurora, Colorado this 1st day of December,

8    2011.

9

10

11

12

13

14                    <u>s/John Schasny</u>

15                    John Schasny

16                    Federal Reporting Service, Inc.

17                    17454 East Asbury Place

18                    Aurora, Colorado  80013

19                    (303) 751-2777

20

21

22

23

24

25