IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 10-cv-02408-RPM

DEBBIE BONIDY,
TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

      Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
STEVE RUEHLE, Postmaster, Avon, Colorado,

      Defendants.

---

## SCHEDULING ORDER

---

### 1.    DATE OF CONFERENCE AND APPEARANCES OF COUNSEL

Scheduling Conference: January 26, 2012

James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
jmanley@mountainstateslegal.com

Attorney for Debbie Bonidy, Tab Bonidy, and National Association For Gun Rights

Lesley R. Farby, Esq.
United States Department of Justice Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
(202) 514-3481
Lesley.Farby@usdoj.gov

Attorney for United States Postal Service, Patrick Donahoe, Postmaster General, and Steve Ruehle, Postmaster, Avon, Colorado

## 2. STATEMENT OF JURISDICTION

It is undisputed that this Court has jurisdiction over Plaintiffs' claims for relief pursuant to 39 U.S.C. §§ 401(1) and 409(a), because this action is brought against the United States Postal Service. Jurisdiction is also proper pursuant to 28 U.S.C. § 1331, because the claims arise under the United States Constitution.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**a. Plaintiffs:**

Plaintiffs' Second Amended Complaint raises two distinct issues: (1) Whether Defendants may prohibit the Bonidys from possessing a firearm in a private vehicle parked on postal property adjacent to the Avon Post Office; and (2) whether Defendants may prohibit the Bonidys from carrying a firearm inside the Avon Post Office. Plaintiffs allege that core conduct protected by the Second Amendment explicitly includes the right of law-abiding citizens to carry firearms for self-defense.

United States Postal Service ("USPS") regulations generally prohibit law-abiding individuals from possessing or carrying functional firearms, openly or concealed, onto any real property under the charge and control of the USPS. 39 C.F.R. § 232.1(*l*). The Bonidys live in rural Colorado and, because they do not have home mail service, they must drive approximately 10 miles roundtrip everyday from their home to reach the local Post Office in Avon to pick up their mail. Second Am. Compl. ¶¶ 15, 16, 19, 20. There is a public parking lot adjacent to the Avon Post Office; the parking lot is located on real property under the charge and control of the USPS. *Id.* ¶ 21. The public USPS parking lot adjacent to the Avon Post Office is the only public parking consistently available to patrons of the Avon Post Office. *Id.* ¶¶ 22–23.

The postal parking lot and the public area of the Avon Post Office where the Bonidys pick up their mail are not sensitive places. Security personnel do not electronically screen persons entering the Avon Post Office to determine whether persons are carrying firearms, or weapons of any kind. *Id.* ¶ 17. Security personnel do not restrict access to the Avon Post Office to only those persons who have been screened and determined to be unarmed. *Id.* ¶ 18.

The Bonidys lawfully own handguns, which they are licensed to carry pursuant to Colorado's Concealed Carry Act. C.R.S. § 18-12-201 *et seq.* Mr. and Mrs. Bonidy presently intend to possess a handgun for self-defense when traveling to, from, through, or on USPS property but are prevented from doing so by Defendants' active enforcement of 39 C.F.R. § 232.1(*l*). Second Am. Compl. ¶ 24. The Bonidys are law-abiding individuals; they are over 21 years old, have no history of substance abuse or criminal activity, are not subject to a protection order, have demonstrated competency with a handgun, and have been approved by the Eagle County Sheriff to carry a concealed handgun almost everywhere in the State. *Id.* ¶ 25.

On July 22, 2010, the Bonidys contacted the USPS to inquire as to whether they would be subject to prosecution pursuant to 39 C.F.R. § 232.1(*l*) if they carried a firearm on USPS property or stored a firearm in their cars when they parked on USPS property when picking up their mail. *Id.* ¶ 26, Ex. 1. By return letter, Senior Vice President and General Counsel Mary Anne Gibbons confirmed, on behalf of then-Postmaster General John Potter, that "the regulations governing Conduct on Postal Property prevent the Bonidys from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service. . . . There are limited exceptions to this policy that would not apply here." *Id.* ¶ 27, Ex. 2. Thus, 39 C.F.R. § 232.1(*l*) imposes a total ban on law-abiding individuals' possession of firearms; the USPS ban does not even allow the Bonidys to safely store a firearm in their vehicles. This effectively

results in a broad ban on possession of firearms—not only on USPS property—but also when the Bonidys are traveling to or from USPS property. *Id.* at ¶ 24.

