**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02408-RPM

TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

       Plaintiffs,

   v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
MICHAEL KERVIN, Acting Postmaster, Avon, Colorado,

       Defendants.

---

**REPLY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION
FOR SUMMARY JUDGMENT**

---

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 2

I.      THE SECOND AMENDMENT PROTECTS THE RIGHT TO
        CARRY A FIREARM IN CASE OF CONFRONTATION. ....................... 2

II.     THE POSTAL PROPERTY AT ISSUE IS NOT "SENSITIVE." ............... 5

III.    THE USPS FIREARMS BAN IS A PARTICULARLY BROAD
        PROHIBITION ON THE RIGHT OF SELF-DEFENSE AND IS,
        THEREFORE, SUBJECT TO HEIGHTENED SCRUTINY....................... 8

IV.     AT A MINIMUM, THE USPS FIREARMS BAN IS SUBJECT TO
        INTERMEDIATE SCRUTINY.................................................................. 12

V.      BECAUSE THE USPS FIREARMS BAN IS NOT TAILORED TO
        ACHIEVE A COMPELLING GOVERNMENT INTEREST IT FAILS
        INTERMEDIATE SCRUTINY ................................................................. 15

CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469 (1989) ........................   15

*DiGiacinto v. Rector & Visitors of George Mason Univ.*,
704 S.E.2d 365 (Va. 2011) ....................................................................   7–9

*District of Columbia v. Heller*, 554 U.S. 570 (2008)............................................   passim

*Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008)........................................   13

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ..........................................   passim

*Frisby v. Schultz*, 487 U.S. 474 (1988) ...................................................   16

*GeorgiaCarry.Org  v. Georgia*, 764 F. Supp. 2d 1306 (M.D. Ga. 2011)................   10, 14

*Hall v. Garcia*, 2011 WL 995933 (N.D. Cal. Mar. 17, 2011)................................   7, 8, 10

*Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ............................   15

*Initiative and Referendum Institute v. U.S. Postal Service*,
417 F.3d 1299 (D.C. Cir. 2005).............................................................   11, 14, 19

*International Soc. for Krishna Consciousness, Inc. v. Lee*,
505 U.S. 672 (1992).............................................................................   13

*ISKCON Miami, Inc. v. Metropolitan Dade County*, 147 F.3d 1282 (11th Cir.
1998) .................................................................................................   13

*McDonald v. City of Chicago*, 561 U.S. ___, 130 S.Ct. 3020 (2010) .....................   5, 18

*McMorris v. Alioto*, 567 F.2d 897 (9th Cir. 1978) .................................................   11

*Moore v. Madigan*, 2012 WL 6156062 (7th Cir. 2012)........................................   2, 3, 8, 16

*Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011)....................................................   11, 12

*Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012)..................................................   11, 12

*United States v. Anderson*, 559 F.3d 348 (5th Cir. 2009) ......................................   4

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)..........................................3, 4, 14

*United States v. Dorosan*, No. 08-042 (E.D. La. July 7, 2008)................................6

*United States v. Dorosan*, 350 Fed. Appx. 874 (5th Cir. 2009) ..............................5, 6

*United States v. Frazier*, 314 Fed. Appx. 801 (6th Cir. 2008) ................................4

*United States v. Kokinda*, 497 U.S. 720 (1990)........................................................12–14

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ......................................14, 15

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011) .................................passim

*United States v. McCane*, 573 F.3d 1037 (10th Cir. 2009)......................................4

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)............................................passim

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010).............................................14

*United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010) .......................................4

*United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008) ......................4

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010) ........................................3–5, 14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)...............................................15

*Warden v. Nickels*, 697 F. Supp. 2d 1221 (W.D. Wash. 2010)...............................7

*Wood v. Georgia*, 370 U.S. 375 (1962) ...................................................................11

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II..................................................................................................passim

## STATUTES

18 U.S.C. § 922 .........................................................................................................4, 15

18 U.S.C. § 930 .........................................................................................................11

## <u>RULES AND REGULATIONS</u>

5TH CIR. R. 47.5.4 .............................................................................................. 6

39 C.F.R. § 232.1 ............................................................................................... passim


## <u>OTHER AUTHORITIES</u>

Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443 (2009) .................................................................................................. 13

Plaintiffs Tab Bonidy and the National Association for Gun Rights, by and through their undersigned attorney, hereby reply to Defendants' Opposition to Plaintiffs' Cross-Motion for Summary Judgment (Doc. 34) (hereinafter "Defs.' Opp'n").

