IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 10-cv-02408-RPM

TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

    Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
MICHAEL KERVIN, Acting Postmaster, Avon, Colorado,

    Defendants.[1]

_____

**MEMORANDUM OPINION AND ORDER**
_____

The United States Postal Service ("USPS") was established to "provide prompt, reliable, and efficient services to patrons in all areas," 39 U.S.C. § 101(a), and, to that end, "establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will . . . have ready access to essential postal services," *id.* § 403(b). Congress empowered the United States Postmaster General to prescribe regulations necessary for the protection of property owned or occupied by the USPS and persons on the property, and to include reasonable penalties for violations thereof. 18 U.S.C. § 3061(c)(4)(A-B).

---

[1] The National Association for Gun Rights ("NAGR") has joined Mr. Bonidy, an NAGR member himself, in its representative capacity. The USPS officials are sued in their official capacities.

1

In 1972, the Postal Service enacted 39 C.F.R. § 232.1(*l*) ("USPS Regulation"), which provides:

> Weapons and explosives. Notwithstanding the provisions of any other law, rule or regulation, no person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.

A violation of this regulation may result in a fine, imprisonment up to thirty days, or both. *Id.* § 232.1(p)(2).[2]

Tab Bonidy brought this civil action for declaratory and injunctive relief claiming that applying the USPS Regulation to him, by prohibiting him from carrying a concealed handgun when he picks up and deposits mail at the Post Office in Avon, Colorado, infringes upon his freedom to bear arms guaranteed by the Second Amendment to the United States Constitution. After full discovery, both Plaintiffs and Defendants have moved for summary judgment. The relevant facts are not in dispute.

The Town of Avon, population 6,365, is high in the Rocky Mountains of Colorado. The Avon Post Office is a freestanding building, with a 57-space parking lot reserved for Post Office patrons, and an employee parking lot behind the building. There are five public parking spaces in front of the Post Office on West Beaver Creek Boulevard. Parking on that street is prohibited when there are more than two inches of snow on the ground.

The Avon Post Office does not provide delivery services to the public. It provides free post office boxes in an area of the Post Office that is open to the public at all times. The mail service counter opens and closes on a regular schedule. There are no security personnel

---

[2] The USPS Regulation was enacted along with a number of other prohibitions on conduct on Postal Service grounds, 37 Fed. Reg. 24346 (Nov. 16, 1972), including littering and damaging property (39 C.F.R. § 232.1(c)); causing disturbances (*id.* § 232.1(e)); smoking, drinking alcohol, and using controlled substances (*id.* § 232.1(g)); gambling (*id.* § 232.1(f)); and bringing non-service dogs and animals onto postal premises (*id.* § 232.1(j)).

2

or devices on the site. Access to the area behind the mail service counter, the mail sorting area, and the employee parking lot is restricted. Approximately 500 window customers are served at the Post Office each day it is in operation.

The parking lot adjacent to the Avon postal building is openly available to the public. There is a sign at the front of the lot reading: "US POSTAL PROPERTY / 30 MINUTE PARKING / VIOLATORS WILL BE TOWED AT OWNERS EXPENSE." That time limit is not enforced. There are two mailboxes in the lot for customers to drop off outgoing mail while driving through.

Tab Bonidy lives in a rural area and drives several miles from his home to the Avon Post Office to pick up mail from his free PO box in the open area of the building. He routinely carries a concealed handgun, as authorized by the Sheriff of Eagle County under Colorado's Concealed Carry Act, C.R.S. § 18-12-201 *et seq*. In July 2010, counsel for Mr. Bonidy sent a written inquiry asking if he would be prosecuted under the USPS Regulation if he carried his firearm into the Post Office or stored it in his vehicle in the public parking lot when picking up his mail. Mary Ann Gibbons, General Counsel for the USPS, responded in the affirmative, stating that that "the regulations governing Conduct on Postal Property prevent [Mr. Bonidy] from carrying firearms, openly or concealed, onto any real property under the charge and control of the Postal Service. . . . There are limited exceptions to this policy that would not apply here." [Doc. 33 at 9.]