On October 4, 2010, Plaintiffs filed the instant action seeking declaratory and injunctive relief to remedy Defendants' unconstitutional deprivation of their right to keep and bear arms.

### b. Defendants:

Defendants deny that 39 C.F.R. § 232.1(*l*), the United States Postal Service regulation that prohibits the carrying and storage of firearms and other dangerous and deadly weapons and explosives on postal property ("USPS regulation"), infringes on plaintiffs' Second Amendment rights. The Second Amendment does not protect a right to bring a firearm onto sensitive government property. Because property under the charge and control of the Postal Service – including the Avon, Colorado post office and post office parking lot – is a "sensitive place," the USPS regulation is "presumptively lawful" under *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008). In *Heller*, the Supreme Court explicitly stated that "schools and government buildings" are "sensitive places" in which laws forbidding firearms are presumptively lawful. *Id.* The Court also made clear the inside of schools and government buildings are not the only places that are sensitive, and that laws forbidding firearms in other sensitive places are presumptively lawful. *Id.*

Property under the charge and control of the United States Postal Service is a "sensitive place" under *Heller* for a number of reasons. First, all postal property is United States government property, and the United States Postal Service is constitutionally and statutorily obligated to administer and protect all of its property, and the customers and employees on that property. The modern Postal Service was established by Congress as an independent establishment of the Executive Branch of the Government of the United States, and the Postal

Service fulfills a quintessential governmental function at each of its 32,146 retail and delivery facilities. Many of these facilities are co-located with other federal, state, and local government entities, including United States Courthouses. The Postal Service has its own federal law enforcement and security agency, the United States Postal Inspection Service. The Inspection Service includes approximately 1,500 Postal Inspectors stationed throughout the United States and abroad who enforce more than 200 federal laws involving the criminal use of the U.S. Mail and postal system. The Inspection Service is also responsible for ensuring the security of each of the thousands of postal facilities throughout the country and over 645,000 employees. The Postal Service is the third largest employer in the nation; its obligation to maintain a safe working environment is of paramount public importance. Postal Inspectors are federal law enforcement officers who, among other things, carry firearms, make arrests, and serve federal search warrants and subpoenas, and who work closely with the Department of Justice and other federal law enforcement agencies. The Postal Inspection Service also maintains a Security Force staffed by approximately 650 uniformed Postal Police Officers assigned to critical postal facilities throughout the country.

The nature of the services provided by the Postal Service also makes postal property sensitive. The U.S. Mail and postal property are frequent targets of unlawful activity, including mail theft (primarily of valuables such as financial information, checks, jewelry, or illegal drugs), mail fraud, mailing suspicious items and substances (including firearms and narcotics), robbery, burglary, and money laundering. In 2010 alone, the Inspection Service initiated over 6,000 criminal investigations and arrested over 6,000 suspects for crimes against the Postal Service or involving the U.S. Mail, including 2,275 arrests for mail theft, 508 investigations of assaults and threats, 1,075 investigations involving the mailing of controlled substances and

drug-related proceeds, 75 investigations of robberies, 129 investigations of burglaries, and 68 investigations of vandalism and arson. In addition, in 2010, the Postal Inspection Service engaged in revenue-protection efforts identifying over $110 million in postal revenue losses.

In addition to this criminal activity, there is an unfortunate history of violence on postal property across the United States. Throughout its existence, the Postal Service has been the site of numerous instances of crime and violence, including firearms- and other weapons-related violence, as well as threats to the safety and lives of its employees and customers. These incidents have included senseless shooting sprees that killed many individuals, shootings that took place during the course of robberies or other unlawful activity, situations in which seemingly minor disturbances or altercations escalated into deadly confrontations, as well as suicides. They have occurred on postal property across the United States, at large facilities and small, in post office buildings and in parking lots.