## INTRODUCTION

Defendants' opposition to Plaintiffs' Cross-Motion for Summary Judgment seeks to carve numerous and deep exceptions into the Second Amendment in an attempt to avoid confronting the fact that the United States Postal Service ("USPS") firearms ban, 39 C.F.R. § 232.1(*l*), is a broadscale prohibition on constitutionally protected conduct, that is not tailored to any legitimate government purpose. Defendants set up a straw man argument regarding the scope of the Second Amendment, belabor the failed argument that this case has already been decided by the Fifth Circuit, evade the full burden of the USPS ban, present a self-refuting argument about the appropriate standard of scrutiny, and blame postal employees for Defendants' inability to craft a tailored firearms regulation for postal property. Ultimately, Defendants' arguments are unavailing and this Court must confront the central issues raised by Plaintiffs' claims: Whether the Second Amendment protects the right to self-defense in the Avon Post Office and in its adjacent public parking lot.

As previously demonstrated in Plaintiffs' Cross-Motion for Summary Judgment (Doc. 33) (hereinafter "Pls.' Cross-Mot.") and as further demonstrated herein, the constitutional text, history, and precedent show that the Second Amendment protects the right to bear arms in the Avon Post Office and in its adjacent public parking lot. Defendants have failed to prove that the USPS ban's indiscriminate application is tailored to serve the government's interest in crime prevention. Accordingly, Plaintiffs are entitled to summary judgment with respect to both of

their claims.  Specifically, Defendants have violated the Second Amendment by:  (1) prohibiting

Mr. Bonidy from possessing a functional firearm for self-defense in a private vehicle parked in

the public Avon Post Office parking lot; and (2) prohibiting Mr. Bonidy from carrying a

functional firearm for self-defense inside the Avon Post Office.

## ARGUMENT

### I.    THE SECOND AMENDMENT PROTECTS THE RIGHT TO CARRY A FIREARM IN CASE OF CONFRONTATION.

Defendants incorrectly argue that Plaintiffs' claims depend on a "near-limitless right to

bear arms for self-defense."  Defs.' Opp'n at 17.  On the contrary, Plaintiffs acknowledge that

the Second Amendment does not protect  "a right to keep and carry any weapon whatsoever in

any manner whatsoever and for whatever purpose."  *District of Columbia v. Heller*, 554 U.S.

570, 626 (2008).  However, the Second Amendment does plainly protect the "individual right to

possess and carry weapons in case of confrontation."  *Id*. at 592.  "To confine the right to be

armed to the home is to divorce the Second Amendment from the right of self-defense described

in *Heller* and *McDonald*."  *Moore v. Madigan*, 2012 WL 6156062, *3 (7th Cir. 2012).  As

previously demonstrated in detail, the historical record is replete with examples of courts striking

down bans on carrying firearms in public, including bans that applied inside government

buildings.  Pls.' Cross-Mot. at 15–22.  Courts as far back as the 17th century have protected the

right of law-abiding citizens to carry arms for peaceable purposes, including self-defense.  *Id*. at

17–19.  Moreover, the Supreme Court has noted approvingly that a number of 19th century state

court decisions hold that outright bans on possessing a weapon outside the home are

unconstitutional.  *Id*. at 19–22.

What limits might be imposed on the right to bear arms is a question the Court deliberately left open after *Heller*.  *See* 554 U.S at 635 ("But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than *Reynolds v. United States*, our first in-depth Free Exercise Clause case, left that area in a state of utter certainty."  (internal citation omitted)).  The Court pointed to certain "presumptively lawful" categories of regulation, *id.* at 626, 627 n.26, but the Court did not hold that these types of regulations are necessarily constitutional in all applications, nor did it elaborate further about the contours of these categories.  *See United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010) ("*Heller* referred to felon disarmament bans only as "presumptively lawful," which, by implication, means that there must exist the possibility that the ban could be unconstitutional in the face of an as-applied challenge."); *see also United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010) ("In fact, the phrase 'presumptively lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'") (quoting *Williams*, 616 F.3d at 692).  Rather, the Court left the task of clarifying various applications of the Second Amendment to future cases, such as this one.  *See United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) ("It is not clear in what places public authorities may ban firearms altogether without shouldering the burdens of litigation."); *Moore*, 2012 WL 6156062, at *8 ("[W]e need not speculate on the limits that Illinois may in the interest of public safety constitutionally impose on the carrying of guns in public; it is enough that the limits it has imposed go too far.").

Defendants rely on *Heller*'s "presumptively lawful" dicta as a talismanic guide to understanding the limits of the Second Amendment, but their literal approach is absurd and

*Heller* itself warns against reading too much into such dicta.  554 U.S. at 625 n.25 ("It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued.").  Consistent with the Supreme Court's warning, in case after case the courts of appeals have rejected Defendants' suggestion to merely rest on the *Heller* dicta.  *See Chester*, 628 F.3d at 679; *Williams*, 616 F.3d at 692; *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010).