Because of the firearms restriction, Mr. Bonidy has an employee pick up and deliver his mail at the Avon Post Office.

As required by controlling precedent, there are two questions to be asked in approaching Plaintiffs' Second Amendment claim.[3] First, does the challenged regulation impose a burden on conduct falling with the scope of the Second Amendment guarantee?

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court freed the right to keep and bear arms from the restriction suggested by the prefatory clause that its purpose was to maintain a well-regulated militia in each of the several states. The decision changed the view of the amendment as protecting a collective interest in participating in a military organization to protect the inhabitants of each state that had been prevailing in the courts since the Court's opinion in *United States v. Miller*, 307 U.S. 174 (1939). Justice Scalia's majority opinion explained, in depth, the history of a common-law concept of an individual's freedom to use firearms for self-protection that the American colonists understood to be an essential element of individual liberty. The Second Amendment protects that liberty from disarmament by those who exercise the coercive powers of government.

The Court recognized that there is a collective interest in public safety that trumps individual liberty in given circumstances. Just as the liberty protected by the First and Fourth Amendments may be limited by restrictions necessary to preserve a well-ordered society, the freedom to keep and bear arms may be restrained by majoritarian governmental action.

When and how those restraints may be applied has been and will be the subject of extensive litigation. In *Peterson,* 707 F.3d at 1201, the Tenth Circuit held that the scope of the Second Amendment's protection does not include a right to carry a concealed firearm outside the home. That ruling is binding on this Court and defeats the Plaintiffs' contention

---

[3] *See Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013) (citing *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010)).

that Mr. Bonidy should be free to carry his concealed handgun on his person in the Avon Post Office and parking lot. But the *Peterson* panel did not address whether open carry of firearms outside the home is similarly unprotected; indeed, it explicitly declined to do so. *See id.* at 1208-09.

Those who believe in the primacy of collective security read *Heller* narrowly within the factual context in which the case arose. *See* discussion as to Part III.B in *United States v. Masciandaro,* 638 F.3d 458 (4th Cir. 2011); *Piszczatoski v. Filko*, 840 F. Supp. 2d 813 (D. N.J. 2012). Judge Posner persuasively discredited that reading by his textual analysis in the opinion deciding *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012). Aside from the textual meaning of "bear arms," he recognized the common-sense view that armed self-defense is important outside the home and that hunting takes place outside the home.

Accordingly, the Court concludes that the Second Amendment protects the right to openly carry firearms outside the home for a lawful purpose, subject to such restrictions as may be reasonably related to public safety.

In *Heller*, the Court recognized that there are many circumstances in which restrictions on the freedom to carry firearms are presumptively valid—including the exclusion of firearms from government buildings. *See* 554 U.S. at 626, 627 n.26. Those challenging such restrictions must present sufficient evidence to rebut that presumption. The Avon Post Office building is used for a governmental purpose by significant numbers of people, with no means of securing their safety; therefore, it is a sensitive place, and the USPS Regulation is presumed to be valid as applied to the building. Mr. Bonidy has failed to rebut that presumption of validity. Mr. Bonidy's claim to carry his gun into the building must therefore be denied.

There is no such easy answer as to the public parking lot. The Defendants first assert that USPS' ownership of the lot is, itself, a sufficient basis for the exclusion of firearms. But as the country's First Amendment jurisprudence demonstrates, constitutional freedoms do not end at the government property line. *See, e.g.*, *Initiative and Referendum Inst. v. U.S. Postal Serv.*, 417 F.3d 1299 (D.C. Cir. 2005) (subjecting 39 C.F.R. 232.1(h)(1) (1997), preventing people from political solicitation on USPS property, to First Amendment scrutiny). There is more to a sensitive place analysis than mere government ownership.