Because of its governmental function, the sensitive nature of the mail services it provides, the targeting of the U.S. Mail and postal property for unlawful activity, and the unfortunate history of violence on postal property, property under the charge and control of the U.S. Postal Service is a sensitive place under *Heller*. Therefore, the USPS regulation challenged by plaintiffs is a presumptively lawful regulation that does not implicate a right protected by the Second Amendment. Even if the regulation did implicate conduct protected by the Second Amendment, it does not impose any substantial burden on plaintiffs' constitutional rights. As applied to plaintiffs, the regulation imposes at most a minimal incidental burden. To comply with the regulation, plaintiffs need only leave their firearms in their car parked on the public street directly in front of the post office or in one of several other places dedicated to public parking in the small town of Avon for the few minutes it takes them to conduct their postal

business. Because the regulation imposes at most a slight inconvenience rather than a substantial burden on a purported constitutional right, the Court need not apply heightened constitutional scrutiny in order to uphold the regulation.

Even if the Court were to engage in constitutional scrutiny, the USPS regulation is a permissible regulation enacted by the Postal Service in its capacity as proprietor of postal property. Where, as here, the government is acting in its proprietary capacity, its regulation of its own property is deemed valid unless it is unreasonable, arbitrary, capricious, or invidious. Considering its unfortunate position as a target of violence and crime, and the sensitive nature and high value of the millions of pieces of mail within its control, it is certainly reasonable for the Postal Service to prohibit firearms and other dangerous and deadly weapons on its property in order to minimize the danger to its employees and customers, and to the mail in its control. It is likewise reasonable for the Postal Service to apply its conduct regulations uniformly across its tens of thousands of locations. Requiring the Postal Service to apply different regulations at each of the thousands of locations at which it operates based on the unique circumstances of each facility is simply not administratively feasible for an entity that is tasked with providing a uniform and standard service throughout the United States.

Even if the Court were to apply a more rigorous level of constitutional review, the USPS regulation would pass muster. To the extent it applies heightened scrutiny at all, this Court should follow the approach of the Tenth Circuit and nearly every other court to reach the issue and apply no more than intermediate scrutiny to the USPS regulation. To survive intermediate scrutiny, Defendants must show that its objective is an important one and that it is advanced by means substantially related to that objective. Here, the USPS regulation is undoubtedly "substantially" or "reasonably" related to the important objective of preventing armed violence

on postal property. Given the sensitive and high-value transactions that take place at virtually every post office throughout the country and the unfortunate widespread history of violence on postal property, the fit between the regulation and the compelling government interest in preventing violence on postal property is a reasonable one. The USPS regulation does not violate plaintiffs' Second Amendment rights.

**4. UNDISPUTED FACTS**

The following facts are undisputed:

1. Defendant United States Postal Service ("USPS") is "an independent establishment of the executive branch of the government of the United States . . . ." 39 U.S.C. § 201. The USPS is responsible for providing "postal facilities of such character and in such locations, that postal patrons throughout the Nation will . . . have ready access to essential postal services." 39 U.S.C. § 403(b)(3). USPS is authorized "to adopt . . . rules and regulations . . . as may be necessary in the execution of its functions." 39 U.S.C. § 403(2).

2. Patrick Donahoe is the Postmaster General of the USPS. Defendant Donahoe is responsible for the administration of the USPS.

3. Steve Ruehle is the Postmaster of the Post Office at 111 West Beaver Creek Boulevard in Avon, Colorado. Defendant Ruehle is responsible for the administration of the Post Office at 111 West Beaver Creek Boulevard in Avon, Colorado.

4. USPS regulations prohibit individuals, including the Bonidys and NAGR's members, from possessing a functional firearm, openly or concealed, on any real property under the charge and control of the USPS, including firearms stored in private vehicles parked in the public parking lot adjacent to the Avon Post Office. 39 C.F.R. § 232.1(*l*).

5.   USPS regulations prohibit individuals, including the Bonidys and NAGR's members, from carrying a functional firearm, openly or concealed, onto any real property under the charge and control of the USPS, including inside the Avon Post Office. 39 C.F.R. § 232.1(*l*).