Contrary to Defendants' suggestion, Defs.' Opp'n at 14, the Tenth Circuit has taken the same approach.  In *Reese*, 627 F.3d at 800, the court of appeals assumed that 18 U.S.C. § 922(g)(8), which criminalizes possession of firearms while subject to a domestic protection order, was "presumptively lawful" on its face, but nevertheless concluded that "there is little doubt that the challenged law . . . imposes a burden on conduct, i.e., Reese's possession of otherwise legal firearms, that generally falls within the scope of the right guaranteed by the Second Amendment."  *Id.* at 801.  The court therefore proceeded to analyze § 922(g)(8)'s constitutionality as applied to Reese.[1]  *Id.* at 800–05.

---

[1] Defendants suggest that *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), evinces a different approach, Defs.' Opp'n at 14 n.4, but the Tenth Circuit in that case simply relied on the reasoning of the Fifth Circuit in *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009).  *Anderson* upheld an 18 U.S.C. § 922(g)(1) conviction on the basis of existing circuit precedent left unchanged by *Heller*.  *Id*.  The Tenth Circuit took the same approach in *McCane*. 573 F.3d at 1047 (citing *Anderson*); *accord United States v. Vongxay*, 594 F.3d 1111, 1116 (9th Cir. 2010); *United States v. Frazier*, 314 Fed. Appx. 801, 807 (6th Cir. 2008); *United States v. Walters*, 2008 WL 2740398 (D.V.I. July 15, 2008).  There is no Tenth Circuit precedent—or published case in any other circuit—assessing the constitutionality of the USPS gun ban.  Accordingly, *McCane* is does not apply here.

Accordingly, even if the USPS ban could be labeled "presumptively lawful" within the

*Heller* dicta, Defendants would not be absolved of the burden of proving the constitutionality of

the USPS firearms ban as applied here. *Williams*, 616 F.3d at 692; *Reese*, 627 F.3d at 801. As

demonstrated herein and in Plaintiffs' Cross-Motion for Summary Judgment, there is no reason

to conclude that the USPS ban in lawful.

## II.     THE POSTAL PROPERTY AT ISSUE IS NOT "SENSITIVE."

Even Defendants appear to acknowledge that the *Heller* dicta is inapposite if the postal

property at issue is not "sensitive." Defs.' Opp'n at 17. Defendants argue that all "government

property serving a quintessential government function is a 'sensitive place,'" *id*. at 19, but

Defendants point to no case that has relied on government ownership alone to justify firearms

restrictions, let alone the sort of draconian restrictions imposed by the USPS ban. Indeed,

Defendants make no attempt to distinguish the Fourth Circuit's conclusion that the *Heller* dicta

does not exempt National Park Service lands from the protections of the Second Amendment.[2]

*Masciandaro*, 638 F.3d at 471. Defendants instead fall back on the Fifth Circuit's unpublished,

per curiam decision in *United States v. Dorosan*, 350 Fed. Appx. 874 (5th Cir. 2009), but their

attempt to apply *Dorosan* relies on nothing more than misdirection. Defs.' Opp'n at 17–18.

Defendants selectively quote *Dorosan* in order to remove qualifying language that narrows the

scope of the court's reasoning. Defendants emphasize "that the parking lot at issue in [*Dorosan*]

---

[2] In a brief footnote, Defendants meekly reprise their contention that postal property is the site of criminal activity, and therefore they are justified in eliminating the self-defense rights of patrons at the Avon Post Office. Defs.' Opp'n at 19 n.8. But Defendants never respond to the Supreme Court's logic that criminal activity tends to increase, not decrease, the need for effective self-defense. *See McDonald v. City of Chicago*, 561 U.S. ___, 130 S. Ct. 3020, 3049 (2010) (noting the importance of the Second Amendment in "high-crime areas.").

was used ""'as a place of regular government business.'" Defs.' Opp'n at 17 (quoting *Dorosan*,

350 Fed. Appx. at 875). But Defendants conveniently leave out the opinion's preceding

sentence, which explains that the "regular government business" being conducted was that "the

Postal Service used the parking lot for loading mail and staging its mail trucks." *Dorosan*, 350

Fed. Appx. at 875. As Defendants must concede, loading mail and staging mail trucks is an

activity of an entirely different character from the simple act of parking that occurs in the public

parking lot adjacent to the Avon Post Office. *See* Postmaster Ruehle Dep. at 59–63 (attached to

Pls.' Cross-Mot. as Exhibit 1). Indeed, the district court in *Dorosan* concluded as much. *United*

*States v. Dorosan*, No. 08-042, Written Reasons for Conviction and Sentence at 9 (E.D. La. July

7, 2008). Accordingly, whatever its persuasive value, *Dorosan* has no application to the facts of

this case because Mr. Bonidy claims no right to access the *employee* parking lot, let alone the

right to carry there.[3]

Defendants' arguments depend on extending *Dorosan* to all postal property, and by

implication all government property. Defendants assert that they do not argue that all

government property should be free from the Second Amendment, Defs.' Opp'n at 18–19, but

they provide no limiting principle by which their preferred interpretation of the Constitution does

not create a broad-based nullification of the Second Amendment. At the very least, Defendants'

interpretation would create Second Amendment-free zones anywhere a "quintessential

government function" is carried out, such as all locations where the mail is collected and