Next, Defendants point out that the Fifth Circuit upheld the precise regulation at issue here, after concluding that a USPS employee parking lot qualified as a sensitive place because "the Postal Service used the parking lot for loading mail and staging its mail trucks"; in other words, "as a place of regular government business." *United States v. Dorosan*, 350 Fed. App'x 874, 875 (5th Cir. 2009) (unpublished). This case is different. In terms of postal business being conducted in the parking lot, Defendants have offered evidence that there are mailboxes in the lot that patrons may use to drop off mail while driving through. But lone mail receptacles used by an undetermined number of transient patrons is easily distinguishable from the lot at issue in *Dorosan*, which was regularly used by Postal Service employees for processing high volumes of mail via USPS mail trucks. *See Dorosan*, 350 Fed. App'x at 875. In addition, there are no restrictions on access to the Avon Post Office parking lot beyond a sign posted at the front of the lot limiting parking to 30 minutes, which is not meaningfully enforced. As shown by the aerial photographs in the record, there is little to distinguish the USPS parking lot from other public parking lots in the near vicinity. By contrast, *Dorosan* involved a USPS employee parking lot that was enclosed by a gate, with a sign on both entrances warning that vehicles entering the lot were subject to search. *United*

*States v. Dorosan*, No. 08-042, 2008 WL 2622996, at *1 (E.D. La. June 30, 2008) (Knowles, M.J.). Therefore, *Dorosan*'s reasoning and facts are not helpful to Defendants' position.

Considering other indicia of sensitive places, an official, core government function is not performed in the Avon Post Office parking lot; rather, except for the presence of a few mailboxes, the lot merely facilitates the government function taking place inside by giving patrons a place to park. The government business done in the parking lot is thus not of the "same extent or nature as that done in schools, post offices, and courthouses." *Doe v. Wilmington Housing Auth.*, 880 F. Supp. 2d 513, 532 (D. Del. 2012) (applying reasoning to common areas of public housing). Moreover, Defendants have offered no evidence that a substantial number of people congregate or are present in the parking lot. *Cf. Nordyke v. King*, 563 F.3d 439, 459-60 (9th Cir. 2009) (noting parking lots of public buildings "[seem] odd as a 'sensitive place,'" because they are not "places where high numbers of people might congregate"), *vacated on other grounds by* 611 F.3d 1015 (9th Cir. 2010). And while patrons may reasonably expect that the Postal Service will take measures to keep the parking lot safe, that expectation is less compelling than the expectation of safety inside the building, where the USPS does business and exercises greater control.

Defendants maintain that postal parking lots in general have been targeted by criminals seeking to steal valuable mail from patrons as they walk out of post offices to their cars [Doc. 31 at 12] and used by criminals for drug trafficking transactions [*id.* at 13]. They fail to present evidence showing that this particular parking lot has been the site of such activity.

Thus, the Avon Post Office parking lot is not a sensitive place, and there is accordingly no presumption that the USPS Regulation is a valid restriction on Mr. Bonidy's right to carry a firearm onto it.

It is, therefore, incumbent upon the USPS to show sufficient support for its absolute ban on firearms without any consideration of the possible accommodations that may lessen the burden on Mr. Bonidy's individual interest in self-protection. The USPS's objective in preserving and promoting public safety in the Avon Post Office parking lot is important. The question is whether the USPS Regulation is substantially related to that objective. *See Reese*, 627 F.3d at 802 (quoting *United States v. Williams*, 616 F.3d 685, 692 (10th Cir. 2010)).

Defendants rely on the Declaration of Keith Milke, Inspector in Charge of Security and Crime Prevention for the United States Postal Inspection Service. He recites a history of firearm violence on postal property based on a study of workplace violence, and makes broad, conclusory statements, including the following:

> 46. Allowing storage of weapons in Postal Service parking lots would increase security risks and undermine law enforcement authority by making firearms accessible to individuals with criminal intent, whether those individuals use vehicles as temporary storage during commission of a crime, or whether firearms stored in vehicles parked on Postal Service property are improperly secured and become the target of theft. Inspectors surveilling criminal suspects in the course of investigations may observe them entering property with firearms on their person or in their vehicle, but if the firearm ban does not cover the full perimeter of Postal Service property, there would be no authority to apprehend these suspects before they enter the inside of a postal facility, placing the Inspectors, postal employees, customers, and bystanders at greater risk.
>
> 47. Customer parking lots, as opposed to secured employee lots, are subject to criminal activity involving postal customers. Sometimes customers are the perpetrators of intentional gun violence, including firearm suicides committed in vehicles, as occurred in separate incidents in parking lots in Post Office locations in Florida in 2005 and 2011. Unintentional harm can also result from the storage of firearms in vehicles, however, and the Inspection Service is aware of at least one incidence of damage to Postal Service property in 2008 when a customer accidentally

8

discharged his concealed handgun while in his vehicle, shooting out the front window of a Post Office lobby in Henderson, Texas.