6.   Violation of 39 C.F.R. § 232.1(*l*) is punishable by fine, imprisonment, or both. 39 C.F.R. § 232.1(p)(2).

7.   The Bonidys live in rural Colorado and they do not have home mail service.

8.   The local Post Office—at 111 West Beaver Creek Boulevard in Avon, Colorado—provides the Bonidys and their neighbors with post office boxes at no charge.

9.   Security personnel do not electronically screen persons entering the Avon Post Office to determine whether persons are carrying firearms, or weapons of any kind.

10.   Security personnel do not restrict access to the Avon Post Office to only those persons who have been screened and determined to be unarmed.

11.   There is a public parking lot adjacent to the Avon Post Office; the parking lot is located on real property under the charge and control of the USPS.

12.   There are signs on portions of West Beaver Creek Boulevard that state: "Emergency Snow Route. No Parking If Over Two Inches."

13.   On July 22, 2010, the Bonidys, through counsel, contacted the USPS to inquire as to whether they would be subject to prosecution pursuant to 39 C.F.R. § 232.1(*l*) if they carried a firearm on USPS property or stored a firearm in their cars when they parked on USPS property when picking up their mail.

14.   On August 3, 2010, Senior Vice President and General Counsel Mary Anne Gibbons responded, on behalf of then-Postmaster General John Potter, to the Bonidys' July 22, 2010, letter. Ms. Gibbons stated, "the regulations governing Conduct on Postal Property prevent

the Bonidys from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service. . . . There are limited exceptions to this policy that would not apply here."

5.  **COMPUTATION OF DAMAGES**

Plaintiffs do not seek monetary damages. Plaintiffs seek a declaration that 39 C.F.R. § 232.1(*l*) deprives Plaintiffs of the right to keep and bear arms for self-defense guaranteed by the Second Amendment, by prohibiting possession of functional firearms on any real property under the charge and control of the USPS, and a permanent injunction against enforcement 39 C.F.R. § 232.1(*l*). Plaintiffs also request this Court award their costs, attorneys' fees, and other expenses in accordance with law.

6.  **REPORT OF PRE-CONFERENCE DISCOVERY & MEETING UNDER FED R. CIV. P. 26(f)**

a.  Date of Rule 26(f) meeting.

January 4, 2012.

b.  Names of each participant and party he/she represented.

James M. Manley, Esq.
Mountain States Legal Foundation

Attorney for Debbie Bonidy, Tab Bonidy, and National Association For Gun Rights

Lesley R. Farby, Esq.
United States Department of Justice

Attorney for United States Postal Service, Patrick Donahoe, Postmaster General, and Steve Ruehle, Postmaster, Avon, Colorado

c.  Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

None.

10

d.  Statement as to when Rule 26(a)(1) disclosures were made or will be made.

The parties exchanged disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on January 13, 2012.

e.  Statement concerning any agreements to conduct informal discovery, including joint interviews with potential witnesses, exchanges of documents, and joint meetings with clients to discuss settlement. If there is agreement to conduct joint interviews with potential witnesses, list the names of such witnesses and a date and time for the interview which have been agreed to by the witness, all counsel, and all *pro se* parties.

The parties do not anticipate any informal discovery, but would endeavor to accommodate any such requests by the opposing side.

f.  Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form. In those cases, the parties must indicate what steps they have taken or will take to (i) preserve electronically stored information; (ii) facilitate discovery or electronically stored information; (iii) limit associated discovery costs and delay; and (iv) avoid discovery disputes relating to electronic discovery.

Describe any agreements the parties have reached for asserting claims of privilege or of protection as trial-preparation materials after production of computer-generated records.

The parties do not anticipate that their claims or defense will involve extensive discovery of electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

7.  **CASE PLAN AND SCHEDULE**

a.  **Deadline for Joinder of Parties and Amendment of Pleadings:** February 13, 2012.

b.  **Discovery Cut-Off:** June 25, 2012, for fact discovery; August 27, 2012, for expert discovery.