---

[3] As an unpublished decision, *Dorosan* is of no precedential value, even in the Fifth Circuit. *See*
5TH CIR. R. 47.5.4 ("Unpublished opinions issued on or after January 1, 1996, are not precedent
. . . .").

delivered—including mail receptacles in postal parking lots and at other locations throughout the

community, and, perhaps, around mail trucks driven throughout the community. *See*

Defendants' Motion for Summary Judgment (Doc. 31) (hereinafter "Defs.' Mot.") at 10 (¶ 17),

15 (¶ 37). Defendants may not intend this result, but it is the natural consequence of their

argument that the mere fact that postal property is owned by the government and used for

government functions is enough to qualify the Avon Post Office as a "sensitive place" outside

the protection of the Constitution.

Courts that have confronted other firearms regulations on government property have

avoided the sweeping implications of Defendants' arguments by looking to factors other than

government ownership to establish the character of property. For example, courts have noted

that the justification for regulating firearms on school property is the predominate presence of

children. *Hall v. Garcia*, 2011 WL 995933, *4 (N.D. Cal. Mar. 17, 2011) (noting "the presence

of large numbers of children" at or near schools); *DiGiacinto v. Rector & Visitors of George

Mason Univ.*, 704 S.E.2d 365, 367 (Va. 2011) ("Approximately 50,000 elementary and high

school students attend summer camps at the University. . . . [B]oth the libraries and the Johnson

Center . . . are regularly frequented by children ages two to five years old."); *see also Warden v.

Nickels*, 697 F. Supp. 2d 1221, 1230 (W.D. Wash. 2010) ("The Park Rule's findings cite the fact

that in 2008 over 108,000 children and youth visited city-owned wading pools and over 59,000

youth events were scheduled at sports fields.").[4] Conversely, children do not congregate at the

---

[4] Moreover, those cases have noted that the regulations do not impose a total ban on possession
of firearms, but are instead "narrowly tailored . . . to include only those [areas] where children
and youth predominantly recreate," *Warden*, 697 F. Supp. 2d at 1227, and include exceptions for

Avon Post Office or the adjacent public postal parking lot.[5] Defendants ignore the careful reasoning of these decisions and instead argue for a blanket rule that would prevent the Constitution from having full effect outside the home, essentially "divorc[ing] the Second Amendment from the right of self-defense described in *Heller* and *McDonald*." *Moore*, 2012 WL 6156062, at *3. Accordingly, Defendants' argument that the Avon Post Office is a "sensitive place" outside the protection of the Constitution merely because postal property is owned by the government and used for government functions finds no support in the case law.

## III. THE USPS FIREARMS BAN IS A PARTICULARLY BROAD PROHIBITION ON THE RIGHT OF SELF-DEFENSE AND IS, THEREFORE, SUBJECT TO HEIGHTENED SCRUTINY.

The USPS firearms ban effects a broad prohibition on law-abiding citizens' right to keep and bear arms for self-defense. Defendants assert that any burden on Second Amendment rights is "minimal," and therefore neither intermediate nor strict scrutiny should apply, Defs.' Opp'n at 20, but that assertion ignores the fact that the USPS ban renders the right to bear arms nugatory on all postal property. At best, Defendant's argument that the ban imposes a "minimal" burden on Plaintiffs' constitutional rights is merely a rewording of their argument that the Second Amendment does not apply on postal property. *See* Defs.' Opp'n at 17. Defendants have raised

---

licensed concealed carry and/or possession of a firearm in a vehicle. *Hall*, 2011 WL 995933, at *1; *DiGiacinto*, 704 S.E.2d at 370.

[5] Defendants concede that Post Offices are "generally open to the public," Defs.' Opp'n at 19–20 n.9, but attempt to downplay the stark differences between public schools and the Avon Post Office. However, as Defendants concede, the public is not free to come and go as they please, 24 hours a day, from public schools. *Id*. Conversely, access to the lobby area of the Avon Post Office is unconstrained. Pls.' Cross-Mot., Statement of Undisputed Facts ¶ 10. The postal parking lot adjacent to the Avon Post Office is similarly unsecured and open to the public. *Id*. ¶¶ 8, 21.

no serious arguments against application of heightened scrutiny to the outright prohibition on

Second Amendment rights imposed by the USPS ban.