48. Where parking lot robberies occur, customers returning to their vehicles with valuables obtained through the U.S. Mail or retail postal services may be subject to predation from armed perpetrators surveilling the lot from their vehicles. For example, in 2006, occupants of a vehicle in a customer lot in Florida shot a customer returning to his car in the course of robbing him of the Postal Service money orders he had just purchased. In Louisiana (2005), Mississippi (2005), and Virginia (2004), customers have been robbed at gunpoint in parking lots, in some cases by acquaintances. In other cases, criminals may use Postal Service parking lots as a base to target customers and valuables of the U.S. Mail in more involved ways. Such an incident occurred in March, 2006, when a postal customer was kidnapped at gunpoint and ordered to enter the Mount Holly, North Carolina Post Office to collect a pay check scheduled to arrive in his Post Office Box while his kidnappers waited in a vehicle in the parking lot. The victim alerted the Postmaster, who immediately called 911 and cleared employees and customers away from the service window area. On a monitor in the Postmaster's office, one of the armed kidnappers was observed entering the Post Office lobby, looking for the victim. When local police arrived, the kidnapper attempted to dispose of his firearm in a lobby waste bin, was arrested without incident, and was later sentenced on state charges for Possession of a Firearm by a Convicted Felon.

49. In addition, Postal Service parking lots have become sites for criminal activity due to the increased use of the U.S. Mail to conduct drug trafficking and the ability of criminals to track movements of shipments and target letter carriers departing for delivery. See, e.g., John Ingold, *Colorado Post Offices See Increase in Marijuana Packages*, Denver Post (Feb. 28, 2012) (attached as Ex. Milke-12). ("Package tracking numbers offer the ability to keep an eye on the shipment [of marijuana]. [This] practice places letter carriers in potential jeopardy, . . . because they end up unwittingly carrying around packages that could be targets for robbers.").

[Doc. 31, Ex. A-1 at 15-16.]

The USPS contends that its Regulation must be uniform without any consideration of differences in persons or places because the Postal Inspection Service manages 30,000 facilities nationwide and has made an executive policy decision that the Regulation is necessary, given the concerns cited above, to protect USPS employees and customers from firearm violence. That may be a reasonable justification if this were an Administrative Procedure Act review attacking the Regulation as arbitrary and capricious. What it ignores is

Mr. Bonidy's interest in protecting himself. That is the core concern of the Second Amendment.

There is nothing in the Milke Declaration that the "one-size-fits-all" approach serves any purpose other than administrative convenience and saving expenses. The fit between this approach and the USPS' public safety objective is unreasonable. Presumably, a police officer could not pick up his personal mail without disarming himself before entering the parking lot at the Avon facility. There is no recognized difference between this small-town, low-use postal facility and the post office in downtown Denver or midtown Manhattan.

In this case, specifically, Mr. Bonidy is a law-abiding individual who has demonstrated competency with a handgun, and has been approved by the Eagle County Sheriff to carry a concealed handgun almost everywhere in Colorado. [Doc. 33 at 8; Doc. 34 at 8.] And yet the USPS Regulation makes no accommodation for him and his circumstances by, for example, delegating authority to the Avon Postmaster to issue a permit for a person with a concealed carry permit to use the parking lot with the gun in a locked vehicle concealed in a glove compartment or console. Instead, the Regulation broadly prohibits anyone, regardless of risk, from possessing firearms anywhere on USPS property. When it comes to the building itself, a blanket firearms restriction applied to a law-abiding individual like Mr. Bonidy is sufficiently tailored, because the building is sensitive, and the presence of an individual openly carrying a firearm may excite passions, or excited passions may lead to the use of the firearm. Someone could also attempt to take the firearm from its lawful carrier and use it for criminal purposes.