**c.** **Dispositive Motion Deadline:**

Defendants shall file and serve a motion for summary judgment, if at all, no later than September 28, 2012. Plaintiffs shall file and serve a cross-motion for summary judgment and response to Defendants' motion, if at all, within thirty days after September 28, 2012, or service of Defendants' motion, whichever is earlier. Defendants shall file and serve a response/reply, if at all, within thirty days after service of Plaintiffs' cross-motion/response. Plaintiffs shall file and serve a reply, if at all, within fifteen days after service of Defendants' response/reply.

**d.** **Expert Witness Disclosures:**

(1) State anticipated fields of expert testimony, if any.

The parties do not anticipate the need for expert testimony.

(2) State any limitations proposed on the use or number of expert witnesses.

None.

(3) The party bearing the burden of persuasion on the issues for which expert opinion is to be offered shall designate the expert and provide opposing counsel with all information specified in Fed.R.Civ.P. 26(a)(2) on or before May 27, 2012.

(4) The parties shall designate all contradicting experts and provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) on or before June 27, 2012.

(5) Any rebuttal opinions will be exchanged on or before July 27, 2012.

(6) Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the rule will be allowed by stipulation of the parties unless the stipulation is approved by the court.

e.  **Deposition Schedule:**

| Name of Deponent | Date of Deposition | Time of Deposition | Expected Length of Deposition |
|---|---|---|---|
| Debbie Bonidy | March 2012 | TBD | 7 hrs |
| Tab Bonidy | March 2012 | TBD | 7 hrs |
| Steve Ruehle | March 2012 | TBD | 4 hrs |

f.  **Interrogatory Schedule:**

The parties will serve their first interrogatories on or before February 17, 2012, with responses due 30 days after service. Any interrogatories served subsequent to this date shall be served no later than 30 days prior to the discovery cut-off date.

g.  **Schedule for Request for Production of Documents:**

The parties will serve their first requests for production of documents on or before February 17, 2012, with responses due 30 days after service. Any requests for production served subsequent to this date shall be served no later than 30 days prior to the discovery cut-off date.

h.  **Discovery Limitations:**

(1). Any limits which any party wishes to propose on the number of depositions.

   Each side will take no more than five depositions.

(2). Any limits which any party wishes to propose on the length of depositions.

   The parties do not seek to modify the limitations imposed by Fed. R. Civ. P. 30.

(3). Modifications which any party proposes on the presumptive numbers of depositions or interrogatories contained in the federal rules.

   The parties do not seek to modify the limitations on interrogatories imposed by Fed. R. Civ. P. 33.

(4). Limitations which any party proposes on number of requests for production of documents and/or requests for admissions.

The parties agree to make no more than 15 requests for production of documents. The parties agree to make no more than 15 requests for admissions.

i.  **Other Planning or Discovery Orders:**

None.

**8.  OTHER SCHEDULING ISSUES**

a.  A statement of those discovery or scheduling issues, if any, on which counsel, after a good faith effort, were unable to reach an agreement.

None.

b.  Anticipated length of trial and whether trial is to the court or jury.

The parties do not anticipate that trial will be necessary. In the event trial is necessary, trial would be to the court and the parties anticipate trial would last no more then three days.

**9.  AMENDMENTS TO SCHEDULING ORDER**

The Scheduling Order may be altered or amended only upon a showing of *good cause*.

DATED this 26th day of January 2012.

BY THE COURT:

_____
Richard P. Matsch, Senior District Judge

SCHEDULING ORDER REVIEWED:

_____
James M. Manley
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
Tel: (303) 292-2021
Fax: (303) 292-1980
jmanley@mountainstateslegal.com
Attorney for Plaintiffs

_____
Lesley R. Farby
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.
Washington, D.C. 20530
Tel: (202) 514-3481
Fax: (202) 616-8479
lesley.farby@usdoj.gov
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of January 2012, I delivered the foregoing document to the Court and caused a true and accurate copy to be mailed by first-class mail to:

Lesley Farby
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7220
P.O. Box 883
Washington, DC 20044
Lesley.Farby@usdoj.gov

James M. Manley