The USPS ban imposes two direct and substantial burdens on the Second Amendment

rights of Plaintiffs, and one incidental, but still substantial burden.  First, the USPS ban totally

prohibits possession of firearms inside the Avon Post Office, including the unsecured lobby area

that is open 24 hours a day.  Pls.' Cross-Mot., Statement of Undisputed Facts ¶¶ 10, 31.  Second,

the ban totally prohibits storage of a firearm in a vehicle in the Avon Post Office parking lot,

even a firearm unloaded and locked in a glove compartment or a trunk.  *Id*. ¶ 30.  Third, because

the ban extends to firearms stored in vehicles in the Avon Post Office parking lot, the burden on

the Second Amendment is not just on postal property, but everywhere a law-abiding individual

travels before and after visiting postal property.  Thus, in three distinct ways, the USPS ban

prohibits core conduct protected by the Second Amendment:  lawful possession of firearms for

self-defense.  Accordingly, the USPS ban is subject to heightened scrutiny.  *See Ezell v. City of

Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) ("[A] severe burden on the core Second Amendment

right of armed self-defense will require an extremely strong public-interest justification and a

close fit between the government's means and its end.").

That the USPS ban is particularly broad is illustrated by comparison to other firearms

regulations on government property, which "leave[] largely intact the right to 'possess and carry

weapons in case of confrontation.'"  *Masciandaro*, 638 F.3d at 474 (quoting *Heller*, 554 U.S. at

592) ("[B]y permitting [National Park] patrons to carry unloaded firearms within their vehicles,

[36 C.F.R.] § 2.4(b) leaves largely intact the right to 'possess and carry weapons in case of

confrontation.'"); *DiGiacinto*, 704 S.E.2d at 370 ("Individuals may still carry or possess

weapons on the open grounds of GMU . . . ."); *GeorgiaCarry.Org  v. Georgia*, 764 F. Supp. 2d

1306, 1320 (M.D. Ga. 2011) ("[T]he statute would allow [the plaintiff CEO of the Tabernacle] to

keep a firearm in his office if he obtained permission from security or management personnel of

the Tabernacle and kept it secured or stored as directed."), *aff'd*, 687 F.3d 1244 (11th Cir. 2012);

*see also Hall*, 2011 WL 995933, at *1.

While attempting to downplay the burden imposed by the USPS ban, Defendants again

reprise their failed argument that *Dorosan* controls the outcome of this case.  Defs.' Opp'n at 21.

They suggest that the *Dorosan* court's observation that Dorosan could have exercised the right to

keep a firearm in his car if he had chosen to park offsite is applicable here.  *Id*.  Factually, this

accommodation rings hollow here, because Plaintiffs have proven that the public USPS parking

lot adjacent to the Avon Post Office is the only public parking consistently available to postal

patrons.[6]  Debbie Bonidy Dep. at 78–79 (attached to Pls.' Cross-Mot. as Exhibit 2); Tab Bonidy

Dep. at 54 (attached to Pls.' Cross-Mot. as Exhibit 3).  Moreover, this accommodation does

nothing to address the claims for relief here:  the right to posses firearms for self-defense *on*

postal property.

Plaintiffs recognize that the Postal Service need not provide parking for its patrons.  *See*

Defs.' Opp'n at 22.  But when the Postal Service does so, as it has at the Avon Post Office, its

---

[6] Defendants offer the Declaration of Gary Padilla, Defs.' Opp'n, Ex. A-17, in an attempt to rebut this conclusion, but the Padilla Declaration simply reinforces the fact that parking is severely limited around the Avon Post Office, which means that carving a huge Second Amendment-free zone around the Avon Post Office imposes a substantial burden on postal patrons like Mr. Bonidy.  Moreover, the Padilla Declaration illustrates that other public parking available to postal patrons who decline to give up their Second Amendment rights is at least half a mile from the Avon Post Office.  *Id*.

regulatory authority is constrained by the Constitution.  *See Initiative and Referendum Institute v. U.S. Postal Service*, 417 F.3d 1299, 1306 (D.C. Cir. 2005) (holding unconstitutional USPS ban on the solicitation of signatures on postal property because it was not narrowly tailored.).  That the Postal Service has chosen to open its property to the public does not give it a free pass to avoid Constitutional scrutiny of its regulations.  Thus, Defendants state the obvious when they posit that 18 U.S.C. § 930(e)(1), which prohibits firearms in federal courthouses, burdens Second Amendment rights.  Defs.' Opp'n at 22–23.  That burden must be justified with respect to the "standards of scrutiny that [the Court has] applied to enumerated constitutional rights."  *Heller*, 554 U.S. at 628.  In the case of federal courthouses, it is a burden easily meet, not because the government owns courthouses, but because of the unique character of those buildings.  *See Wood v. Georgia*, 370 U.S. 375, 383 (1962) ("We start with the premise that the right of courts to conduct their business in an untrammeled way lies at the foundation of our system of government and that courts necessarily must possess the means of punishing for contempt when conduct tends directly to prevent the discharge of their functions."); *McMorris v. Alioto*, 567 F.2d 897, 899 (9th Cir. 1978) (taking judicial notice that "threats of violent acts directed at courthouses have given rise to an urgent need for protective measures.").  Defendants have done nothing to show that the Avon Post Office shares the characteristics of a federal courthouse, instead resting their defense on the mere fact of government ownership.  Defs.' Opp'n at 19.