By contrast, prohibiting Mr. Bonidy from securely storing his firearm in his vehicle sweeps too far; the parking lot is not similarly sensitive, and the public safety concerns

associated with open carry in the building are not similarly implicated. Therefore, as applied to Mr. Bonidy and his request to use the parking lot with his gun securely stored in his car, the USPS Regulation is not substantially related to the government's public safety interest. It is an unconstitutional burden on Mr. Bonidy's freedom under the Second Amendment.

In sum, openly carrying a firearm outside the home is a liberty protected by the Second Amendment. The Avon Post Office Building is a sensitive place and the ban imposed by the USPS Regulation is a presumptively valid restriction of that liberty. The Plaintiff has failed to present evidence to rebut that presumption. The parking lot adjacent to the building is not a sensitive place and the Defendants have failed to show that an absolute ban on firearms is substantially related to their important public safety objective. The public interest in safety and Mr. Bonidy's liberty can be accommodated by modifying the Regulation to permit Mr. Bonidy to "have ready access to essential postal services" provided by the Avon Post Office while also exercising his right to self-defense. Accordingly, it is

ORDERED, that the Defendants take such action as is necessary to permit Tab Bonidy to use the public parking lot adjacent to the Avon Post Office Building with a firearm authorized by his Concealed Carry Permit secured in his car in a reasonably prescribed manner, and it is

FURTHER ORDERED, that the other claims of unconstitutionality of 39 C.F.R. § 232.1(*l*) made by Plaintiffs are denied.

Dated: July 9, 2013.

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch
Senior District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02408-RPM

TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

      Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
MICHAEL KERVIN, Acting Postmaster, Avon, Colorado,

      Defendants.

_____

**JUDGMENT**
_____

      Pursuant to the Memorandum Opinion and Order, by Senior District Judge Richard P. Matsch entered on July 9, 2013, it is

      ORDERED that the Defendants take such action as is necessary to permit Tab Bonidy to use the public parking lot adjacent to the Avon Post Office Building with a firearm authorized by his Concealed Carry Permit secured in his car in a reasonably prescribed manner, and it is

      FURTHER ORDERED that the other claims of unconstitutionality of 39 C.F.R. § 232.1(*l*) made by Plaintiffs are denied.  It is

      FURTHER ORDERED that plaintiffs Tad Bonidy and the National Association for Gun Rights shall have their costs by the filing of a Bill of Costs with the Clerk of the Court within 14 days of entry of judgment.

      Dated: July 9th, 2013

| | |
|---|---|
| APPROVED: | FOR THE COURT:<br>Jeffrey P. Colwell, Clerk |
| s/Richard P. Matsch<br>_____<br>Richard P. Matsch<br>Senior District Judge | s/J. Chris Smith<br>By _____<br>Deputy Clerk |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 10-cv-02408-RPM

TAB BONIDY, and
NATIONAL ASSOCIATION FOR GUN RIGHTS,

      Plaintiffs,

  v.

UNITED STATES POSTAL SERVICE,
PATRICK DONAHOE, Postmaster General, and
MICHAEL KERVIN, Postmaster, Avon, Colorado,

      Defendants.

---

**NOTICE OF APPEAL**

---

NOTICE IS HEREBY GIVEN that Tab Bonidy and the National Association for Gun Rights, Plaintiffs in the above-captioned case, hereby appeal to the United States Court of Appeals for the Tenth Circuit from the Memorandum Opinion and Order entered in this action on July 9, 2013, (Doc. No. 44) and the Judgment entered in this action on July 9, 2013, (Doc. No. 45), denying Plaintiffs' Second Claim For Relief.

DATED this 18th day of September 2013.

                                          Respectfully submitted,

                                          /s/ James M. Manley
                                          James M. Manley
                                          Mountain States Legal Foundation
                                          2596 South Lewis Way
                                          Lakewood, Colorado 80227

2

(303) 292-2021
jmanley@mountainstateslegal.com

Attorney for Plaintiffs

2

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of September 2013, I filed the foregoing document electronically through the CM/ECF system and caused counsel of record to be served electronically through the CM/ECF system.

/s/ James M. Manley
James M. Manley