Defendants look to the Ninth Circuit's decision in *Nordyke v. King*, 644 F.3d 776 (9th Cir. 2011), *superseded by* 681 F.3d 1041 (9th Cir. 2012), for support of the proposition that the burden imposed by the USPS ban is slight.  Defs.' Opp'n at 21.  That case, however, is inapposite because it was not concerned with the self-defense interests at the core of the Second

Amendment—and Plaintiffs claims here—but rather involved conditions imposed on selling guns on country property. *Nordyke*, 681 F.3d at 1044 (approving requirement that firearms sold on county property be secured to prevent unauthorized use). The Ninth Circuit reasoned that "when deciding whether a restriction on gun sales substantially burdens Second Amendment rights, we should ask whether the restriction leaves law-abiding citizens with reasonable alternative means for obtaining firearms sufficient for self-defense purposes." *Nordyke*, 644 F.3d at 787. The USPS ban does not leave open "reasonable alternative means" to exercise the rights protected by the Second Amendment, it completely obliterates those rights whenever an individual crosses onto postal property.

Thus, rather than being "at the opposite end of the spectrum from the complete handgun prohibition at issue in *Heller*," Defs.' Opp'n at 21, the USPS ban is a similarly burdensome denial of the right to self-defense. Heightened scrutiny therefore applies to this case.

## IV.   AT A MINIMUM, THE USPS FIREARMS BAN IS SUBJECT TO INTERMEDIATE SCRUTINY.

Defendants rely on *United States v. Kokinda*, 497 U.S. 720, 725 (1990), for the proposition that the USPS ban is subject only to reasonableness review. Their reliance on *Kokinda*, and their conclusion that reasonableness review applies, is flawed in at least three ways: (1) as Defendants helpfully point out, *Kokinda*'s forum analysis framework is of little utility in the Second Amendment context, because almost no property is dedicated to Second Amendment activity; (2) even if forum analysis applied, Defendants' draconian ban would be unconstitutional; (3) the majority of courts to consider Second Amendment challenges post-*Heller* have applied heightened scrutiny, *i.e.*, at least intermediate scrutiny.

Defendants place heavy reliance on *Kokinda*, and to a lesser extent *International Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 675 (1992), for the proposition that the USPS ban is subject only to reasonableness review, because the ban targets government property.[7] Defs.' Opp'n at 24.  These cases, however, employ a forum analysis framework that is entirely inappropriate in the Second Amendment context.  Forum analysis—asking first whether government property has been dedicated to First Amendment activity, and, if not, whether the given regulation is reasonable—makes no sense in the present context because almost no government property is dedicated to Second Amendment activity.  Indeed, the very nature of the interest in personal security protected by the Second Amendment demands that the amendment apply where security is necessary, not just in certain places dedicated to self-defense.  *See* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1515 (2009) ("[s]ome rights, such as free speech, may be only slightly burdened by laws that bar speech in some places but allow it in many other places.  But self-defense has to take place wherever the person happens to be."). The very idea of a "Second Amendment zone" is absurd.  *Cf. ISKCON Miami, Inc. v. Metropolitan Dade County*, 147 F.3d 1282, 1290 (11th Cir. 1998) ("[P]ersons wishing to distribute literature are limited to eight areas in the airport designated by the Airport Director as 'First Amendment zones.'").  Defendants concede this point in a footnote, Defs.' Opp'n at 25

---

[7] Defendants' also cite *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008), but that case involves the government's authority over its own employees.  In contrast to the regulatory authority at issue here, the Supreme Court has "often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." *Id*. at 599.  Thus, Defendants' reliance on *Engquist* is severely misplaced.

n.12, and effectively abandon their argument that *Kokinda* serves to save the USPS ban from heightened scrutiny.

Nevertheless, even if reasonableness review applied, courts have acknowledged that an outright ban on constitutional activity on postal property—like that imposed by the USPS firearms ban—would be unconstitutional. *Initiative and Referendum Institute*, 417 F.3d at 1315 ("It is clear that a broadscale prohibition against asking postal patrons to sign petitions . . . is unconstitutional even if all postal properties are nonpublic forums."). Likewise, Defendants may not impose a broadscale prohibition on self-defense.

Finally, Defendants concede that reasonableness review would be a peculiar standard to apply here, acknowledging that "courts addressing restrictions on the possession of firearms outside the home such as the USPS regulation have almost uniformly [applied] intermediate scrutiny." Defs.' Opp'n at 26; *see Masciandaro*, 638 F.3d at 474; *Chester*, 628 F.3d at 679; *Williams*, 616 F.3d at 692; *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 97 (3d Cir. 2010); *GeorgiaCarry.Org*, 764 F. Supp. 2d at 1319 ("In the absence of clearer guidance as to what the Supreme Court meant to capture within the net of 'sensitive places,' however, the Court concludes that the safer approach for now is . . . applying intermediate scrutiny."); *but see Ezell*, 651 F.3d at 708 ("All this suggests that a more rigorous showing than that applied in *Skoien* should be required, if not quite 'strict scrutiny.'"). Indeed, the Tenth Circuit has also acknowledged that it is required to apply at least intermediate scrutiny. *Reese*, 627 F.3d at 801.

Thus, Defendants offer no reason why this Court should not apply at least intermediate scrutiny to the USPS ban.[8]

## V.   BECAUSE THE USPS FIREARMS BAN IS NOT TAILORED TO ACHIEVE A COMPELLING GOVERNMENT INTEREST IT FAILS INTERMEDIATE SCRUTINY.

The fundamental flaw with the USPS firearms ban also pervades Defendants' defense of the ban:  Conflating gun possession and criminal intent.  In order to survive even intermediate scrutiny, the USPS ban must not "burden substantially more [conduct] than is necessary to further the government's legitimate interests."  *Ward v. Rock Against Racism*, 491 U.S. 781, 798–800 (1989); *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) ("[T]he District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit 'that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.'" (quoting *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989))).  Mr. Bonidy's possession of a firearm in

---

[8] Defendants do not seriously dispute that intermediate scrutiny is the *minimum* standard, and that more rigorous scrutiny should apply when "a severe burden on the core Second Amendment right of armed self-defense" is present.  *Ezel*, 651 F.3d at 708; *see* Pls.' Cross-Mot. at 33–40.  In the cases applying just intermediate scrutiny, courts have confronted less-than-total firearms prohibitions, *see, e.g., Masciandaro*, 638 F.3d at 474, or regulations tailored to prevent criminal activity, *see, e.g., Reese*, 627 F.3d at 801.  The USPS ban is much more severe because it is not limited in either of these dimensions.  Defendants point to *Marzzarella*, 614 F.3d at 85, as a case not fitting in either category, Defs.' Opp'n at 27, but as the Third Circuit noted, 18 U.S.C. § 922(k)'s prohibition on possession of firearms with obliterated serial numbers is only focused on criminal activity because, no "lawful purpose [is] served by obliterating a serial number on a firearm.  Because a firearm with a serial number is equally effective as a firearm without one, there would appear to be no compelling reason why a law-abiding citizen would prefer an unmarked firearm.  These weapons would then have value primarily for persons seeking to use them for illicit purposes."  *Marzzarella*, 614 F.3d at 95.  Accordingly, Defendants fail to explain why a standard more rigorous than intermediate scrutiny should not apply here.

the public area of the Avon Post Office where he picks up his mail or in a private vehicle parked

in a public parking lot is not "an appropriately targeted evil," *Frisby v. Schultz*, 487 U.S. 474,

485 (1988), it is a constitutionally protected fundamental right.[9]  The USPS ban is not narrowly

tailored, because it targets all gun possession on all postal property indiscriminately.  *See* Pls.'

Cross-Mot. at 42–48.

Defendants acknowledge that the USPS ban indiscriminately targets all firearms

possession on all postal property, but their only justification for their broadscale prohibition is to

complain that it is simply too hard to distinguish between lawful and unlawful possession of

firearms.  Defendants assert that "it is impossible for Postal Service employees to determine

quickly in most situations whether a particular individual is bringing a firearm onto Postal

Service property with criminal intent."  Defs.' Opp'n at 31.  Defendants' objection is unfounded.

As the Seventh Circuit recently noted, preventing all carrying of firearms in order to catch

criminals who are carrying "is a weak argument. . . .  Often the officer will have no suspicion

(the gun is concealed, after all)."  *Moore*, 2012 WL 6156062, at*4.  And, even if concealed carry

---

[9] Defendants quibble with the statistical literature showing positive or nil effects on public safety
from lawful concealed carry.  Defs.' Opp'n at 29–30; *see* Pls.' Cross-Mot. at 45–46.  Here,
again, Defendants conflate studies focused on criminal use of weapons, Craig Perkins, *National
Crime Victimization Survey, 1993-2001: Weapon Use and Violent Crime*, Bureau of Justice
Statistics Special Report (Sept. 2003), with studies examining lawful concealed carry, Charles C.
Branas et al., *Investigating the Link Between Gun Possession and Gun Assault*, AM. J. OF
PUBLIC HEALTH 99:11 (2009).  But in any event, as the Seventh Circuit noted after
conducting an exhaustive review of the relevant literature, "the empirical literature on the effects
of allowing the carriage of guns in public fails to establish a pragmatic defense of the Illinois law
[banning concealed carry]. . . .  If the mere possibility that allowing guns to be carried in public
would increase the crime or death rates sufficed to justify a ban, *Heller* would have been decided
the other way, for that possibility was as great in the District of Columbia as it is in Illinois."
*Moore*, 2012 WL 6156062, at *6.  The Seventh Circuit's observations apply with equal force

is banned, "[m]any criminals would continue to conceal the guns they carried, . . . so the police would have the same opportunities (limited as they are, if the concealment is effective and the concealer does not behave suspiciously) that they do today to take concealed guns off the street." *Id*.

There are at least three additional reasons to reject Defendants' argument here:  (1) postal employees are trained to distinguish between threatening and non-threating weapons carried into the Avon Post Office; (2) Defendants have developed an extensive procedure for identifying potential threats; and (3) it is not necessary for postal employees to ferret out criminals possessing firearms on postal property because the criminals identify themselves by committing other crimes.

Defendants question postal employees' threat assessment abilities, but this concern is directly contradicted by Postmaster Ruehle's testimony that employees of the Avon Post Office are trained to assess whether they feel a threat is present before calling law enforcement when other weapons, such as knives, are carried onto postal property.  Postmaster Ruehle Dep. at 40–41.  There is simply no reason this same common sense approach does not apply to firearms.

Additionally, Defendants have developed an extensive procedure for identifying potential threats, which incorporates dozens of behavioral and psychological factors they deem probative of threat assessment.  Defs.' Mot. at 1; Ex. Milke-11 to Defs.' Mot. at Ex. 2-6a through 2-6c and Ex. 3-2.2.  Postal employees therefore have numerous tools to use to identify when a person—armed or not—is a potential criminal threat.  Defendants' concern that it is "impossible"

---

here to silence Defendants' argument that banning all carrying of firearms on postal property is statistically tailored to achieving crime reduction.

for postal employees to assess criminal intent is flatly contradicted by Defendants' own training materials.[10]

Defendants also ignore the fact that nationwide, in the past five years, in all but three "incidents involving the unlawful possession of firearms or other dangerous and deadly weapons while on Postal Service property [the suspect] was arrested and/or charged pursuant to another provision of law, or . . . arrest and/or charge did not result." Defendants' Objections And Responses To Plaintiffs' First Set Of Interrogatories at 6 (attached to Pls.' Cross-Mot. as Exhibit 5.). Thus, it has generally proved unnecessary for postal employees to ferret out criminals possessing firearms on postal property because the criminals identify themselves by committing other crimes.

Ultimately, Defendants never come to terms with the fact that the Court in *Heller* and *McDonald* rejected the very argument that they advance here: that it ought to be constitutional to ban all firearms in order to reduce crime. *McDonald*, 130 S. Ct. at 3056–57 (Scalia, J., concurring); *Heller*, 554 U.S. at 636; *see* Pls.' Cross-Mot. at 46–48. The Second Amendment does not prevent Defendants from regulating firearm possession on postal property, "but the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636. One of the choices removed is "a broadscale prohibition against" lawful possession of a firearm for self-defense, especially where the government provides no security

---

[10] Defendants also make the peculiar argument that postal employees are not law enforcement officers and therefore do not have access to law enforcement resources with which to validate gun permits. Defs.' Opp'n at 32. The implication being, apparently, that the lack of law enforcement presence at the Avon Post Office justifies prohibiting self-defense there. This is of the same character as Defendants' argument that increased criminal activity justifies banning self-defense. *See supra*, n.2. By abdicating their duty to protect postal patrons, Defendants increase the need for effective self-defense and diminish any possible justification for a firearms ban.

measures to protect the interest in personal security that is at the heart of the Second

Amendment. *Initiative and Referendum Institute*, 417 F.3d at 1315. Defendants' application of

the USPS firearms ban at the Avon Post Office denies law-abiding postal customers the ability to

protect themselves and renders nugatory the interest in personal security protected by the Second

Amendment. Accordingly, the USPS firearms ban is an unconstitutional assault "on the core

Second Amendment right of armed self-defense." *Ezel*, 651 F.3d at 708.

## CONCLUSION

For the foregoing reasons, and those explained in Plaintiffs' Cross-Motion for Summary

Judgment, summary judgment should be entered for Plaintiffs and against Defendants with

respect to both of Plaintiffs' claims. Specifically, Defendants have violated the Second

Amendment by: (1) prohibiting Mr. Bonidy from possessing a functional firearm for self-

defense in a private vehicle parked in the public Avon Post Office parking lot; and (2)

prohibiting Mr. Bonidy from carrying a functional firearm for self-defense inside the Avon Post

Office.


DATED this 27th day of December 2012.


Respectfully submitted,


/s/ James M. Manley
James M. Manley, Esq.
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, Colorado 80227
(303) 292-2021
(303) 292-1980 (facsimile)

19

jmanley@mountainstateslegal.com

Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 27th day of December 2012, I filed the foregoing document electronically through the CM/ECF system, which caused the following to be served by electronic means:

Leslie Farby
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW, Room 7220
P.O. Box 883
Washington, DC 20044
Lesley.Farby@usdoj.gov


          /s/ James M. Manley
          James M. Manley